UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN DEL SESTO, AS RECEIVER AND | : | |
| ADMINISTRATOR OF THE ST. JOSEPH | : | |
| HEALTH SERVICES OF RHODE ISLAND | : | |
| RETIREMENT PLAN, ET AL. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | C.A. No:  1:18-CV-00328-WES-LDA |
| | : | |
| | : | |
| PROSPECT CHARTERCARE, LLC, ET AL. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION
FOR AWARD OF ATTORNEYS' FEES IN CONNECTION WITH
SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS
ST. JOSEPH HEALTH SERVICES OF RHODE ISLAND, ROGER
WILLIAMS HOSPITAL, AND CHARTERCARE COMMUNITY BOARD**

Max Wistow, Esq. (#0330)
Stephen P. Sheehan, Esq. (#4030)
Benjamin Ledsham, Esq. (#7956)
Wistow, Sheehan & Loveley, PC
61 Weybosset Street
Providence, RI  02903
(401) 831-2700
(401) 272-9752 (fax)
mwistow@wistbar.com
spsheehan@wistbar.com
bledsham@wistbar.com

November 21, 2018

## TABLE OF CONTENTS

I.    BACKGROUND ........................................................................................................1

    A.    The Investigative Phase...............................................................................1

    B.    Commencement and Prosecution of this Action and the Related State
        Court Cases ..................................................................................................5

        1.    Commencement and Prosecution of this Action ...............................5

        2.    The State Court Action ...................................................................10

        3.    Plaintiffs' Motion to Intervene in the 2015 *Cy Pres* Proceeding ....10

    C.    Negotiation of the Settlement.....................................................................11

    D.    Total Attorney Time Since Commencement of Litigation .......................12

    E.    The Retainer Agreements with the Named Plaintiffs ...............................12

II.   THE PROPOSED SETTLEMENT ......................................................................12

III.  THE PROPOSED FEE AWARD...........................................................................18

IV.   ARGUMENT ..........................................................................................................19

    A.    The Preferred Method for Determining the Amount of Attorneys' Fees
        Is the Percentage of Fund Approach, with a Benchmark of 25% of the
        Gross Recovery ..........................................................................................19

    B.    Plaintiffs' Counsel's Fee Application Is Fair and Reasonable ................22

    C.    Plaintiffs' Counsel Should Also Be Awarded Reasonable Costs ...........31

V.    CONCLUSION.......................................................................................................31

i

The law firm of Wistow, Sheehan & Loveley, P.C. ("Plaintiffs' Counsel" or "WSL") submits this memorandum in support of its motion for an award of attorneys' fees for their representation of the named plaintiffs and the putative class members in connection with the settlement between Plaintiffs Stephen Del Sesto (as Receiver and Administrator of the St. Joseph Health Services of Rhode Island Retirement Plan) ("the Receiver"), and Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, individually as named plaintiffs (the "Named Plaintiffs") and on behalf[1] of all class members as defined herein (collectively "Plaintiffs"), and Defendants CharterCARE Community Board ("CCCB"), St. Joseph Health Services of Rhode Island ("SJHSRI"), and Roger Williams Hospital ("RWH") (collectively the "Settling Defendants").

In further support of their motion, Plaintiffs' Counsel has filed the Declaration of Max Wistow dated November 21, 2018 ("Wistow Dec."). This motion is submitted in connection with the Joint Motion for Class Certification, Appointment of Class Counsel, and Preliminary Settlement Approval submitted by Plaintiffs and the Settling Defendants (the "Joint Motion").

## I.    BACKGROUND

### A.    The Investigative Phase

On August 7, 2017, Defendant St. Joseph Health Services of Rhode Island ("SJHSRI") filed its petition to place the St. Joseph Health Services of Rhode Island Retirement Plan (the "Plan") into receivership in the case captioned *St. Joseph Health Services of Rhode Island, Inc. v. St. Josephs Health Services of Rhode Island*

---

[1] Contingent upon the Court certifying the Class and appointing them Class Representatives.

*Retirement Plan, as amended*, PC-2017-3856 (the "Receivership Proceeding"), which

was been assigned to Associate Superior Court Justice Brian P. Stern ("Judge Stern").[2]

The petition alleged that the Plan was insolvent and sought an immediate

reduction in benefits of 40% for all Plan participants.[3]  Attorney Stephen Del Sesto was

appointed temporary and permanent receiver of the Plan by the Superior Court.[4]

Thereafter, pursuant to motion and a hearing, the Receiver obtained permission from

Judge Stern to retain WSL as the Receiver's Special Counsel, to investigate and assert

possible claims that may benefit the Plan, pursuant to which Judge Stern approved

WSL's retainer agreement (the "Receiver Retainer Agreement").[5]

Under the terms of the Receiver Retainer Agreement[6] approved by the Rhode

Island Superior Court, WSL agreed to accept a fee arrangement that included both a

reduced hourly fee and a reduced contingent fee.  It provided that WSL would be paid a

reduced hourly rate of $375 for time spent investigating the facts and reviewing

documents obtained pursuant to document subpoenas or voluntarily from third parties

(the "Investigative Phase").[7]  Upon the assertion of claims, the fee arrangement has

shifted from an hourly fee payable in all events, to a contingent fee payable only out of

---

[2] Wistow Dec. ¶ 2.

[3] <u>See</u> Wistow Dec. ¶ 3, Exhibit 1 (Petition for Receivership of the St. Joseph Health Services of Rhode Island Retirement Plan) (without exhibits for purposes of brevity).

[4] <u>See</u> Wistow Dec. ¶ 4, Exhibit 2 (Order Appointing Temporary Receiver); Wistow Dec. ¶ 10, Exhibit 6 (Order Appointing Permanent Receiver).

[5] <u>See</u> Wistow Dec. ¶¶ 6-9, Exhibit 3 (Receiver's Emergency Petition to Engage Special Legal Counsel); Exhibit 4 (transcript of the hearing on various motions including the Receiver's Emergency Petition to Engage Special Legal Counsel); Exhibit 5 (Judge Stern's Order granting the Receiver's Emergency Petition to Engage Special Legal Counsel).

[6] Wistow Dec. ¶ 6, Exhibit 3 (Receiver's Emergency Petition to Engage Special Legal Counsel) (attaching Receiver Retainer Agreement).

[7] <u>Id.</u>

any recovery.[8]  For recoveries obtained after claims were asserted but before suit was commenced, Plaintiff's Counsel agreed to a reduced contingent fee of 10% of the gross recovery.  After commencement of suit, the agreed fee has become the reduced contingent fee of 23.33% of the gross recovery.[9]

In the role as Special Counsel to the Receiver, WSL issued *subpoenas duces tecum* to the following entities:[10]

- Adler Pollock & Sheehan, P.C.

- Bank of America, N.A.

