UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN DEL SESTO, AS RECEIVER AND :
ADMINISTRATOR OF THE ST. JOSEPH :
HEALTH SERVICES OF RHODE ISLAND :
RETIREMENT PLAN, ET AL. :
 :
    Plaintiffs :
 :
v. : C.A. No: 1:18-CV-00328-WES-LDA
 :
 :
PROSPECT CHARTERCARE, LLC, ET AL. :
 :
    Defendants. :

**DECLARATION OF MAX WISTOW IN SUPPORT OF JOINT MOTION
FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL,
AND PRELIMINARY SETTLEMENT APPROVAL, BY PLAINTIFFS AND
DEFENDANTS ST. JOSEPH HEALTH SERVICES OF RHODE ISLAND,
ROGER WILLIAMS HOSPITAL, AND CHARTERCARE COMMUNITY
BOARD AND PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS'
FEES**

Max Wistow, Esq. hereby declares and states as follows:

1. I am counsel, along with Stephen Sheehan and Benjamin Ledsham, for Plaintiffs in the captioned matter, and submit this declaration in support of the Joint Motion for Class Certification, Appointment of Class Counsel, and Preliminary Settlement Approval, by Plaintiffs and Defendants St. Joseph Health Services of Rhode Island ("SJHSRI"), Roger Williams Hospital ("RWH"), and CharterCARE Community Board ("CCCB") (collectively the "Settling Defendants") (all parties to the Proposed Settlement are referred to collectively as the "Settling Parties"), and Plaintiffs' Counsel's Motion for Attorneys' Fees.

1

2. On August 16, 2017 Defendant SJHSRI petitioned ("the "Receivership Petition") the Rhode Island Superior Court to appoint a temporary receiver for the St. Joseph Health Services of Rhode Island Retirement Plan (the "Plan"), in the case captioned *St. Joseph Health Services of Rhode Island, Inc. v. St. Josephs Health Services of Rhode Island Retirement Plan, as amended*, PC-2017-3856 (the "Receivership Proceedings").  The Receivership Petition is attached hereto as Exhibit 1.[1]

3. The Receivership Petition alleged that the Plan was insolvent and sought an immediate reduction in benefits of 40% for all Plan participants.  Specifically, the Receivership Petition sought the following relief:

> (1) the Court appoint a Temporary Receiver forthwith and also appoint a Permanent Receiver to take charge of the assets, affairs, estate, effects and property of the Plan, (2) that the Temporary Receiver and Permanent Receiver be authorized to continue to operate the Plan, (3) that the request for appointment of a permanent receiver and for an immediate 40% uniform reduction in benefits be set for hearing thirty (30) days.

Exhibit 1 at 7.

4. On August 17, 2017 Attorney Stephen Del Sesto was appointed Temporary Receiver of the Plan by the Superior Court.  That order is attached hereto as Exhibit 2.  It set October 11, 2017 for a hearing on the request for appointment of a permanent receiver and for an immediate reduction in benefits.

5. Immediately thereafter Attorney Del Sesto contacted my firm, Wistow, Sheehan & Loveley, P.C. ("WSL"), and asked us to assist him in his duties as Temporary Receiver.  We agreed and began our duties on August 18, 2017.

---

[1] Without exhibits so as not to unnecessarily burden the record.

2

6. On October 11, 2017, Attorney Del Sesto filed in the Receivership Proceedings an Emergency Petition to Engage Legal Counsel, to which he attached the retainer agreement ("WSL Retainer Agreement") he negotiated with WSL. The Emergency Petition with the WSL Retainer Agreement is attached hereto as Exhibit 3. That Emergency Petition informed the Court that "following his appointment, the Receiver determined that his fiduciary obligations to the Plan and its beneficiaries include the need to conduct an investigation into the circumstances which resulted in the Plan's significant, and likely irreversible, financial distress," and that "the Receiver believes that assistance of special litigation counsel is warranted and necessary." Exhibit 3 ¶¶ 4 & 5.

7. In the Emergency Petition, Attorney Del Sesto advised the court as follows:

> WSL have indicated a willingness to assist the Receiver and, even without the security of a formal engagement, have already spent substantial time working with the Receiver to sort through and understand the complexities of this matter. Based on the Receiver's knowledge of WSL and the significant value already brought to this matter in a relatively short period of time, the Receiver believes that WSL's experience, skill, knowledge and assistance will bring a valuable benefit to the Estate and the beneficiaries of the Plan. As a result, the Receiver requests that this Court authorize him to retain WSL as special counsel to the Receiver for the purposes outlined herein and in the attached, proposed engagement attached hereto as Exhibit A.

