# Exhibit 4

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                                    SUPERIOR COURT


ST. JOSEPH HEALTH SERVICES OF )
RHODE ISLAND                  )
                              )
                              )
                              )
        VS.                   ) C.A. NO. PC-2017-3856
                              )
                              )
                              )
ST. JOSEPH HEALTH SERVICES OF )
RHODE ISLAND RETIREMENT PLAN  )



**HEARD BEFORE**

**THE HONORABLE ASSOCIATE JUSTICE BRIAN P. STERN**

**ON OCTOBER 11, 2017**



**APPEARANCES:**

STEPHEN DELSESTO, ESQUIRE....................RECEIVER



GINA GIANFRANCESCO GOMES
COURT REPORTER

## C E R T I F I C A T I O N

I, Gina Gianfrancesco Gomes, hereby certify that the succeeding pages 1 through 30, inclusive, are a true and accurate transcript of my stenographic notes.

*Gina Gomes*

GINA GIANFRANCESCO GOMES
COURT REPORTER

1      **WEDNESDAY, OCTOBER 11, 2017**

2                **MORNING SESSION**

3          THE COURT:  Good morning.  Madame clerk, if you'd

4      call the case.

5          THE CLERK:  The matter before the Court is Case

6      Number PC-2017-3856, St. Joseph Health Services of Rhode

7      Island vs. St. Joseph Health Services of Rhode Island

8      Retirement Plan.  Counsel, would you each identify

9      yourselves.

10         MR. DELSESTO:  Good morning, your Honor.  Stephen

11     DelSesto, temporary receiver for the plan.

12         THE COURT:  Thank you very much.  The Court first

13     wants to acknowledge there are a number of attorneys who

14     have entered their appearances at this point or have

15     filed motions including the original petition.  And,

16     certainly, if any of those attorneys that have entered

17     wish to be heard on any issues before the Court this

18     morning, just let me know at the appropriate time when we

19     reach the issue.  We have an appearance by Steve

20     DelSesto, the temporary receiver.  We have an appearance

21     by Christopher Callaci for the United States Nurses and

22     Allied Professionals; Arlene Violet on behalf of certain

23     individual plan members; Rob Senville, also on behalf of

24     certain individual plan members along with Attorney

25     Violet; Richard Land of St. Joseph's Health Services of

1    Rhode Island, Inc.; Kathryn Enright of the Rhode Island

2    Attorney General's Office; and Jessica Rider also of the

3    Rhode Island Attorney General's Office.

4       Before the Court today are a number of matters.  The

5    first is the status of the appointment of the Receiver.

6    Second, the status of the pending request by Attorney

7    Land on behalf of the petition of St. Joseph's Health

8    Services of Rhode Island, Inc. to reduce retirement

9    benefits.  That was continued by this Court at the last

10   hearing.  I would like a report of the status of

11   retention of litigation counsel from the Receiver and a

12   status report from the Receiver.

13      The Court has also received a request to schedule a

14   a motion to stay prior to any reduction of benefits

15   approved by the Court by Attorney Violet and that was put

16   on the calendar solely for the reason of scheduling any

17   motion and if Attorney Violet wishes to be heard.  There

18   is also a limited objection of UNAP to the petition for

19   the appointment of the Receiver.  The Court has also

20   received this morning from the Receiver two additional

21   petitions, a petition for instructions and an emergency

22   petition to engage special legal counsel.  And I'm going

23   to request that the Receiver during his report take us

24   through that as well.  That being said, counsel, you may

25   proceed.

1      MR. DELSESTO:   Thank you, your Honor.   Good morning,

2   your Honor.   As your Honor stated, we are here on several

3   issues.   The main issue that this hearing was scheduled

4   for was the petition to appoint me as permanent receiver.

5   Your Honor, for the reasons set forth in my petition for

6   instructions, which I will go over with the Court, I am

7   asking that the Court continue that hearing for

8   approximately two weeks until Thursday, October 27th, if

9   that time is available for the Court.

10      The reason for my request to postpone my appointment

11   as permanent, your Honor, is over the past two months I,

12   Attorney Wistow, and his office have been doing much

13   reading and research regarding this case.   One issue that

14   came up that we noticed was the respondent in this case

15   is the plan.   I have some concerns as to whether or not

16   the plan can be the sole respondent.   It's

17   well-established that if a trust, which I believe this

18   plan is, is sued, that the trustee must also receive by

19   service of process or appearance, they must also be added

20   as a party to the case.