- Defendant CharterCARE Community Board

- Defendant CharterCARE Foundation

- RI Department of Health

- Ferrucci Russo, P.C.

- Office of the Rhode Island Attorney General

- Defendant Prospect CharterCare, LLC

- Defendant Prospect Medical Holdings, Inc.

- Defendant Rhode Island Community Foundation

- Defendant Roman Catholic Bishop of Providence

- Defendant SJHRSI (two subpoenas)

By agreement, or in acknowledgment of their legal obligation, several of the subpoenaed entities that are Defendants in this case produced documents in the

---

[8] Id.

[9] Id.

[10] Wistow Dec. ¶ 11.

possession and control of other entities that are also Defendants in this case.[11]
Defendant Prospect Medical Holdings, Inc. also produced documents on behalf of
Defendant Prospect East Holdings, Inc. ("Prospect East"); Defendant Prospect
CharterCare, LLC ("Prospect Chartercare") also produced documents on behalf of
Defendant Prospect CharterCare SJHSRI, LLC and Defendant Prospect CharterCare
RWMC, LLC; and Defendant Roman Catholic Bishop of Providence also produced
documents on behalf of Defendants Diocesan Administration Corporation and
Defendant Diocesan Service Corporation.[12]  Defendant Angell Pension Group, Inc.
("Angell") produced copies of its files in compliance with the order appointing the
Receiver, for which no subpoena was required.[13]

In most instances the subpoenaed parties did not produce the requested
documents either promptly or completely, with the result that Special Counsel filed
numerous discovery motions, all of which either were granted by the Superior Court or
resulted in production of the requested documents prior to the granting of the motion.[14]

This discovery entailed the production of over 1,000,000 pages of documents
which were obtained and reviewed by Special Counsel over an eight-month period prior
to the commencement of this action.[15]  In total, Special Counsel devoted over 1,470
hours of attorney time to this pre-suit investigation.[16]

---

[11] Wistow Dec. ¶ 12.

[12] Wistow Dec. ¶ 12.

[13] Wistow Dec. ¶ 12.

[14] Wistow Dec. ¶¶ 14-15.

[15] Wistow Dec. ¶ 16.

[16] Wistow Dec. ¶ 18.

For the Investigative Phase, Plaintiffs' Counsel was paid a total of $552,281.25, based upon the negotiated reduced hourly rate of $375 per hour.[17]  That fee covered 1,472 hours of billable time.[18]  However, Plaintiffs' Counsel unilaterally chose *not to bill the Receiver* for over 200 hundred hours of time in which more than one lawyer in the firm was involved in a specific task, such as court appearances, intra-office meetings or phone calls, or meetings and phone calls with the Receiver or third parties.[19]

**B.    Commencement and Prosecution of this Action and the Related State Court Cases**

**1.    Commencement and Prosecution of this Action**

On June 18, 2018 WSL commenced this action, by the filing of the complaint ("the Complaint"), naming fourteen corporate defendants.  The Complaint is unusually detailed because of:

- the number of the defendants;

- the complexity of the claims;

- the need to plead in the alternative that the plan was covered by the Employee Retirement Income Security Act of 1974, as Amended ("ERISA"), because Defendants contended and had treated the Plan as a "Church Plan" exempt from the requirements of ERISA but Plaintiffs disputed that contention;

- the need to plead in the alternative that the Plan was controlled by state law;

- the need to address over fifty years of history of the Plan; and

- the requirements of Fed. R. Civ. P. 9 pertaining to pleading fraud with particularity.

---

[17] Wistow Dec. ¶ 18.

[18] Wistow Dec. ¶ 18.

[19] Wistow Dec. ¶ 18.

Plaintiffs' Counsel represents the Receiver and the seven Named Plaintiffs, all of whom are Plan participants, and are asserting claims individually and on behalf of all of their fellow Plan participants.[20]

On September 14, 2018 and September 17, 2018, all of the non-settling Defendants in this action filed motions to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure.  Dkt. 49, 51, 52, 53.  On October 5, 2018, Plaintiffs amended their complaint in this action ("Plaintiffs' First Amended Complaint") (Dkt. 60), thereby mooting Defendants' pending motions to dismiss.  The non-settling Defendants have until December 4, 2018 to answer or otherwise respond to Plaintiffs' First Amended Complaint.  Dkt. Text Order entered 11/14/2018.

Since the commencement of this action, the Receiver has received hundreds of thousands of pages of additional documents from the parties who were served with subpoenas *duces tec*um prior to the commencement of this action.[21]

There also has been extensive litigation in the Receivership Proceedings since this action was commenced.

On September 4, 2018 the Receiver filed his Petition for Settlement Instructions, asking the court in the Receivership Proceedings to authorize the Receiver to present the Proposed Settlement to the Court for approval.[22]  Non-settling Defendants Prospect Medical Holdings, Inc., Prospect East, Prospect Chartercare, Prospect CharterCare SJHSRI, LLC and Prospect CharterCare RWMC, LLC (collectively the "Prospect Entities"), and CharterCARE Foundation ("CCF"), initially responded by filing motions to

---

[20] Contingent upon the Court certifying the Class and appointing them Class Representatives.

[21] The Receiver also filed a motion to lift confidentiality, which was heard on September 6, 2018 and the order granting the motion was entered on September 17, 2018.

[22] Wistow Dec. ¶ 31.

extend their time to object and for leave to conduct discovery concerning the Proposed

Settlement.  The Rhode Island Attorney General joined the requests for additional time.

Those motions were heard on September 7, 2018 and the court denied Defendants

CCF and the Prospect Entities' request for discovery but granted them and the Attorney

General additional time to object.

Defendants CCF and the Prospect Entities filed their objections with extensive

memoranda on September 27, 2018.  The Attorney General also on September 27,

2018 filed his "Response" to the Receiver's Petition for Settlement Instructions.  The

Receiver filed an extensive Reply Memorandum on October 5, 2018.  The Attorney

General also on October 5, 2018 filed a memorandum captioned as the "Reply of the

Rhode Island Attorney General to Certain Parties' Objections to the Receiver's Petition

for Settlement Instructions," in which the Attorney General took issue with certain

contentions by the Prospect Entities, including the allegation that the Proposed

Settlement violated the Rhode Island Administrative Procedures Act ("APA"), and the

contention that the Attorney General could be called upon to adjudicate a petition that

the Prospect Entities had filed with the Attorney General on September 27, 2018 asking

the Attorney General to invalidate the Proposed Settlement.

Also on October 5, 2018 the Receiver filed a motion to adjudge Prospect

Chartercare in contempt for commencing administrative proceedings before the Rhode

Island Attorney General and Department of Health on September 27, 2018 to invalidate

the Proposed Settlement.  The grounds for the motion were that these filings violated

the order of the court in the Receivership Proceeding prohibiting any person or entity

from commencing any proceeding concerning the assets or property of the

Receivership Estate without first obtaining approval of the court in the Receivership Proceedings.  Prospect Chartercare filed an objection and extensive supporting memorandum, and the Receiver filed an extensive reply memorandum.