Exhibit 3 ¶ 5.

8. The Emergency Petition was heard preliminarily that same day, on October 11, 2017, at a hearing attended by many Plan participants because the Receiver was also expected to address whether he recommended a 40% cut of benefits. The transcript of the hearing is attached hereto as Exhibit 4. During that hearing, Attorney Del Sesto put on the record the terms of the WSL Retainer

3

Agreement, consisting of hourly time charges of $375 during the investigation phase, replaced by a contingent fee once claims were asserted, of 10% of the gross recovery if a claim was resolved prior to suit, and 23.5% if the claim was resolved after suit. Exhibit 4 at 12-13.  At the request of the Receiver, I put on the record at the hearing a statement concerning the qualifications and experience of WSL.  Exhibit 4 at 14-18.  At the hearing Judge Stern stated that in light of the short notice for the Emergency Petition, it would be made available on both the Superior Court's public portal and on the Receiver's web site, that opposition, if any, should be filed with the court within the next five (5) days, and then he would issue his decision.  Exhibit 4 at 18-19.

9. On October 17, 2017 Judge Stern's order granting the Emergency Petition was entered.  The order is attached hereto as Exhibit 5.  It states in pertinent part:

> 1. That for the reasons stated in the Receiver's Petition and in accordance with the terms of the Engagement, attached to the Petition as Exhibit A and incorporated herein by reference, the Receiver is hereby authorized to retain the law firm of Wistow Sheehan & Lovely PC ("WSL") to act as the Receivership Estate's special litigation counsel for the purposes more specifically set forth in the Petition and the Engagement;
>
> 2. Until further order of this Court, the Receiver shall be authorized to submit to the Court for approval the time records/invoices of WSL in redacted format along with a reasoned recommendation by the Receiver regarding the approval of the same;
>
> 3. The Receiver's first request for approval of the fees of WSL may include those fees reasonably incurred by WSL in connection with this matter since August 18, 2017;
>
> 4. This Order shall be effective *nunc pro tunc* as of October 11, 2017.

Exhibit 5 at 1.

10. Attached hereto as Exhibit 6 is the Order appointing Attorney Del Sesto permanent receiver of the Plan on October 27, 2017.

4

11. In our role as Special Counsel to the Receiver, WSL issued *subpoenas duces tecum* to the following entities:

- Adler Pollock & Sheehan, P.C.
- Bank of America, N.A.
- Defendant CharterCARE Community Board
- Defendant CharterCARE Foundation
- Rhode Island Department of Health
- Ferrucci Russo, P.C.
- Office of the Rhode Island Attorney General
- Defendant Prospect CharterCare, LLC
- Defendant Prospect Medical Holdings, Inc.
- Defendant Rhode Island Community Foundation
- Defendant Roman Catholic Bishop of Providence
- Defendant SJHSRI (two subpoenas)

12. By agreement, or in acknowledgment of their legal obligation, several of the subpoenaed entities that are Defendants in this case produced documents in the possession and control of other entities that are also Defendants in this case. For example, Prospect Medical Holdings also produced documents on behalf of Defendant Prospect East Holdings, Inc.; Prospect CharterCare, LLC also produced documents on behalf of Defendant Prospect CharterCare SJHSRI, LLC and Defendant Prospect CharterCare RWH, LLC; and Defendant Roman Catholic Bishop of Providence also produced documents on behalf of Defendants Diocesan Administration Corporation and Defendant Diocesan Service Corporation. Defendant The Angell Pension Group, Inc.

("Angell") produced copies of their files in compliance with the order appointing the Receiver, for which no subpoena was required.

13. Thus, as Special Counsel we obtained documents from all of the parties to this case, two of their former attorneys' firms, two state agencies, and Bank of America.

14. Five of the Defendants, as well as the Rhode Island Office of the Attorney General and the Rhode Island Department of Health, did not produce the requested documents either promptly or completely.

15. As a result, WSL filed numerous discovery motions, all of which were granted by the Superior Court or resulted, without granting the motion, in production of the requested documents.

16. This discovery entailed the production and review of over 1,000,000 pages of documents over an eight-month period.

17. For the Investigative Phase, we submitted invoices to the Receiver. The Receiver, separately with respect to each invoice, requested and obtained authorization from the Superior Court in the Receivership Proceedings to make payment.