21      As a result, your Honor, to cure what may be

22   deficiencies, I'm not saying that they necessarily are,

23   but as a belt and suspenders, I am asking to make these

24   changes.   I am asking that the Court authorize me through

25   this petition for instructions to serve via summons both

1    Bank of America, who is the trustee of the trust, but

2    also the two authorized signatories, who have been

3    indicated to me through Bank of America's documents as

4    being the two parties authorized to direct the trustee at

5    the time of my appointment as temporary receiver.

6    To give a little background on that, your Honor,

7    Bank of America is, as successor to Fleet National Bank,

8    the trustee of the trust which was established in 1995.

9    While they are the trustee, a reading of the trust

10   document indicates that they have very little

11   discretionary authority with regards to managing the

12   funds in that trust.  They actually are directed by

13   several individuals that the trust indicates.  I have

14   asked Bank of America to provide me with documentation

15   that they have that provides them with the names and

16   signature specimens as to who can direct them with regard

17   to the assets.  As far as investments and benefits are

18   concerned, they provided to me a limited production which

19   indicated at the time that I was appointed, Dan Ryan, who

20   is a former board member -- I think he may have held the

21   position.

22   THE COURT:  Based on these documents, he's a

23   secretary.

24   MR. DELSESTO:  Okay.  As well as Richard Land, who

25   is the attorney for the petitioner.  Out of an abundance

1    of caution, I am asking that they also be served via

2    summons just for purposes of notifying them of the

3    petition, the appointment of temporary receiver, and ask

4    them to appear to the extent that they feel it's

5    necessary on the 27th and show cause why a Receiver is

6    not necessary in this case.  I believe that to the extent

7    there is a deficiency in the pleading that would cure it.

8    To the extent that your Honor feels it's necessary, it

9    may also be appropriate to serve that summons on the

10   current board members, those who were in place and those

11   were the ones who voted to file the petition with the

12   Court in the first instance, which would include David

13   Hurscht, Polly Daly, and Father Timothy Riley. (Phonetic

14   spellings)  Again, this is not because I have determined

15   there is any liability with regard to any of those

16   parties, but under the law they are required or those

17   that direct and have control over the trust and the funds

18   are required to receive notice of the proceedings.

19        THE COURT:  Is there any, correct me if I may be

20   wrong, any issues from the temporary receiver's point of

21   view of holding off for the couple of weeks for the

22   permanency?

23        MR. DELSESTO:  I do not believe so, your Honor.  I

24   believe the temporary order gives me, obviously, certain

25   powers.  In addition, as your Honor may recall, we did

1    ask for the Court to expand those powers to include

2    subpoena powers, which the Court granted.  With that

3    expanded power in the temporary order, I think a couple

4    of weeks will not serve to hinder or compromise any of my

5    efforts.

6         In addition, your Honor, my petition for

7    instructions seeks instruction from this Court with

8    regard to whether or not it would be appropriate or

9    necessary to add Bank of America in its capacity as

10   trustee as a respondent in this case or as what I refer

11   to as a nominal respondent.  Again, recognizing that

12   there is no allegation of liability or there is no

13   allegation of wrongdoing on their behalf, it's purely to

14   notify that party that is responsible under the trust

15   document for the trust so that the trust is properly

16   before this Court and under the Court's jurisdiction.

17        That would be something that I would be asking the

18   Court to provide me instruction so we could amend the

19   case caption to include them in addition to providing the

20   summons that I'm requesting for the petition for

21   instructions.  I do realize that was filed today and it

22   may be prudent to hold off the entry of an order

23   regarding that while the parties have a chance to read

24   and absorb the request made.  I felt it was appropriate

25   to bring it to the Court's attention today especially in

1    light of my request to postpone the hearing on a

2    permanent for that approximate two-week period.

3         THE COURT:  Okay.  So the petition for instruction

4    that was filed today, the Court is going to approve short

5    notice so we don't have to deal with the normal ten-day

6    period.  The Court is going to allow any party who wishes

7    to file the papers with respect to the petition until the

8    close of business on Monday.  It will be on the court

9    site but also on the Receiver's site as well and the

10   Court will enter the appropriate order.

11        I have no issue continuing the permanency hearing.

12   I haven't had a chance to look at the substance.  I will

13   tell you that certainly we're serving additional parties

14   and there is  questions in terms of current members of

15   the board.  I don't necessarily see a down side so we

16   don't get back on the same issue again, getting more

17   people served than less at this point.  The Court will

18   reserve, however, notice is shortened.  Any objections

19   filed by the close of business on Monday.