The Receiver's Petition for Settlement Instructions, the objections of CCF and the Prospect Entities, and the Attorney General's "Response" thereto, were heard in the Receivership Proceedings on October 10, 2018, with this Court in attendance as an observer.

Before the motion to adjudge in contempt based on the filings with the Attorney General and the Department of Health could be heard, the Prospect Entities on October 23, 2018 filed their "Joint Emergency Motion to Instruct Receiver to Cease all Efforts to Proceed with the Proposed Settlement Agreement Until the Court Rules on the Pending Petition for Settlement Instructions," and the Receiver also on October 23, 2018 filed the Receiver's Motion to Adjudge Prospect CharterCARE, LLC in Contempt for Willful Failure to Comply with Subpoena and Deliberate Interference with the Receiver's Collection of the Assets of the Receivership Estate," with supporting memorandum.

On October 24, 2018 the Rhode Island Attorney General filed a motion to strike various statements in the Receiver's Reply Memorandum filed in further support of the Receiver's Petition for Settlement Instructions.

On October 29, 2018, the court in the Receivership Proceeding issued a decision approving the Receiver's Petition for Settlement Instructions.  See St. Joseph Health Services of Rhode Island, Inc. v St. Josephs Health Services of Rhode Island Retirement Plan, No. PC-2017-3856, 2018 WL 5792151, at *14 (R.I. Super. Oct. 29,

2018).  The order granting the Petition was entered on November 16, 2018.[23]  The order imposes two conditions: "(1) the Receiver refrains from exercising any rights under the PSA prior to the federal court's determination of whether to approve the PSA; and (2) prior to implementing, or directing that CCCB implement, any rights, whatsoever, in favor of the Receiver (or the Plan) derivative of CCCB's rights in CCF or PCC, the Receiver must provide all parties, including but not limited to the Objectors, with twenty (20) days written notice."[24]

On November 2, 2018 the court in the Receivership Proceedings held a consolidated hearing on the Receiver's two motions to adjudge Prospect Chartercare in contempt, the Prospect Entities' Joint Emergency Motion to Instruct Receiver to Cease all Efforts to Proceed with the Proposed Settlement Agreement, and the Rhode Island Attorney General's motion to strike various statements in the Receiver's Reply Memorandum.  The court directed the parties to attempt to resolve the Attorney General's motion by agreement and took the other motions under advisement.

On November 14, 2018 the court in the Receivership Proceeding issued a decision concluding that Prospect Chartercare had violated the court's order by commencing administrative proceedings before the Rhode Island Attorney General and Department of Health, and gave Prospect Chartercare ten (10) days to withdraw those filings, while reserving decision on whether Prospect Chartercare should be adjudged in contempt.

---

[23] Wistow Dec. ¶ 34, Exhibit 21 (Order by the Hon. Brian P. Stern, Associate Justice of the Rhode Island Superior Court entered on November 16, 2018).

[24] Wistow Dec. ¶ 34, Exhibit 21 (Order by the Hon. Brian P. Stern, Associate Justice of the Rhode Island Superior Court entered on November 16, 2018).

### 2.     The State Court Action

At the same time as they commenced this action, Plaintiffs filed a companion

complaint in the Rhode Island Superior Court (the "State Court Action").[25]  That

complaint essentially duplicated the complaint in this action, excluding the claims based

upon ERISA, and was filed in the event that the Court rejects Plaintiffs' claims under

ERISA and declines to exercise supplemental jurisdiction over Plaintiff's state law

claims.  The State Court Action has been stayed pending the outcome of this action.

### 3.     Plaintiffs' Motion to Intervene in the 2015 *Cy Pres* Proceeding

Simultaneously, Plaintiffs also moved for leave to intervene in a civil action that

SJHSRI, RWH, and another entity, Defendant CharterCARE Foundation ("CCF"),[26] had

commenced in the Rhode Island Superior Court in 2015 (the "2015 *Cy Pres*

Proceeding"),[27] pursuant to which certain assets of SJHSRI and RWH were transferred

to CCF, which Plaintiffs now seek to recover for deposit into the Plan.

CCF objected to Plaintiffs' motion to intervene in the 2015 *Cy Pres* Proceeding,

Plaintiffs and CCF submitted extensive memoranda, the motion was heard by Judge

Stern on September 13, 2018, the court issued a bench decision on September 17,

---

[25] Wistow Dec. ¶ 20, Exhibit 7 (State Court Complaint).

[26] CCF is not a party to the Settlement Agreement.  However, CCCB has represented to the Rhode Island Superior Court in the 2015 *Cy Pres* Proceeding that it is the sole member of CCF. According to the by-laws of CCF, that entitles CCCB to consent to the transfer of all of its assets, and to settle claims disposing of all of its assets.  Accordingly, the Settlement Agreement transfers to the Receiver all of CCCB's rights in CCF and obligates the Settling Defendants to consent to Plaintiffs intervening in the 2015 *Cy Pres* Proceeding, and to join in Plaintiffs' request for an order directing that all assets transferred to CCF be distributed in the liquidation proceedings in the Superior Court as property of the Settling Defendants.

[27] Wistow Dec. ¶ 21, Exhibit 8 (Proposed Intervenor's motion and supporting memorandum), Exhibit 9 (Defendant CCF's opposition memorandum), and Exhibit 10 (Proposed Intervenors' reply memorandum).

2018, and the order granting Plaintiff's motion to intervene was entered on October 2, 2018.

### C.    Negotiation of the Settlement

In July and August 2018, Counsel for the Settling Defendants and Plaintiffs' Counsel conducted settlement negotiations, which involved extensive disclosure of the Settling Defendants' assets, including an initial disclosure and several additional or supplementary disclosures based upon the requests of Plaintiffs' Counsel for additional information and clarification.[28]  The negotiations also involved communications by Plaintiffs' Counsel with the Rhode Island Department of Labor and Training ("DLT") and a meeting with DLT concerning the DLT Escrow account, which was then in the amount of approximately $2,500,000, that Settling Defendant RWH had funded, securing RWH's self-insured workers' compensation liabilities.[29]  As a result of these communications, DLT agreed to only $750,000 being retained in the DLT Escrow account, and released the balance, which is included in the Initial Lump Sum being paid by the Settling Defendants in connection with the Proposed Settlement.[30]

Thereafter, Plaintiffs and the Settling Defendants agreed on the terms set forth in the Settlement Agreement, which is dated as of August 31, 2018.[31]

---

[28] Wistow Dec. ¶ 23.

[29] Wistow Dec. ¶ 24.

[30] Wistow Dec. ¶ 24.