18. For that investigative phase, WSL as Special Counsel was paid a total of $552,281.25, based upon the negotiated reduced hourly rate of $375 per hour. That fee covered over 1,472 hours of billable time. However, WSL unilaterally chose *not to invoice the Receiver* for the services of more than one lawyer on the many occasions when more than one lawyer in WSL was involved in a task, such as court appearances, intra-office meetings or phone calls, or meetings and phone calls with the Receiver or third parties. The time during the Investigative Phase which we chose *not to bill* exceeded two hundred hours.

19. The Complaint was filed on June 18, 2018. See Dkt. 1.

20. At the same time we filed a nearly identical complaint (but without the ERISA claims) in the Rhode Island Superior Court. That complaint is attached hereto as Exhibit 7.

21. At the same time we also moved for leave to intervene in a civil action that SJHSRI, RWH, and another entity, Defendant CharterCARE Foundation, had commenced in the Rhode Island Superior Court in 2015 (the "2015 Cy Pres Proceeding"), pursuant to which certain assets of SJHSRI and RWH were transferred to CharterCARE Foundation, which Plaintiffs now seek to recover for deposit into the Plan. A copy of our motion and supporting memorandum is attached hereto as Exhibit 8. Defendant CharterCARE Foundation's opposition memorandum is attached hereto as Exhibit 9. Our reply memorandum is attached hereto as Exhibit 10.

22. On June 28, 2018, counsel for CharterCARE Foundation informed the court in the Cy Pres proceedings that the value of CharterCARE Foundation's assets invested with Rhode Island Foundation, as of April 30, 2018, was $8,783,572.83. See Exhibit 11 (Order Preserving Assets Pending Litigation and Setting Schedule for Hearing on Motion to Intervene) at 1 n.2.

23. Over the several weeks preceding formal execution of the Settlement Agreement, the Settling Defendants and Plaintiffs through Plaintiffs' Counsel conducted settlement negotiations, which involved extensive disclosure of the Settling Defendants' assets, including an initial disclosure and several additional or supplementary disclosures based upon the requests of Plaintiffs' Counsel for additional information and clarification.

24. The negotiations also involved negotiations by Plaintiffs' Counsel with the Rhode Island Department of Labor and Training ("DLT") and a meeting with DLT concerning an escrow account (the "DLT Escrow"), which was then in the amount of approximately $2,500,000, that Settling Defendant RWH had funded, securing RWH's self-insured workers' compensation liabilities. As a result of these negotiations, DLT agreed to only $750,000 being retained in the DLT Escrow account, and released the balance, which is included in the Initial Lump Sum being paid by the Settling Defendants in connection with the Proposed Settlement.

25. Thereafter, Plaintiffs and the Settling Defendants agreed on the terms set forth in the Settlement Agreement.

26. Prior to filing the Complaint, Plaintiffs' Counsel entered into retainer agreements with the Named Plaintiffs (the "Retainer Agreements with Named Plaintiffs"), in which the Named Plaintiffs agreed to Plaintiffs' counsel applying to the Court for an award of attorneys' fees, not to exceed the fees to which Plaintiffs' Counsel is entitled under the retainer agreement with the Receiver that was approved by the Superior Court. The Retainer Agreements with Named Plaintiffs are attached hereto as Exhibits 12-18.

27. The Retainer Agreements with the Named Plaintiffs contain several provisions intended to notify the clients of peculiar features of class actions and to avoid having Plaintiffs' Counsel develop any conflicts of interest, including the following:

> In non-class litigation, parties asserting claims are free to pursue only their own interests; they need not take into account the interests of others. Class actions are different, and require both class representatives and the lawyers in their capacity as lawyers for the class to consider and pursue only the common claims and interests of the class as a whole. This means that you must always act in the best interest of the class as a

8

> whole and consider the interests of the class ahead of your own individual or personal interests. If at any time you fail or refuse to prioritize the interests of the class, you will not be able to serve as a class representative, and WSL will not be able to continue representing you.

Exhibits 12-18 at 3.

28. Another provision prevents conflicting interests from interfering with Plaintiffs' Counsel's representation of the class in connection with a settlement involving aggregated payments, such as the Proposed Settlement *sub judice*:

> An aggregate settlement may be insufficient to completely compensate each claimant individually and disagreements may arise concerning how to allocate, or divide, an aggregate settlement. If there is insufficient proceeds or assets to cover the claims of each of the respective Clients, there can be disputes regarding how to allocate the proceeds or assets as between the joint Clients. If any disputes should arise between the joint Clients, WSL will not advise or represent any of the Clients (including the Receiver) in connection with such disputes. WSL will remain able to advocate an overall settlement but not how such settlement should be divided.