20        MR. DELSESTO:  Thank you, your Honor.  It's

21   important to note and it's mentioned in my papers, your

22   Honor, part of the reason for this measure I'm asking to

23   take is because the order appointing the temporary in

24   paragraph seven indicates that a citation should be

25   issued to the plan.  It's my understanding that the clerk

1   no longer engages in that practice so there is a question
2   as to service at this point.
3       Unless there are any further questions on that, your
4   Honor, I would like to move to the petitioner's request
5   in the petition to appoint Receiver by which the
6   petitioner request that the Court authorize a reduction
7   of benefits of 40 percent.  As your Honor knows from our
8   last hearing, there has been much confusion, and, quite
9   frankly, anxiety among the pension holders around that
10   request.  Your Honor mentioned at the last hearing that
11   there was a question as to whether or not with a Receiver
12   now in place whether such a request was even appropriate.
13       As a result, your Honor, assuming for the moment
14   that it would be appropriate, I am asking that the Court
15   pass that request in light of the fact that the Court has
16   set a timeframe sometime after the first of the year to
17   address reduction of benefits and I am charged with
18   reviewing all available options to determine what may be
19   the most equitable way to address an adjustment of those
20   benefits.  So I am asking that the Court pass the
21   petitioner's request and that the next time we are before
22   the Court on the issue of benefits reduction will be on
23   my recommendation, which will occur sometime after, I
24   believe, we had said sometime around the 1st of February.
25       THE COURT:  That issue in terms of passing and

1    trying to stay away from the legal terms basically means

2    do away with that motion like it doesn't exist.  It means

3    the Receiver may bring a motion down the road.  That was

4    pending and there was a motion to stay by Attorney Violet

5    and also a limited objection by UNAP which seemed to

6    involve some of these issues.  Attorney Violet, would you

7    like to be heard with respect to that?

8         MS. VIOLET:  Yes, your Honor.  Your Honor quite

9    correctly noticed that we put this motion for stay in

10   just so we could get a further date to have it heard.  As

11   the Court knows from I'm sure reviewing the motion, we

12   have made requests on behalf of the 300 plus people that

13   Attorney Senville and I represent pro bono for certain

14   information.  I only made that yesterday afternoon.  So I

15   am sure the Receiver has not a chance to look over

16   information and data that we, in fact, are looking for

17   relative to the underpinning of this motion.

18        In addition, your Honor, I also sent over a couple

19   of cases, one of which is a United States Supreme Court

20   case, Califano vs. Yamasaki and Matern vs. Matthews, the

21   case my co-counsel Robert Senville successfully argued to

22   the United States Court of Appeals Third Circuit that

23   requires, we believe, notice to every retirement plan

24   member as well as the mechanism where there is a proposed

25   reduction of benefits that they have an opportunity to be

1    heard on undue hardships.

2        I understand, of course, with the continuation of

3    this matter and that there, in fact, is not going to be

4    any cut, at this point I don't feel I have to argue that

5    point.  It's going to happen just by the passage of time,

6    but when the point comes on this issue, I want to just

7    make sure that proper notice was sent to each retirement

8    plan member of the proposed reduction of benefits and the

9    opportunity to be heard because I think that the

10   governing principles of the case, which is against equity

11   in good conscious, is the case law that forms those types

12   of decisions.  So given that the continuation anyway is

13   going on, I think until February or so, at this point we

14   don't want to press the motion.  So we would ask you to

15   continue it to another date.  Thank you, your Honor.

16       THE COURT:  Thank you very much.  So, basically,

17   because the Receiver has now withdrawn any motion to

18   reduce benefits subject to him making a further one down

19   the road, the motion to stay that was filed by Attorney

20   Violet dealt with what the process and procedure and the

21   steps would be in terms of how that motion would be

22   heard.  So while the Court will continue that motion

23   without assigning a date right now, because we do

24   anticipate that at some point the Receiver may be filing

25   a motion and certainly that would be the appropriate

1   time.   So without prejudice to any of the 300 people that

2   filed the motion, we will have an opportunity to have

3   that formally heard by the Court should the Receiver file

4   a formal motion, and I would ask the Receiver to just

5   keep Attorney Violet in the loop so she is aware of when

6   that motion may be coming and we can schedule that.

7        MS. VIOLET:   Thank you, your Honor.

8        THE COURT:   Attorney Callaci, you have a limited

9   objection for dealing with the same issues.   Does counsel

10  wish to be heard on that?

11       MR. CALLACI:   Yes, your Honor, briefly.   The Court

12  has decided to pass on the matter, I'm inclined not to

13  speak on the objection unless you would like me to.