[31] Wistow Dec. ¶ 25.

### D.    Total Attorney Time Since Commencement of Litigation

Since this action was commenced on June 18, 2018, attorneys at WSL have devoted a minimum of 1,120 hours of time in prosecuting the claims of the Receiver and the Plaintiffs.[32]

### E.    The Retainer Agreements with the Named Plaintiffs

Prior to filing the Complaint, Plaintiffs' Counsel entered into retainer agreements with the seven Named Plaintiffs, in which the Named Plaintiffs agreed to Plaintiffs' counsel's applying to the Court for an award of attorneys' fees, not to exceed the fees to which Plaintiffs' Counsel is entitled under the retainer agreement with the Receiver that was approved by the Superior Court.[33]

## II.    THE PROPOSED SETTLEMENT

The complete details of the Proposed Settlement are set forth in the Joint Motion and the Settlement Agreement and are not repeated here.

For purposes of this application for attorneys' fees, however, certain details must be specially noted.  This is not the typical class action settlement, in which the lawyers for the class are seeking a fee after having completed their work in connection with the case.  To the contrary, this is a partial settlement in a case that will continue against the non-settling Defendants with no guarantee of any further recoveries or fees.

This is not even a typical class action partial settlement, since Plaintiffs Counsels' efforts to maximize the benefits of the proposed partial settlement for the Class will not end with the Court's approval thereof.  Although the Proposed Settlement entails

---

[32] Wistow Dec. ¶ 39.

[33] Wistow Dec. ¶ 26, Exhibits 12-18 (Retainer Agreements with Named Plaintiffs).

payment by the Settling Defendants to the Receiver of a substantial Initial Lump Sum of at least $11,150,000, they also are transferring to the Receiver their rights to and/or making certain undertakings concerning certain assets that involve non-settling Defendants CCF[34] and Prospect Chartercare.  The Proposed Settlement will spawn an extended and complicated process to collect these assets, against the anticipated opposition of CCF and Prospect Chartercare, and, possibly, the Settling Defendants' other alleged creditors, also with no guarantee of any further recoveries of fees.

The Proposed Settlement closely aligns the pecuniary interests of the Settlement Class with that of Plaintiffs' Counsel concerning the collection of these assets, by providing that Plaintiffs' Counsel will receive no fees concerning these assets until they are actually secured.  See In re AremisSoft Corp. Securities Litigation, 210 F.R.D. 109, 126 (D.N.J. 2002) (approving similar arrangement) ("However, the Settlement closely aligns the pecuniary interests of the Class with that of Plaintiffs' Counsel and the Co Trustees, ensuring a diligent pursuit of those funds on behalf of the Class. These facts, and others, demonstrate that this innovative settlement, although the result of cooperation by adversaries, meets the stringent requirements of fairness and reasonableness to the Class.").

As set forth in the Joint Motion, the Settlement Agreement provides for the assignment to the Receiver of Settling Defendant CCCB's alleged membership interest in Co-Defendant CCF.  The last publicly disclosed valuation of CCF's assets totaled

---

[34] As discussed *infra* at 14, Plaintiffs and CCF are in the process of formalizing a settlement agreement which would liquidate Plaintiffs' claims against CCF for a payment of $4,500,000, subject to several court approvals.

approximately $8,780,000 as of April 30, 2018.[35]  However, the nature and value of CCCB's interest is disputed.  Moreover, even if CCCB is the Sole Member of CCF, that would not necessarily entitle CCCB or the Receiver to the charitable assets of CCF. Judge Stern's approval of the Proposed Settlement imposed on the Receiver the obligation to give the non-settling Defendants and the Attorney General prior notice of any exercise of rights against CCF.  If the Attorney General objects, he can litigate his objection at that time.  Thus, the nature and value of the Receiver's interest in CCF is disputed.  Accordingly, the settlement value of that interest cannot be estimated at this time.  Plaintiffs' Counsel will be tasked with proving, maximizing the value of, and collecting that membership interest.

Although it has not been formally executed, the Plaintiffs and CCF have agreed to settle the Plaintiffs' claims against CCF by the payment of $4,500,000, subject to the approval of that settlement by the court in the Receivership Proceedings, this Court, and the court in the 2015 *Cy Pres* Proceeding.

The instant Settlement Agreement also transfers to the Receiver certain rights concerning Defendant CCCB's claimed 15% membership interest in Prospect Chartercare, referred to in the Settlement Agreement as "CCCB's Hospital Interests."  In connection with the 2014 Asset Sale, Settling Defendant CCCB received a 15% membership interest in Prospect Chartercare, which indirectly (through wholly-owned subsidiaries) owns and operates Roger Williams Hospital and Our Lady of Fatima

---

[35] Wistow Dec. ¶ 22, Exhibit 11 (Order Preserving Assets Pending Litigation and Setting Schedule for Hearing on Motion to Intervene) at 1 n.2.

Hospital.[36]  Documents obtained in discovery show that, at least shortly after the 2014 Asset Sale, Prospect Chartercare valued CCCB's interest as at least $15,000,000.[37]

However, provisions in the Prospect CharterCARE Limited Liability Agreement ("LLC Agreement")[38] provide that such interest may be diluted under certain circumstances, and purport to restrict and even prohibit CCCB from transferring that interest until five years from June 20, 2014, at which time CCCB will have ninety (90) days to exercise a put option to compel co-defendant Prospect East to purchase its membership interests, pursuant to a complicated valuation procedure that includes arbitration if values are not agreed.[39]

Moreover, it cannot be assumed that Prospect East and the other Prospect entities that are Defendants in this case[40] will pay the fair value of this interest without further litigation.  Accordingly, it is impossible to value CCCB's or the Receiver's interest in Prospect Chartercare in connection with the Proposed Settlement.

The rights that Plaintiffs will receive in connection with the Proposed Settlement in the interests that Settling Defendant CCCB has in these other entities will only supplement claims to these assets that Plaintiffs have already asserted in the Complaint.  Plaintiffs claim that the $8,200,000 transferred to CCF in the 2015 *Cy Pres* Proceeding should have gone to pay creditors, including the Plan, pursuant to R.I. Gen. Laws § 7-6-51, and the decisions of a bankruptcy court and the United States District

---

[36] Wistow Dec. ¶ 35, Exhibit 22 (Asset Purchase Agreement) at 9; Wistow Dec. ¶ 36, Exhibit 23 (LLC Agreement) at 1; Complaint ¶¶ 419-23.

[37] Complaint ¶¶ 419-23; Wistow Dec., Exhibit 22 (Asset Purchase Agreement) at B-1.

[38] Wistow Dec. ¶ 35, Exhibit 23 (LLC Agreement) at 12.

[39] Wistow Dec. ¶ 36, Exhibit 23 (LLC Agreement) at 31-33.