Exhibits 12-18 at 6. This provision recognizes that various groups of Plan participants are represented by separate counsel in the Receivership proceedings for purposes of negotiating with the Receiver and each other concerning the potential for and amount of any cuts in benefits to be made, as requested by SJHSRI when it petitioned the Plan into receivership.[2] These other counsel include attorneys Arlene Violet, Robert Senville, Jeffrey Kasle, and Christopher Callaci.

29. At the time the WSL Retainer Agreement was entered into, the relative merits and likelihood of recovery on claims were unknown.

---

[2] While all Plan beneficiaries desire that no cuts be made, they disagree as to how any such cuts (if made) should be borne by the various groups of beneficiaries. For example, one group prefers that a uniform cut be made across the board, while another group prefers that certain beneficiaries by spared any cut.

30.     The Receiver Retainer Agreement established the upper limit of the fee that WSL would earn from representing the Receiver, regardless of the degree of difficulty or other factors that might otherwise justify a higher percentage.  Accordingly, at the time the WSL Retainer Agreement was entered into, WSL accepted the risk that, even if there was a recovery, the agreed-upon contingent fee of 23.33% would not justify the time and effort actually required to obtain it.

31.     On September 4, 2018, the Receiver filed his Petition for Settlement Instructions with the Rhode Island Superior Court.  The petition is attached hereto as Exhibit 19.

32.     On October 5, 2018, the Plaintiffs filed a First Amended Complaint.  See Dkt. 60.  This pleading provides additional factual detail and adds two additional state-law counts.

33.     The Petition for Settlement Instructions was heard on October 10, 2018.  The transcript of that hearing is attached hereto as Exhibit 20.

34.     On October 29, 2018, the Rhode Island Superior Court, Stern, J., issued a written decision concerning the Receiver's Petition for Settlement Instructions.  See St. Joseph Health Services of Rhode Island, Inc. v St. Josephs Health Services of Rhode Island Retirement Plan, No. PC-2017-3856, 2018 WL 5792151 (R.I. Super. Oct. 29, 2018).  On November 16, 2018, the Rhode Island Superior Court, Stern, J., granted the Receiver's Petition for Settlement Instructions and authorized and directed the Receiver to proceed with the settlement.  That order is attached hereto as Exhibit 21. The Order imposes two conditions: "(1) the Receiver refrains from exercising any rights under the PSA prior to the federal court's determination of whether to approve the PSA; and (2)

10

prior to implementing, or directing that CCCB implement, any rights, whatsoever, in favor of the Receiver (or the Plan) derivative of CCCB's rights in CCF or PCC, the Receiver must provide all parties, including but not limited to the Objectors, with twenty (20) days written notice."

35.  Attached hereto as Exhibit 22 is the Asset Purchase Agreement ("APA") produced by the Office of the Rhode Island Attorney General in response to subpoenas in the Receivership Proceedings in connection with the sale of certain assets of the Settling Defendants to Defendant Prospect Medical Holdings, Inc. ("Prospect Medical") and other entities affiliated with Prospect Medical Holdings, Inc. (the 2014 Asset Sale) that closed on or about June 20, 2014.

36.  Attached hereto as Exhibit 23 is the Amended & Restated Limited Liability Company Agreement of Prospect CharterCare, LLC ("LLC Agreement") that was produced by Defendants in response to subpoenas in the Receivership Proceedings. As stated therein, the LLC Agreement was entered into in connection with the 2014 Asset Sale.

37.  Attached hereto as Exhibit 24 is a resolution of CCCB's Board of Trustees dated February 27, 2014, which was produced in discovery.  It states that of the $45,000,000 paid in the 2014 Asset Sale, $31,000,000 was to be used to redeem the hospitals' bonded-indebtedness, and $14,000,000 was to be deposited into the Plan.

38.  Attached hereto as Exhibit 25 is a copy of the Revised By-Laws of CharterCARE Health Partners Foundation (presently known as CharterCARE Foundation) revised as of October 8, 2013.  This document was produced by the Office

11

of the Rhode Island Attorney General in response to subpoena in the Receivership Proceedings.

39. Since this action was commenced on June 18, 2018, attorneys at WSL have devoted a minimum of 1,120 hours of time in prosecuting the claims of the Receiver and the Plaintiffs.

40. Since this action was commenced on June 18, 2018, Plaintiffs have incurred nontaxable costs of $16,122.50.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 21st of November, 2018 in Rhode Island.

_____
Max Wistow