14       THE COURT:   No, no.   I just wanted to give you the

15  the opportunity.   The motion was passed.   Certainly,it's

16  without prejudice to you filing any papers you feel are

17  appropriate.

18       MR. CALACI:   Thank you.

19       THE COURT:   If the Receiver would please move on.

20       MR. DELSESTO:   Thank you, your Honor.   Your Honor,

21  the next issue I wanted to address involves the

22  engagement of Wistow & Loveley.   Attorney Max Wistow,

23  Steve Sheehan, and Benjamin Ledsham from that office to

24  assist the Receiver with regard to identifying potential

25  claims and then assessing the prudence of pursuing those

1   claims, and then if that is determined to be a prudent

2   step, to actually pursue those claims.  I have filed,

3   your Honor, what is captioned as an emergency petition to

4   engage special legal counsel in that regard.  I have in

5   that petition asked that the Court authorize me to engage

6   Wistow & Loveley for the purposes I just stated, which

7   are more specifically outlined in that petition as well

8   as in the engagement that is attached as Exhibit A to

9   that petition.

10       I will break down quickly for the Court the terms of

11   that engagement.  It's basically a three-step process or

12   three-stage process, your Honor.  The first stage is, as

13   I just stated, identify claims, whether or not there are

14   claims that can be brought on behalf of the Receiver or

15   the plan against any individual or groups.  At that

16   stage, your Honor, Wistow Sheehan & Loveley will be paid

17   a blended breakup of $375 an hour, which notably is the

18   same breakup charged by the Receiver in this case.

19       Beyond that stage, your Honor, stage two, if claims

20   are identified and it is determined that it's prudent to

21   pursue those claims, then it is a stage where I am

22   referring to it as a settlement in lieu of litigation, so

23   Wistow Sheehan & Loveley will endeavor to try to settle

24   those claims without having to file a lawsuit and bring

25   those claims either via demand letter or something of the

1   like.  If they are able it recover any moneys at that

2   stage, they will receive ten percent of the gross

3   recovery at that stage.  Obviously, your Honor, if I

4   state anything or do not include something, I ask that

5   Attorney Wistow supplement whatever I'm saying to your

6   Honor.

7          Finally, your Honor, is what I will call the final

8   stage and that's what I am going to term as the

9   litigation stage.  If there are claims identified and if

10  the efforts to settle in lieu of litigation are not

11  successful with any party or all parties that are

12  identified and Wistow Sheehan & Loveley is required to

13  commence formal litigation against those parties, it

14  would be a contingency fee based upon the gross recovery

15  of 23 and a third percent.  Those are the terms that

16  Wistow Sheehan & Loveley and I had negotiated.  I believe

17  they are fair and reasonable.  They do take into account

18  the increasing complexity that happens in litigation in

19  the future and I believe the engagement of Wistow Sheehan

20  & Loveley is in the best interest of the estate as well

21  as the pension holders.

22         While I know that the Court and I are familiar with

23  that firm and its expertise and skill, many in the

24  courtroom may not be.  So with your Honor's permission, I

25  would ask that Attorney Wistow, on behalf of that firm,

1    provide just a few words explaining his law firm and the

2    qualifications that they have.  I have spelled it out,

3    but I think it's important for the people in the

4    courtroom to hear.

5         THE COURT:  Thank you.

6         MR. WISTOW:  Good morning, your Honor.

7         THE COURT:  Good morning.

8         MR. WISTOW:  Let me state that I found out about 20

9    minutes ago that I would be called upon to make this

10   presentation, for which on advance notice I want to thank

11   the Receiver.  Having said that, I don't have an

12   opportunity to present a complete resume so let me try to

13   explain what our firm is like.  We do general litigation.

14   We don't do criminal work.  We don't do collections.  We

15   do mostly complex and difficult civil litigation.  Our

16   most recent adventure involved the 38 Studios, where our

17   office represented Rhode Island Commerce Corp. and

18   achieved settlements of about $61 million out of a total

19   potential liability of $89 million.

20        I myself have been practicing, I blush to confess,

21   48 years.  The two other lawyers in the case, who, by the

22   way, worked extensively on 38 Studios and didn't get

23   anywhere near the credit they deserved, Steve Sheehan and

24   Benjamin Ledsham, and they will be working intensively on

25   this case.  Steve has been practicing 38 years and

1    Benjamin ten years.

2         My office has been involved over the years in rather

3    complex matters -- 38 Studios, obviously, the Station

4    Fire where we were one of the lead counsel on that case.

5    We have been involved in some very unusual actions

6    involving suits against the Palestinian Liberation

7    Organization and the terrorism claims for which we

8    achieved notable settlements, the terms of which are not

9    disclosable.  We were involved in the Depco case during

10   the Sundlun administration.  We have done many civil

11   rights' cases invariably on the part of injured people,

12   police brutality cases.  We've had the pleasure, and I

13   put that in quotes, of being involved in redistricting

14   and reapportioning cases both statewide and in the City

15   of Providence.