[40] Defendants Prospect East Holdings, Inc., Prospect Medical Holdings, Inc., Prospect CharterCare, Prospect CharterCare SJHSRI, LLC and Prospect CharterCare RWMC, LLC are the "Prospect Entities."

Court interpreting an identical District of Columbia statute to reach that result.[41]  In addition, Plaintiffs claim that it was a fraudulent transfer for two reasons: the transfers were made with intent to defraud, and because the transferors were insolvent and the transferee gave no value.[42]  Plaintiffs also claim that CCCB's receipt of the 15% membership interest in Prospect CharterCARE was a fraudulent transfer because SJHSRI and RWH were entitled to that interest but they allowed CCCB to receive it at a time that SJHSRI and RWH were insolvent and CCCB gave no equivalent value (indeed, no value at all).[43]

Given that Plaintiffs are already pursuing these assets, and that the Proposed Settlement contemplates the liquidation and dissolution of the Settling Defendants in the Liquidation Proceedings, it is more cost-effective and beneficial to the Plaintiffs and the Settlement Class to arm the Receiver with CCCB's interests in Prospect Chartercare and CCF, rather than leave it for the Settling Defendants to decide whether and when to incur the expense of pursuing them, as well as the choice of forum, and control over that litigation.  In other words, the Receiver on behalf of the Plan has more interest in obtaining these assets for Plan participants than do the Settling Defendants.

In addition, as also set forth in the Settlement Agreement, the post-settlement collection process will require at least three additional lawsuits in the Rhode Island Superior Court, for judicial liquidation of the Settling Defendants.  Plaintiffs' Counsel has the right to participate in those lawsuits both on behalf of the Settling Parties and on

---

[41] See Wistow Dec. Exhibit 8 (Proposed Intervenors' initial Memorandum at 33-39) (discussing Rhode Island's statutes and In re Crossroad Health Ministry, Inc., 319 B.R. 778 (Bankr. D.D.C. 2005), aff'd, sub nom. Bierbower v. McCarthy, 334 B.R. 478 (D.D.C. 2005)).

[42] Complaint ¶¶ 456 & 464.

[43] Complaint ¶¶ 411, 419-23, 456 & 464.

behalf of the Receiver and the Settlement Class as creditors in the liquidation proceedings.  Those proceedings for judicial liquidation may be very extensive and time consuming, but are necessary to maximize the funds that will go to the Receiver for deposit into the Plan.  Although Plaintiffs' Counsel and the Receiver are hopeful that these additional collection efforts will result in significant recoveries, there is no guarantee there will be any recoveries.

Finally, Plaintiffs' Counsel very likely will be tasked with defending or prosecuting claims on behalf of the Settling Defendants in other litigation in addition to the liquidation proceedings or this case, to attempt to maximize the recovery for the Settlement Class.  The Settlement Agreement provides:

> The Settling Defendants agree that if any claims of whatever nature are asserted against them by any person or entity not a party to this agreement that arise out of or relate to this Settlement Agreement, the Plan, the matters alleged in the Federal Court Action or the State Court Action, or the 2014 Asset Sale or any related agreements (the "Third Party Claims"), the Settling Defendants will promptly notify Plaintiffs' Counsel in writing with full particulars thereof.  Plaintiffs' Counsel shall have the option to participate in the defense of any or all Third Party Claims by notifying Counsel for the Settling Parties in writing of the exercise of said option, in which event the Settling Parties agree to cooperate with Plaintiffs' Counsel in said defense and, solely for the benefit of Plaintiffs and Plaintiffs' Counsel, to waive any attorney client privileges and/or work product concerning the Third Party Claims, the matters out of which they arose, or to which they relate.

Settlement Agreement ¶ 29.  This potential involvement of Plaintiff's Counsel is necessary to protect the Settling Defendants' assets from their other creditors, assets which otherwise would be paid to the Receiver under the Proposed Settlement.

## III.    THE PROPOSED FEE AWARD

The Settlement Agreement provides for payment of a minimum Initial Lump Sum of $11,150,000, gives Plaintiffs certain rights to the Settling Defendants' additional assets, and provides that the total of the Initial Lump Sum and all recoveries on those assets, including the value of any assets obtained in kind, shall constitute the "Gross Settlement Amount."

Notwithstanding that the Retainer Agreement does not envision any reduction of Plaintiffs' Counsel's contingent fee for fees received in connection with the Investigative Phase, Plaintiffs' Counsel on their own volition agree to such a reduction, to be applied to the first recoveries on the Proposed Settlement.  As noted, those fees total $552,281.25.  That credit would reduce Plaintiffs' Counsel's fee on the minimum Initial Lump Sum of $11,150,000 from 23.33% to approximately 18.4%.[44]

Accordingly, Plaintiffs' Counsel is seeking an award of attorneys' fees in the amount of 23.33% of the Gross Settlement Amount, less $552,281.25.  This award would be inclusive of Plaintiff's Counsel's fees for representing the Receiver in connection with the Proposed Settlement.

---

[44] 23.33% of $11,150,000 = $2,601,295, minus $552,281.25 = $2,049,013.80, which is 18.3768% of $11,150,000.

## IV.   ARGUMENT

### A.   The Preferred Method for Determining the Amount of Attorneys' Fees Is the Percentage of Fund Approach, with a Benchmark of 25% of the Gross Recovery

Rule 23 of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

Fee awards to class action plaintiffs' attorneys are essential to ensure access to the courts for large numbers of individuals who have suffered significant injuries that do not justify the great expense of litigation:

> Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent. Due to the expense, time and difficulty of pursuing complex litigation, it would likely not be economical for an individual Class Member to pursue such litigation on their own. *See Alpine Pharma., Inc. v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir.1973) ("In the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced, since the claims of individual litigants, when taken separately, often hardly justify the expense of litigation."); *In re Telectronics Pacing Sys. Inc.*, 137 F.Supp.2d 1029, 1043 (S.D.Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources.); *Mazola [v. May Dept. Stores Co., 1999 WL 1261312, at *4 (*D. Mass. Jan. 27, 1999) (Gertner, J.)]* ("The litigation is critical, because it gives voice to relatively small claimants who may not be aware of statutory violations or have an avenue to relief.").

In re Puerto Rican Cabotage Antitrust Litigation, 815 F. Supp. 2d 448, 463 (D.P.R. 2011).

Plaintiffs' Counsel has negotiated a Proposed Settlement that establishes a common fund to benefit all members of the Settlement Class.  "Under the 'common

fund' doctrine, a lawyer responsible for creating a common fund that benefits a group of litigants is entitled to a fee from the fund."  5 *Newberg on Class Actions* § 15:53 (5th ed.).  The First Circuit recognizes two methods for calculating attorneys' fees in the class action context involving a common fund, the "percentage of the fund" ("POF") method, or the lodestar method.  See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 307 (1st Cir. 1995) ("[W]e hold that in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar.").  The POF "method functions exactly as the name implies: the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation."  Thirteen Appeals, supra, 56 F.3d at 305.