16        We're no strangers to suing hospitals, mostly in

17   medical malpractice cases.  We have sued Roger Williams

18   and St. Joseph's Hospital numerable times in the past.

19   We have nothing pending against them at the moment.  And,

20   by the way, I don't mean to indicate by that statement

21   that we are planning necessarily to sue Roger Williams or

22   St. Joseph's.

23        We've represented over the years and continue to

24   represent at the present time lawyers who are being sued

25   and we're suing lawyers for legal malpractice.  We have

1    represented government officials before the Rhode Island
2    Ethics Commission on ethics issues.  And, generally, I
3    think we've done pretty much what can be done.  People
4    might say we are jack of all trades and master of none,
5    but we have been through it all.
6        I want to say one thing about the fee arrangement.
7    The period of the so-called investigation is going to be
8    relatively unusual because, as Mr. DelSesto has pointed
9    out, we are going to be able to do extensive discovery
10   during this investigatory stage to prove not only the
11   acquisition of voluminous records but also the deposition
12   of various people.  We are going to be able to do that
13   before we bring suit.  We are hopeful that if we do come
14   up with something worthwhile the potential of settling
15   before suit will be relatively realistic, in which case
16   the ten percent attorney's fee we believe will be modest.
17       We talked both to Ms. Violet and her colleague Mr.
18   Senville and to the union about the fee arrangement
19   because believe it or not, your Honor, some lawyers would
20   like to be seen as doing the right thing and I believe
21   that we have the support of both the union and Ms. Violet
22   and Mr. Senville at this point both to our appointment
23   and to the terms of the compensation.  If your Honor has
24   no questions.
25       THE COURT:  No.  Thank you very much, and I

1     appreciate that.  I just want to point out for the record

2     that I had contacted the Receiver this morning when I

3     saw the emergency motion and had requested if you would

4     address the Court just because I thought it was important

5     on the record for people to understand.  So anything

6     credited to the Receiver comes back to me.

7          MR. DELSESTO:  I was going to take credit, your

8     Honor.  I wanted to see how Max did on his feet.  Your

9     Honor, with regard to Max Wistow Sheehan & Lovely's

10    engagement, again, that was filed today.  I do recognize

11    that it would be prudent to, obviously, not rule on that

12    request today.  I have filed it.  I did file a proposed

13    order.  In that order, your Honor, I do want to note this

14    is listed in the petition but it's also in the order, in

15    addition to engaging Wistow Sheehan & Loveley under the

16    terms of the engagement that is attached, recognizing the

17    sensitive nature of the time records that Wistow Sheehan

18    & Loveley will have relative to litigation and potential

19    strategy and things of that nature, I ask that the Court

20    allow when I come in to seek approval of the fees that

21    they are invoicing to the estate, that those fees be

22    allowed to be submitted to the Court in redacted form so

23    as not to reveal any sensitive strategy information

24    regarding litigation and that it be accompanied with a

25    recent recommendation by the Receiver as to those fees,

1    your Honor.  Again, the reason for that is the sensitive

2    nature of the work they will be doing in the

3    investigation and I think it would be imprudent if those

4    were filed publically.

5         In addition, your Honor, as your Honor is aware,

6    Wistow Sheehan & Loveley, all three attorneys, Wistow,

7    Sheehan, and Ledsham have been working very closely with

8    me since very early on in the case.  Not withstanding the

9    fact that the engagement request is coming before your

10   Honor today, they have spent substantial time and have

11   brought what I would consider to be of significant value

12   already to the case in the last two months.  The order

13   also makes a request that any time they have incurred

14   prior to today with regard to this case be permitted to

15   be submitted in the first request that I gave to the

16   Court for approval of their fees.

17        THE COURT:  Counsel, certainly I understand the

18   emergent nature of the request.  I think everyone wishes

19   the investigation continue so there can be a

20   determination of whether there are claims of the estate

21   against any third parties or not, so we can have the

22   information.  I also recognize that the motion was just

23   filed this morning and I have briefly been able to look

24   at it.  The Court thinks it's appropriate to certainly

25   wait the ten days for a formal notice.  That should be

1    made available today on the website and also will be on

2    the court portal.  If there are any objections or anyone

3    wishes to be heard in writing to file something by the

4    close of business on Monday.  After the Court reviews if

5    anything that is filed, the Court will make a

6    determination whether a further hearing is necessary or

7    whether it will enter an order or modify an order if it

8    deems it appropriate.  But I appreciate you, Attorney

9    Wistow, and his firm getting to the point whether we get

10   it from potentially having counsel engaged by the

11   Reciever to investigate and take steps with respect to

12   any claims that we have before us today is something that

13   the Court can consider.