The POF method is preferred in common fund cases.  See In re Cabletron Systems, Inc. Securities Litigation, 239 F.R.D. 30, 37 (D.N.H. 2006) ("The POF method is preferred in common fund cases because 'it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.'  This is something the lodestar method cannot do.") (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005)) (internal quotations omitted).  "In complex litigation—and common fund cases, by and large, tend to be complex— the POF approach is often less burdensome to administer than the lodestar method."  Thirteen Appeals, *supra*, 56 F.3d at 307. "[U]sing the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as

many hours as possible (and bill for them) but also face a strong disincentive to early

settlement. . . . If the POF method is utilized, a lawyer is still free to be inefficient or to

drag her feet in pursuing settlement options—but, rather than being rewarded for this

unproductive behavior, she will likely reduce her own return on hours expended." Id.

Finally:

> Another point is worth making: because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character." In fine, the market pays for the result achieved.

Id. (quoting In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992)).

Under the POF method, "the court shapes the counsel fee based on what it

determines is a reasonable percentage of the fund recovered for those benefitted by the

litigation." Thirteen Appeals, *supra*, 56 F.3d at 305.

> In weighing a common fund request, courts generally consider the following so-called Goldberger factors: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Lupron Mktg. & Sales Practices Litig.*, No. MDL 1430, 01–CV–10861–RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d 167, 170 (D. Mass. 2014)

(quoting In re Lupron Mktg. & Sales Practices Litig., No. MDL 1430, 01–CV–10861–

RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing Goldberger v. Integrated

Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000), and approving an award of 28% of the

settlement fund).

The benchmark percentage considered reasonable in the First Circuit is 25%.

"Within the First Circuit, courts generally award fees 'in the range of 20–30%, with 25%

as the benchmark.'" Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 349-350 (D. Mass

2015) (quoting Latorraca v. Centennial Techs., Inc., 834 F. Supp. 2d 25, 27–28

(D. Mass. 2011) (collecting cases)), aff'd, 809 F.3d 78, 85 (1st Cir. 2015) ("Applying the

percentage of the fund method, the district court found that twenty-five percent of the

fund is consistent with what other district courts found to be reasonable.").

## B.   Plaintiffs' Counsel's Fee Application Is Fair and Reasonable

Plaintiffs' Counsel's fee request is reasonable under the Goldberger factors of

"1) the size of the fund and the number of persons benefitted; (2) the skill, experience,

and efficiency of the attorneys involved; (3) the complexity and duration of the litigation;

(4) the risks of the litigation; (5) the amount of time devoted to the case by counsel;

(6) awards in similar cases; and (7) public policy considerations," In re Neurontin

Marketing and Sales Practices Litigation, supra, 58 F. Supp. 3d at 170, with the caveat

that it is not possible to determine the amount of additional time that Plaintiffs' Counsel

will devote to maximizing the Proposed Settlement, such that over the passage of time

the fee may become unreasonably low.

The Proposed Settlement is clearly an excellent outcome for the Settlement

Class, notwithstanding the fact that the total value of the Proposed Settlement cannot

be determined at the present time.  See In re AremisSoft Corp. Securities Litigation, 210

F.R.D. 109, 126 (D.N.J. 2002) ("Furthermore, even though the pecuniary gain the

settlement affords the Class is somewhat speculative, the Settlement is fair in light of

the attendant risks of litigation.").

In <u>AremeisSoft</u> the Court approved a class settlement in a securities fraud case, where the class received 1) common stock in a newly formed company, which could not be valued because of the lack of an active market in the stock, and 2) the right to share in the future proceeds from class counsel's liquidation of the defendant's remaining assets and prosecution of the defendant's claims against third parties, both in the United States and on the Isle of Man.  The court approved the settlement notwithstanding that the court could not assign a "specific dollar value" to the settlement, "absent a present market for SoftBrand shares, and absent an ability to estimate either the maximum potential recovery or the likelihood of making such recoveries. . . ."  <u>Id.</u>, 210 F.R.D. at 130.

Far from criticizing this outcome for its lack of certainty, the court actually lauded it as "an innovative settlement," in which "[t]he creative settlement devised by counsel demonstrates the vigor of their representation," <u>AremeisSoft</u>, 210 F.R.D. at 113 & 121-22 ("Plaintiffs' Counsel created a settlement that promotes a just result and furthers economic activity. This settlement plan and its beneficial results entitles Plaintiffs' Counsel to the fees requested.").  <u>See</u> <u>id.</u>, 210 F.R.D. at 130. (approving a fee of one-third of the SoftBrands common stock, twenty percent of any amounts recovered as a result of litigation or negotiated settlement from funds currently frozen in the Isle of Man; and thirty percent of all other amounts recovered as a result of litigation or negotiated settlements, whether inside or outside the United States).

What especially establishes the reasonableness of Plaintiffs' Counsel's proposed fee, however, is the additional (perhaps controlling) factor that this percentage was negotiated with the Receiver and approved by the Rhode Island Superior Court in

connection with the Receivership Proceedings *in advance of the filing of this case*.  In the typical class action, fee determinations are made after the fact, and class counsel can seek a higher than average percentage award if the various <u>Goldberger</u> factors would justify it.  Moreover, typically the court faced with an application for attorneys' fees in a class action is the first court called upon to determine the appropriateness of the fee, and has to calculate the fee using hindsight.  That is not the case here.  The Receiver Retainer Agreement determined Plaintiffs' Counsel's fee for representing the Receiver in this case in advance.

Although unquestionably the court in the Receivership Proceedings did not purport to approve the fee that would apply to Plaintiffs' Counsel's representation of the Settlement Class in Federal Court, the court in the Receivership Proceedings just as clearly did intend to set the fee that would be fair to the Plan and the Plan participants who ultimately would be affected by the outcome.  At the time the Superior Court authorized the Receiver to enter into the Receiver Retainer Agreement, the court was already familiar with the Plan and the interests of Plan participants.  Even in connection with the proposed class action settlement, the Plan is the immediate beneficiary of the settlement, and the settlement class of Plan participants benefit by the increase of the Plan's assets.

The Court also can take judicial notice of Judge Stern's long experience in handling receiverships and ancillary litigation, which he could draw on to ensure that the fee he approved would be fair to the Plan and the Plan participants.  In a related context, the First Circuit and other federal courts have deferred to state law in determining attorneys' fees in class action common fund cases based on diversity.  <u>See</u>

In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 15 (1st Cir. 2012) ("We also start with the basic premise that the issue of attorneys' fees has long been considered for *Erie* purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees."); Chieftain Royalty Company v. Enervest Energy Institutional Fund XIII–A, L.P., 888 F.3d 455, 462-63 (10th Cir. 2017) (applying Oklahoma state law to determine method of calculating attorneys' fees in settlement of class action) ("[T]here appears to be a consensus among those circuits that have considered the matter. We have found decisions from five other circuits. When state law governs whether to award attorney fees, all agree that state law also governs how to calculate the amount.").