14       MR. DELSESTO:    Thank you, your Honor.  Unless there

15   are any questions on the engagement of Wistow Sheehan &

16   Loveley, your Honor, I would like to move to the next

17   issue on my list, which I'm going to call the creation of

18   creditors, committees, or groups.  There has been a lot

19   of concern raised by pension holders and rightly so.  As

20   your Honor knows, we did have a town hall meeting on

21   October 2nd.  We had about 600 participants at that

22   meeting and many expressed concern that they didn't have

23   a voice yet in this proceeding.  Obviously, Attorneys

24   Violet and Senville have identified a group that they are

25   representing in addition to the union representatives,

1    union members.

2         But there is a group, which I believe is

3    encompassing nonunion members, who may or may not be

4    receiving retirement benefits but who are what I would

5    term as still employable.  They are not disabled or of

6    the advanced age that they could not seek employment.  I

7    will term them because they have used the term, that

8    middle group, I believe needs some voice even at this

9    early stage in the case.  Not necessarily regarding what

10   will or won't happen to the benefits, although that is an

11   issue that we are going to be fast approaching over the

12   next few months, just from a point of receiving

13   information, communicating, getting that information and

14   getting their concerns and the issues that they want

15   addressed into the hands of somebody who can bring it to

16   my attention.

17        While I am not prepared today to ask the Court to

18   designate or assign a creditor committee, but I would ask

19   that the Court allow me to prepare a petition and

20   recommendation essentially which creates those which

21   would be heard on the same day, if your Honor would allow

22   it, as the permanent hearing on the 27th, but also to

23   give me time to identify potential counsel.

24        I have spoken with Attorneys Violent and Senville,

25   the attorneys in Mr. Wistow's office, as well as the

1    union to try to identify attorneys that may be able to

2    and willing to step into that role.  Obviously, your

3    Honor, Ms. Violet and Senville have said they are doing

4    their representation on a pro bono basis.  The union is

5    obviously doing their representation of the union members

6    who pay dues to the union.  That middle group because,

7    quite frankly, I do not believe the estate can afford to

8    retain counsel on their behalf, there is a question as to

9    whether or not if we sought counsel that was not willing

10   to do it pro bono, that those parties would need to

11   understand what the fee would be with that attorney and

12   then work it out.

13        Hopefully, I can identify one or more attorneys that

14   will be willing to do it on a pro bono basis, but I would

15   just ask for that additional time to prepare a reasonable

16   recommendation to the Court, which hopefully will include

17   a recommendation on a counsel that costs, hopefully, the

18   pension holders no additional funds.  But if so, they can

19   make a determination for themselves as to whether or not

20   they want to hop into the that group.

21        THE COURT:  Let me see if I can break this down and

22   understand it a little bit.  We have basically two paths

23   that are going on.  The first is we have counsel

24   investigating claims and determining where there are

25   claims and looking to bring money and to appropriate it

1    into the estate.   I don't necessarily see an issue with

2    all 2,700 plus aside from what we just got this morning

3    in terms of what the arrangements are of not being on the

4    same page in terms of bringing into the estate.   Is that

5    what happened?

6         MR. DELSESTO:   I think it's safe to say, your Honor,

7    that all 2,729 pension holders are interested in bringing

8    as much money into the estate to supplement the current

9    plan.

10        THE COURT:   We're talking about something a little

11   different here and I just want to be clear.   Those 2,729

12   members of the plan are in differing positions.   You just

13   went through, we have some that are retirees that are

14   currently collecting that may be in a certain situation,

15   we have members of the bargaining unit that are involved,

16   and then we have another group that you started talking

17   about that are no longer covered by the bargaining unit

18   and may not be collecting at this point and there may be

19   some other things that come into play.   Maybe it's those

20   kinds of groups or maybe it's something different that

21   the Receiver wants to look at and come up with a

22   committee structure looking at the interest of those

23   different groups, which the Court has done in the past,

24   most recently with Westerly Hospital, so I am all for

25   that.