Indeed, the Superior Court in the Receivership Proceedings can be viewed as a proxy for the Court, in the practice of setting a fee award *ex ante*, which is followed in some class actions.  See Newberg on Class Actions, *supra*, § 15:4 ("Substantively, courts may specify early in litigation what fee method they will employ at the conclusion of the case and/or even attempt to set the fee itself at the outset of the lawsuit, on the assumption that such *ex ante* fee setting best mimics the manner in which private litigants establish attorney retention contracts.").

This *ex ante* approach has considerable advantages over the *ex post facto* method of determining an appropriate fee award:

> [A] district court must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed). The best time to determine this rate is the beginning of the case, not the end (when hindsight alters the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets. Individual clients and

their lawyers never wait until after recovery is secured to contract for fees. They strike their bargains before work begins. … Many district judges have begun to follow the private model by setting fee schedules at the outset of class litigation—sometimes by auction, sometimes by negotiation, sometimes for a percentage of recovery, sometimes for a lodestar hourly rate and a multiplier for riskbearing. (The greater the risk of loss, the greater the incentive compensation required.) Timing is more important than the choice between negotiation and auction, or between percentage and hourly rates, for all of these systems have their shortcomings. Only *ex ante* can bargaining occur in the shadow of the litigation's uncertainty; only ex ante can the costs and benefits of particular systems and risk multipliers be assessed intelligently. Before the litigation occurs, a judge can design a fee structure that emulates the incentives a private client would put in place. At the same time, both counsel and class members can decide whether it is worthwhile to proceed with that compensation system in place.

In re Synthroid Marketing Litigation, 264 F.3d 712, 718–19 (7th Cir. 2001) (citations omitted) (quoted in Newberg on Class Actions, *supra*, § 15:7).  See also Nilsen v. York County, 400 F. Supp. 2d 266 (D. Me. 2005) (awarding 25% fee based on the "market-mimicking approach" notwithstanding it exceeded the fee calculated using the lodestar method) ("I therefore adopt the methodology of the Seventh Circuit as most reflective of what a judge does instinctively in setting a fee as well as most amenable to predictability and an objective external constraint on a judge's otherwise uncabined power: 'courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.' The market-mimicking approach has its own shortcomings but it is better than the fuzzier alternatives.") (citing In re Synthroid Mktg. Litig., 264 F.3d at 718).

It should be noted that this *ex ante* approach had some distinct possible *disadvantages* for Plaintiffs' Counsel, both when it was entered into, and even now, which make it even more advantageous to the Plan participants.  The Receiver Retainer

Agreement established the upper limit of the fee for Plaintiffs' Counsel's representation of the Receiver, regardless of the number of lawsuits Plaintiffs' Counsel was required to bring, the degree of difficulty of those lawsuits, or the many other factors that might otherwise justify a higher percentage.

Moreover, as noted, Plaintiffs Counsels' efforts to achieve the benefits of the proposed settlement will not end with the Court's approval thereof.  To the contrary, the Proposed Settlement will spawn at least three additional proceedings for judicial liquidations in which Plaintiffs' Counsel must vigorously seek to increase the recovery in connection with the partial settlement.  Plaintiffs' Counsel also undoubtedly will be involved in defending the Settling Defendants in the Third-Party Claims that threaten assets that otherwise would be paid to the Receiver under the partial settlement. Finally, it cannot be overlooked that Plaintiffs' Counsel is committed to proceeding with the case against the other Defendants, with the risk of devoting thousands of hours of additional time without obtaining future recoveries.

Although not required to allow such a credit by the Receiver Retainer Agreement approved by the court in the Receivership Proceedings, Plaintiffs' Counsel on their own volition have agreed to reduce their 23.33% contingent fee by the fees they have been paid in the Receivership Proceedings to investigate the facts preliminary to asserting claims, of $552,281.25.  Plaintiffs' Counsel are accordingly seeking an award of less than 18.4% on the first $11,150,000[45] and 23.33% on the balance, which is significantly below the award that would be due under the 25% benchmark for common fund cases.

---

[45] See *supra* at 18 n.44.

Another reason to adhere to the percentage fee provided in the Receiver Retainer Agreement is that it is indisputable that the Named Plaintiffs and the Settlement Class have fully benefitted from Plaintiffs' Counsel's representation of the Receiver during the Investigative Phase.  Indeed, it is impossible to separate the fruits of Plaintiffs' Counsel's labors on behalf of the Receiver from the benefits to be obtained by the Named Plaintiffs and the Class of Plan participants, or to allocate attorney time between Plaintiffs' Counsels' representation of the Receiver and Plaintiffs' Counsels' representation of the Settlement Class.

Thus, it is equally impossible to allocate any portion of the Proposed Settlement to the Settlement Class, to provide the basis upon which to calculate Plaintiffs' Counsel's fee for representing the Settlement Class, separate from the portion of the recovery that should provide the basis to calculate Plaintiffs' Counsel's fee for representing the Receiver.  It is for this reason that Plaintiff's Counsel seek an award of attorneys' fees for representing the Settlement Class that is inclusive of Plaintiff's Counsel's fees for representing the Receiver.

It must be emphasized that the genesis and *raison d'etre* of the Complaint is the underfunded status of the Plan and the investigation undertaken on behalf of the Receiver.  The Plan is in Receivership.  The Receiver seeks recovery solely in his representative capacity, for the ultimate benefit of Plan participants.  The Settlement provides that the Net Settlement Amount will be paid into the Plan, in accordance with the orders of the court in the Receivership Proceedings.

As such, the inclusion as Plaintiffs of the Settlement Class did not add to the potential recovery or provide any additional benefit to them.  However, that is not to say

that the inclusion of the Settlement Class was not helpful to achieving the Settlement. As set forth in the retainer agreements[46] with each of the Named Plaintiffs:

> WSL believes that the Receiver has standing to bring all necessary claims to protect participants and participants' beneficiaries.  However, it is expected that there may be issues raised as to whether or not participants and participants' beneficiaries have the standing as to certain claims.  To mitigate that potential issue, WSL is proposing to join class action claims along with the claims of the Receiver.  You will be one of several persons represented by WSL named with regard to the class action claims.

The Named Plaintiffs and the Class Members were also needed for purposes of transparency, and so that they may participate in the settlement approval process and provide releases in accordance with the terms of the Settlement Agreement, which is essential for the Settling Defendants to have 100% certainty that they will not be subject to the claims of Plan participants after they settle with the Receiver.