1        But I think it's important for everyone to

2   understand there is another reason for that and the

3   reason for that is, as the Receiver said last time, is

4   that after the first of the year there may come a point

5   in time where the Receiver is going to have to ask this

6   Court to make some adjustments in benefits based on the

7   amount of assets that are in the plan.  I foresee an

8   issue where there may be different points of view

9   depending on where people are as plan participants in

10  terms of what the Court should do.  I would like sooner

11  rather than later to kind of tee up that issue of whether

12  we are going to have groups to make sure that if down the

13  road the Court has to make a decision is getting informed

14  from a different prospective of the groups.

15       I understand because of different circumstances of

16  different people, there can probably be 25 or 30

17  different groups.  Unfortunately, to manage this we need

18  to have a limited number of groups, and if we have

19  attorneys that are willing to pro bono represent certain

20  portions of the groups or if there are attorneys already

21  representing certain portions of the group, I'm going to

22  leave that to you to make the appropriate

23  recommendations.

24       But I think that it's critical when we come back on

25  the 27th that you're prepared to make that recommendation

because I really do view for good or bad, unfortunately, there is two parallel paths right now and the Court is going to be in the position where it may have to address that after the first of the year.  What do we do in terms of benefits that are going out because of the amount of money in the plan?  It's important that the Court be informed from very different perspectives from the people on the plan. So I appreciate you brought it up.  As far as I'm concerned, aside from claims it's appropriate and necessary to move forward.

MR. DELSESTO:  Thank you, your Honor.  And to your point, your Honor, part of the reason why I want that established sooner rather than later it's because my intention to sit down with Attorney Violet, Senville, Callaci and whoever the attorney for that middle group is as quickly as possible to see if we can collectively come to a resolution on benefits.  I think it's important for everyone to understand that the work that Wistow Sheehan & Loveley will be doing will take some time.  Even if they are able to identify potential claims that are prudent to pursue, that is much further down the road than the February 1st date that we spoke about at the last hearing.  So at the very least there would need to be some type of interim adjustment on benefits to make sure the plan sustains in an appropriate way while Wistow

1    Sheehan & Loveley does the investigation and eventually

2    pursues whatever claims and litigation that is.

3        THE COURT:  I just want to be clear, there is a

4    clean slate.  The other motion about the 40 percent no

5    longer exists.  It's going to be that that, you know,

6    recommendation and the parties is going to be something

7    that is yet to be determined.  I use the word may, but,

8    you know, being quite frank, there is assets in the

9    pension plan at this point that are far less than would

10   be available to make all the payments to the retirees.

11   So it may very well be an issue that we need to address

12   prior to knowing what claims there may be and hopefully

13   resolving some of those claims.

14       MR. DELSESTO:  Exactly.

15       THE COURT:  Is there anything else?

16       MR. DELSESTO:  Unless your Honor has any questions

17   on that, I know everything I just presented to your Honor

18   provides somewhat of a summary of the status of what has

19   been done but I have some additional information that I

20   can provide your Honor in terms of a general status over

21   and above what we've already discussed today.

22       THE COURT:  Why don't we do that.  I just want to

23   point out, now that we talked about an emergency petition

24   to engage counsel, something that came up last time and

25   something that Attorney Callaci brought up in his papers.

1    As I mentioned before Attorney Enright and Rider from the

2    Rhode Island Attorney General's Office that this

3    engagement in no way both regulatory, state, federal,

4    operates a stay in any way of any investigation or

5    anything else that they deem appropriate.  The role of

6    the attorney for the Receiver going forward is later

7    focused on claims the estate may have, resolving the

8    issues that may affect the plan, and it doesn't foreclose

9    in any way  any of the other agencies from doing what

10   they may or may not do what they feel is appropriate.

11   Why don't we move forward.

12       MR. DELSESTO:  Thank you, your Honor.  Since the

13   last time we were before your Honor on September 8th, in

14   addition to all of the discussions and negotiations that

15   resulted in the petition today, I have met, along with

16   Attorney Wistow, many of the state leaders.  We have met

17   with President Ruggiero from the senate.  We met with

18   Speaker Mattiello.  We met with members from the

19   Governor's office as well as with Treasurer Magaziner.  I

20   am happy to report, obviously, the feedback on what we

21   are doing and what we're trying to do is positive.

22   Obviously, all state leaders were very upset with the

23   need to do what we're doing but happy with the Court.  I

24   and Wistow, Sheehan, & Loveley are pursuing what we are

25   and trying to clear up what has happened and what can be

1    done to fix it.