The Settling Defendants understandably have made the obtaining of such releases a requirement of the settlement.  Moreover, it should be noted that the requirement of a release actually benefits the Settlement Class because it prevents the assets of the Settling Defendants from being dissipated in having to defend claims of individual Plan participants over the period of time (perhaps years) it will take to liquidate the assets of the Settling Defendants.

Another reason why the fee to which Plaintiffs' Counsel is entitled for representing the Receiver should be the same for representing Class Counsel is that it is arguably unclear whether Plan participants have any direct claims against the Settling Defendants.  While Plaintiffs certainly do not concede the point, there is case law suggesting that Plan participants have no direct claims for breach of fiduciary duty

---

[46] Wistow Dec. ¶ 26, Exhibits 12-18 (Retainer Agreements with the Named Plaintiffs) at 3.

under the Employee Retirement Security Act of 1974, as amended ("ERISA").  See

Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985) ("[T]he entire text

of § 409 persuades us that Congress did not intend that section to authorize any relief

except for the plan itself.").  As noted by a leading authority on class actions:

> While individual beneficiaries may bring suit for fiduciary breaches, a specific quality of many—though not all—ERISA cases is that any recovery "inures to the benefit of the plan as a whole" and not directly to the aggrieved beneficiary.  Consequently, plan participants typically sue alleged wrongdoers derivatively, on behalf of the plan.

Newberg on Class Actions § 4:21(5th Ed. Trial Practice Series 2018) (quoting

Massachusetts Mutual, *supra*) (other citations omitted).  Moreover, all of the Plaintiffs'

state law claims also seek recovery on behalf of the Plan.  For example, Plaintiffs claim

that SJHSRI breached its contractual obligation to Plan participants to adequately fund

the Plan.  Damages for that breach would flow to the Plan, not to the individual Plan

participants.

Finally, the Court may consider that Plaintiffs' Counsel is an experienced but

nevertheless small firm, and it was clear from the outset that their undertaking of

representing the Receiver and seeking class certification and representation would

inevitably require them to decline undertaking other matters that they otherwise would

have accepted.  Moreover, by agreeing to a contingent fee, Plaintiffs' Counsel relieved

the Receiver (and, through the Receiver, the Plan) of the very substantial expense of

legal fees in the event the claims were unsuccessful or the recoveries did not warrant

the fees.

### C.    Plaintiffs' Counsel Should Also Be Awarded Reasonable Costs

In addition to recovery of counsel fees, it is appropriate to award recovery of reasonable costs:

> In its paradigmatic formulation, the common fund doctrine permits the trustee of a fund, or a person preserving or recovering a fund for the benefit of others in addition to himself, **to recover his costs**, including counsel fees, from the fund itself, or alternatively, from the other beneficiaries.

In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 606 (1st Cir. 1992) (emphasis supplied).  See, e.g., Trombley v. Bank of Am. Corp., No. 08-CV-456-JD, 2013 WL 5153503, at *8 (D.R.I. Sept. 12, 2013) (DiClerico, J.) (awarding both fees and nontaxable costs from common fund in approving settlement of class action).

Plaintiffs have incurred nontaxable costs of $16,122.50 since filing suit.[47] Accordingly this amount should also be awarded.  See Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

## V.    CONCLUSION

The Court should award Plaintiffs' Counsel attorneys' fees based upon the retainer agreement approved by the Rhode Island Superior Court in the Receivership proceeding, of 23.33% of the Gross Settlement Amount, plus costs of $16,122.50, less the credit of $552,281.25 offered by Plaintiffs' Counsel for fees paid in the Investigative Stage of the Receivership Proceedings to be applied to the first recoveries.

---

[47] Wistow Dec. ¶ 40.

Respectfully submitted,

Plaintiffs,
By their Attorney,


/s/ Max Wistow
Max Wistow, Esq. (#0330)
Stephen P. Sheehan, Esq. (#4030)
Benjamin Ledsham, Esq. (#7956)
WISTOW, SHEEHAN & LOVELEY, PC
61 Weybosset Street
Providence, RI   02903
401-831-2700 (tel.)
mwistow@wistbar.com
spsheehan@wistbar.com
bledsham@wistbar.com

Dated:    November 21, 2018

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the within document was electronically filed on the 21st day of November, 2018 using the Electronic Case Filing system of the United States District Court and is available for viewing and downloading from the Electronic Case Filing system.  The Electronic Case Filing system will automatically generate and send a Notice of Electronic Filing to the following Filing Users or registered users of record:

Andrew R. Dennington, Esq.
Christopher K. Sweeney, Esq.
Russell V. Conn, Esq.
Conn Kavanaugh Rosenthal
Peisch and Ford, LLP
One Federal Street, 15th Floor
Boston, MA  02110
adennington@connkavanaugh.com
csweeney@connkavanaugh.com
rconn@connkavanaugh.com

David A. Wollin, Esq.
Hinckley Allen & Snyder LLP
100 Westminster Street, Suite 1500
Providence, RI 02903-2319
dwollin@hinckleyallen.com

Preston Halperin, Esq.
James G. Atchison, Esq.
Christopher J. Fragomeni, Esq.
Dean J. Wagner, Esq.
Shechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, RI  02860
phalperin@shslawfirm.com
jatchison@shslawfirm.com
cfragomeni@shslawfirm.com
dwagner@shslawfirm.com

Howard Merten, Esq.
Paul M. Kessimian, Esq.
Christopher M. Wildenhain, Esq.
Eugene G. Bernardo, II, Esq.
Partridge Snow & Hahn LLP
40 Westminster Street, Suite 1100
Providence, RI 02903
hm@psh.com
pk@psh.com
cmw@psh.com
egb@psh.com

Steven J. Boyajian, Esq.
Daniel F. Sullivan, Esq.
Robinson & Cole LLP
One Financial Plaza, Suite 1430
Providence, RI 02903
sboyajian@rc.com
dsullivan@rc.com

Robert D. Fine, Esq.
Richard J. Land, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
rfine@crfllp.com
rland@crfllp.com

Joseph V. Cavanagh, III, Esq.
Joseph V. Cavanagh, Jr., Esq.
Lynne Barry Dolan, Esq.
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI  02903
Jvc3@blishcavlaw.com
jvc@blishcavlaw.com
lbd@blishcavlaw.com

David R. Godofsky, Esq.
Emily S. Costin, Esq.
Alston & Bird LLP
950 F. Street NW
Washington, D.C.  20004-1404
david.godofsky@alston.com
emily.costin@alston.com

Ekwan R. Rhow, Esq.
Thomas V. Reichert, Esq.
Bird, Marella, Boxer, Wolpert, Nessim, Drooks,
Licenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067
erhow@birdmarella.com
treichert@birdmarella.com

/s/ Max Wistow

34