2        I am also happy to let the Court know that Treasurer

3    Magaziner, who, obviously, his office has expertise in

4    dealing with pensions has offered the services of his

5    staff to provide any information that he can to assist in

6    our efforts.  I already had several communications with

7    his office in which they provided  information that will

8    be helpful.  I appreciate that offer and I will continue

9    to utilize it as long as the offer remains open.

10        In addition to that, your Honor,  we have also met

11    with the actuary of the plan, the plan administration,

12    which is Angell Pension, and their counsel.  We had a

13    substantial meeting with them and we're going to be

14    following up in e-mail communication with their counsel

15    this morning to set up a set discussion, not in person,

16    but on the phone with them on that issue.

17        As I indicated earlier in the presentation, we had a

18    town hall meeting on October 2nd at Rhodes on the

19    Pawtuxet.  We had approximately 600 pension holders in

20    attendance and after a brief overview of the process and

21    where we were at that point, I opened up the floor to

22    questions and many of the questions that were raised, the

23    obvious ones were what happened, where did the money go,

24    but they were also related to issues that were brought

25    before the Court today in terms of the creditors,

1    engaging Mr. Sheehan and Loveley, and things of that

2    nature.  I continue to receive many, many, many calls and

3    e-mails from pension holders regarding the status of

4    issues.  Most are out of state at this point, who are not

5    able to attend hearings like this.  I have indicated to

6    them that I have set up the website which has court

7    pleadings as I indicated at the last hearing.  Since then

8    I've also setup a website, a companion piece of the

9    website, which has information that I believe is public

10   or should be publically available related to the pension

11   plan with one caveat, your Honor.

12       Obviously, there are documents that may come into my

13   possession that generally speaking, I believe, might be

14   appropriate for public consumption.  However, for the

15   reasons related to Wistow, Sheehan & Lovely's efforts, I

16   don't think it's prudent at this time to make that

17   information public.  Whatever I'm making public on that

18   site, it's based on the determination that it is not only

19   appropriate for public consumption, but that it will not

20   in some way compromise the efforts of Mr. Wistow and his

21   firm on what their charge is in this case.

22       Other than that, your Honor, that pretty much brings

23   us current to today.  We will continue to review

24   documents related to the plan.  It's a large volume of

25   documents as your Honor is aware and may know.  Each time

1    we review something, it sometimes raises more questions

2    than answers for us.  It's a long arduous process.  We're

3    going through it.  Possibly in the next two weeks when we

4    are back before your Honor on the permanent that will

5    give us another update as to where we are and I will

6    continue to keep people informed as much as I can.

7        I have done, as I presented to your Honor, a draft

8    of what I will call frequently asked questions.  I'm

9    adjusting that from the first one that I had sent to your

10   Honor.  I received input from Wistow Sheehan & Loveley on

11   it and I added other issues that pension holders have,

12   quite frankly, raised to me and I will be posting that on

13   the data portion of the website by the week's end and we

14   will supplement that as additional questions come up and

15   as this case proceeds and other frequently asked

16   questions come up at each stage.

17       THE COURT:  I would just ask counsel that the

18   Receiver communicate back to those general office's that

19   offered their help of where we are status wise, including

20   an application to retain, but also just as importantly,

21   so nobody is caught off guard you may be presenting a

22   petition after the first of the year which deals with

23   cuts and certainly those will be appreciated.

24       MR. DELSESTO:  I will, your Honor.  Unless your

25   Honor has anything further, that concludes my report for

1    today.

2    THE COURT:  Attorney Wistow, is there anything else

3    that you wish to bring up that the Receiver hasn't

4    covered?

5    MR. WISTOW:  Only to point out that if indeed we are

6    appointed, we are ready to the same day issue our initial

7    subpoenas.  We have been working on those.

8    THE COURT:  Thank you very much.  With that, I want

9    to thank the Receiver for the report.  9:30 on October

10    22nd will be the next hearing to take up the permanent

11    receiver.  The emergency motion and the petition for

12    instructions filed with the Court will be made available

13    both by the Receiver, and the Court requests anyone who

14    wishes to be heard in writing to submit something by the

15    close of business on Monday.

16    MR. DELSESTO:  Thank you, your Honor.

17    THE COURT:  Thank you.

18    MR. DELSESTO:  I will submit a proposal order on the

19    petition for instructions as well as one has already been

20    submitted on which is Wistow Sheehan & Loveley.

21    THE COURT:  Thank you all for your patience.  The

22    Court is in recess.

23    (A D J O U R N E D.)

24

25