UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                    )
STEPHEN DEL SESTO, AS RECEIVER AND  )
ADMINISTRATOR OF THE ST. JOSEPH     )
HEALTH SERVICES OF RHODE ISLAND     )
RETIREMENT PLAN, ET AL.             )
                                    )
        Plaintiffs,                 )
                                    )  C.A. No. 18-328 WES
    v.                              )
                                    )
PROSPECT CHARTERCARE, LLC, ET AL.,  )
                                    )
        Defendants.                 )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is a request for final approval of a settlement reached between Plaintiff Stephen Del Sesto ("Receiver"), as state appointed receiver and administrator of the St. Joseph Health Services of Rhode Island Retirement Plan ("Plan"), Named Plaintiffs Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), and Defendants St. Joseph Health Services of Rhode Island ("SJHSRI"), Roger Williams Hospital ("RWH"), and CharterCARE Community Board ("CCCB")(collectively, the "Settling Defendants").  Two groups of defendants - the

1

Diocesan Defendants[1] and the Prospect Entities[2] (collectively, the "Non-Settling Defendants") – object to approval of the settlement.

Following preliminary approval of the settlement, a fairness hearing was held on September 10, 2019. See Min. Entry for Sept. 10, 2019. For the reasons stated in this memorandum and order, the Court GRANTS final approval of the settlement and certifies the class, class representatives, and class counsel.[3]

I. Background

This action stems from alleged underfunding of a retirement plan for nurses and other hospital workers employed by SJHSRI. Am. Compl. ¶ 54, ECF No. 60. According to the amended complaint, the Plan, which has 2,729 participants, is insolvent. Id. After the Plan was placed into receivership in 2017, the Receiver and several named participants, individually and on behalf of a purported class of plan participants, filed a twenty-three-count complaint in this Court against several defendants, alleging violations of the Employee Retirement Income Security Act ("ERISA") for failure to

---

[1] The Diocesan Defendants consist of the Roman Catholic Bishop of Providence, a corporation sole, the Diocesan Administration Corporation, and the Diocesan Service Corporation.
[2] The Prospect Entities include Prospect CharterCARE, LLC, Prospect CharterCARE SJHSRI, LLC, Prospect CharterCARE RWMC, LLC, Prospect East Holdings, Inc., and Prospect Medical Holdings, Inc.
[3] This memorandum and order addresses only the merits of this settlement agreement. Plaintiffs' Motion for Attorneys' Fees in connection with the settlement, ECF No. 64, is currently being reviewed by the Special Master appointed by the Court on September 5, 2019. See Order Appointing Special Master 4, ECF No. 152.

2

meet minimum funding requirements and breach of fiduciary duty, as well as various state law claims. See generally Am. Compl.

A number of defendants have agreed to settle with Plaintiffs, resulting in two separate settlement agreements. The Court approved the settlement reached between Plaintiffs and SJHSRI, RWH, CCCB, and CharterCARE Foundation ("CCF") ("Settlement B") for the reasons stated in its Memorandum of Decision Entering Final Approval of the Settlement, ECF No. 162. The settlement currently before the Court, "Settlement A," was reached between Plaintiffs and SJHSRI, RWH, and CCCB. See Joint Mot. for Class Certification, Appointment of Class Counsel, and Preliminary Settlement Approval ("Joint Mot. for Prelim. Approval") 1, ECF No. 63.

The terms of Settlement A are set forth in the parties' settlement agreement, ECF No. 63-2. In sum, following approval, the Settling Defendants will transfer to the Receiver an initial lump sum payment in an amount not less than $11,150,000. See Settlement A ¶¶ 1(q), 10. Additionally, the Settling Defendants will assign to the Receiver all rights in an escrow account held by the Rhode Island Department of Labor and Training with a current balance of $750,000. Id. ¶¶ 15-16. CCCB will also assign its rights in CCF to the Receiver, and the Settling Defendants will hold CCCB's interest in non-settling defendant Prospect CharterCARE in trust for the Receiver. See id. ¶¶ 1(c), 1(d), 13, 17. Finally, the Settling Defendants agree to petition the Rhode

3

Island Superior Court to initiate judicial liquidation proceedings, pursuant to which their remaining assets will be distributed to creditors, including Plaintiffs. See id. ¶¶ 21-26. In exchange, Plaintiffs will release the Settling Defendants and their agents, officers, and directors serving after June 20, 2014 from liability as it relates to the Plan.[4] See id. ¶ 11, Exs. 9, 10, 11 at 1-2.

Plaintiffs and Settling Defendants sought preliminary approval of the settlement, to which the Non-Settling Defendants objected. See generally Joint Mot. for Prelim. Approval; Diocesan Defs. Resp. in Opp'n To Joint Mot. for Prelim. Approval ("Diocesan Opp'n to Prelim. Approval"), ECF No. 73; Prospect Entities Opp'n To Joint Mot. for Prelim. Approval ("Prospect Opp'n to Prelim. Approval"), ECF No 75. On June 6, 2019, the Court preliminarily approved the settlement and directed the settling parties to give notice to the purported class. Order Granting Prelim. Approval 15, 20, ECF No. 124.

Plaintiffs and Settling Defendants now seek final approval of the settlement. See Pl. Mem. in Supp. of Mot. for Final Approval of Class Action Partial Settlement 1, ECF No. 149 ("Final Approval Mem."). The Non-Settling Defendants object to final approval on

---

[4] Certain categories of claims are excepted from these releases. See Settlement A ¶ 11, Exs. 9, 10, 11 at 2. The release also excludes one current officer. See id.

4

several grounds. Some of the objections relate to the merits of the case - whether ERISA applies to the Plan and the consequences flowing from that determination. See Diocesan Opp'n to Final Approval 2. The Non-Settling Defendants also object on the basis that R.I. Gen. Laws § 23-17.14-35 is unconstitutional or preempted by ERISA. See id. The Non-Settling Defendants' central argument, however, is that the settlement should not be approved because it is the product of collusion between the Receiver and the Settling Defendants. Id. at 3; Prospect Entities' Obj. to Final Settlement Approval 1 ("Prospect Obj. to Final Approval"), ECF No. 147.

## II. Discussion

### a. Jurisdiction[5]

In order to approve the settlement, the Court must first determine that it has jurisdiction over the dispute. A federal court has subject matter jurisdiction under 28 U.S.C. § 1331 so long as "the plaintiff's well-pleaded complaint. . . exhibit[s], within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed." R.I. Fishermen's All. v. R.I. Dept. of Envtl. Mgmt., 585 F.3d 42, 48

---

[5] As the analysis is the same for both settlements, the Court takes this section from its Memorandum of Decision Entering Final Settlement Approval of the Settlement for Settlement B 4-7, ECF No. 162.

5

(1st Cir. 2009); see 28 U.S.C. § 1331. Plaintiffs' complaint alleges four claims which arise under ERISA - a federal statute.

Moreover, Plaintiffs must meet statutory and constitutional requirements for standing as part of the threshold jurisdictional analysis. See In re Deepwater Horizon, 739 F.3d 790, 798 (5th Cir. 2014). As to statutory standing, the civil enforcement provision under ERISA, 29 U.S.C. § 1132, allows claims by plan participants, beneficiaries, and fiduciaries for breach of fiduciary duty and equitable relief. See 29 U.S.C. § 1132(a)(2) & (3). The named plaintiffs are all current participants of the Plan, and the purported class includes participants and beneficiaries of the Plan. Am. Compl. ¶¶ 3-9, 35. Furthermore, the Receiver is an ERISA fiduciary because he, as Plan administrator, "exercises discretionary control or authority over the plan's management, administration, or assets[.]" Mertens v. Hewitt Assoc., 508 U.S. 248, 251 (1993); 29 U.S.C. § 1102(a).

Constitutional standing under Article III requires an injury in fact, a causal connection between the injury and the defendant's conduct, and the likelihood that a favorable outcome will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). While an injury must be particularized and concrete, "[t]his does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1549 (2016). "At the pleading stage, general

factual allegations of injury resulting from the defendant's conduct may suffice[.]" Lujan, 504 U.S. at 561; see In re Deepwater Horizon, 739 F.3d at 804 ("[I]t is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered because for each class member we must assume arguendo the merits of his or her legal claim at the Rule 23 stage.") (internal citation omitted).

In the amended complaint, Plaintiffs allege that the Plan is "grossly underfunded" because the Plan's sponsor did not make required contributions for many years, particularly from 2010 to 2016, and that Defendants knew that the sponsor of the Plan faced liabilities well exceeding its assets as of 2014. Am. Compl. ¶ 63, 448. Plaintiffs also allege that, "[a]s a result of SJHSRI's failure to fund the Plan in accordance with ERISA's minimum funding standards, Plaintiffs pensions will be lost or at least severely reduced."[6] Id. ¶ 458. Given that the Court must accept these allegations as true at this stage of the proceedings, the Court is satisfied that Plaintiffs have alleged an injury sufficient for standing. See Dezelan v. Voya Ret. Ins. Annuity Co., No. 3:16-cv-1251, 2017 WL 2909714, at *5 (D. Conn. July 6, 2017)("Generally, a plaintiff has standing to bring an ERISA claim where the

---

[6] The Plaintiffs further allege that when the Plan was placed into receivership, there was a request that "the Rhode Island Superior Court approve a virtually immediate 40% across-the-board reduction in benefits." Am. Compl. ¶ 54.

7

plaintiff alleges a causal connection between defendants' actions and actual harm to an ERISA plan in which the plaintiff participates.")(citing LaRue v. DeWolff, Boberg & Assoc., Inc., 552 U.S. 248, 255-56 (2008)(recognizing that an ERISA claim for breach of fiduciary duty "does not provide a remedy for individual injuries distinct from plan injuries" and stating that "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan.")).

Therefore, the Court finds that it has jurisdiction over the subject matter and parties in this dispute.

    b. Final Approval Under Rule 23(e)

        i. Legal Standard

A Court may approve a settlement in a class action only upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Some of the factors in this consideration include:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Baptista v. Mutual of Omaha Ins. Co., 859 F. Supp. 2d 236, 240-41 (D.R.I. 2012) (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)). However, although "[t]he case law offers 'laundry lists of factors' pertaining to reasonableness . . . 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" Bezdek v. Vibram USA, Inc., 809 F.3d 78, 82 (1st Cir. 2015) (quoting Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009)). "When a settlement is reached before the class is certified, the settlement agreement is subject to heightened scrutiny for fairness." Tromley v. Bank of America Corp., No. 08-CV-456-JD, 2012 WL 1599041, at *3 (D.R.I. May 4, 2012).

Additionally, "there is a presumption that the settlement has been made in good faith, and the burden is on the challenging party to show that the settlement is infected with collusion or other tortious or wrongful conduct." Gray v. Derderian, Nos. CA 04-312L, CA03-483L, 2009 WL 1575193, at *4 (D.R.I. June 4, 2009); see In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32-33 (1st Cir. 2009)("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must

9

presume the settlement is reasonable."). "[T]he lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement." Medoff v. CVS Caremark Corp., No. 09-cv-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016); see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.")(internal citation omitted).

Moreover, it is also true that "[i]f third parties will be affected, [the court must find that the settlement] will not be unreasonable or legally impermissible as to them." Nat'l Assoc. of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009) (quoting Durrett v. Housing Auth. Of City of Providence, 896 F.2d 600, 604 (1st Cir. 1990)).

    ii. Non-Settling Defendants' Objections as to Good Faith

Non-Settling Defendants object to Settlement A on the basis that it was not negotiated in good faith. After raising these concerns at the preliminary approval stage, the Court permitted the Non-Settling Defendants to conduct limited discovery on this issue. See Order Granting Prelim. Approval 7-8. In objecting to final approval, the Non-Settling Defendants assert that Settlement A is "the product of naked collusion between the Receiver and the

Settling Parties to benefit the Receiver to the detriment of the [Non-Settling Defendants] and the creditors of the Settling Parties." Prospect Obj. to Final Approval 1.

The Non-Settling Defendants direct this Court to several factors they claim demonstrate a collusive settlement. Specifically, the Non-Settling Defendants point to the fact that the Settling Defendants will transfer substantially all of their assets to Plaintiffs, save $600,000, and leave the Settling Defendants' creditors - including the Prospect Defendants and, following this settlement, Plaintiffs - to seek indemnification or payment of debts out of that limited amount of funds in a judicial liquidation proceeding. Id. at 10-11. The Non-Settling Defendants take issue with two specific provisions of Settlement A: (1) Settling Defendants' admission of liability for breach of contract in an amount not less than $125 million and (2) Settling Defendants' assertion that their proportionate fault is less than that of the Non-Settling Defendants. Id. at 14-15, 20; see Settlement A ¶¶ 28, 30. They aver that these provisions effectively allow the Receiver to establish priority ahead of other creditors and that they are included to prejudice the Non-Settling Defendants. Prospect Obj. to Final Approval 10, 15, 21.

Furthermore, the Non-Settling Defendants state that the Settling Defendants "completely capitulated" to Plaintiffs' terms in exchange for releases of its current officers, and that the

11

Settling Defendants had initially proposed the opposite solution — commencing judicial liquidation proceedings prior to paying out any assets to the Plan. Id. at 12-13, 15. The Non-Settling Defendants also argue, inter alia, that the two-month length of negotiations, limited number of drafts, and admission that the Settling Defendants expressed a willingness to settle prior to commencement of this action evidence a collusive settlement. Id. at 12, 15-16.

iii. Analysis

1. Good-Faith Settlement

R.I. General Laws § 23-17.14-35 ("Settlement Statute"), a statute enacted to govern settlements related to the Plan, defines a "good-faith settlement" as "one that does not exhibit collusion, fraud, dishonesty, or other wrongful or tortious conduct intended to prejudice the non-settling tortfeasor(s), irrespective of the settling or non-settling tortfeasors' proportionate share of liability."[7] "Collusion" is typically associated with some type of wrongful, illegal, or tortious conduct. See Black's Law Dictionary (11th ed. 2019) (defining collusion as "[a]n agreement to defraud another or to do or obtain something forbidden by law").

---

[7] For the reasons explained later in this memorandum, the Court makes no findings as to the constitutionality or potential preemption of the Settlement Statute. See infra Part II(c). This quoted section of the Settlement Statute is, however, helpful in explaining the conduct necessary to establish bad faith.

12

This type of wrongful act occurs "when the release is given with the tortious purpose of intentionally injuring the interests of nonsettling parties, rather than as the product of arm's length bargaining based on the facts of the case and the merits of the claim." Dacotah Marketing and Research, L.L.C. v. Versatility, Inc., 21 F. Supp. 2d 570, 578 (E.D.Va. 1998). "[A]ny negotiated settlement involves cooperation, but not necessarily collusion." Fairfax Radiological Consultants, P.A. v. My Q. Bui, No. 199570, 2002 WL 34463989, at *3 (Va. Cir. Aug. 16, 2002)(internal citation omitted).

The Court is satisfied, after considering all of the factors highlighted by the Non-Settling Defendants, that neither the terms of the agreement nor the conduct of the parties in reaching the agreement evidence an intent to "injur[e] the interests of nonsettling parties." Dacotah Marketing, 21 F. Supp. 2d at 578. As to the payment amount, Settling Defendants face liability for nearly twenty of the twenty-three counts alleged in the Amended Complaint – for both violations of ERISA and state law - and, if found liable, could face a judgment well exceeding the amount of their liquid assets. See generally Am. Compl. Moreover, while Settling Defendants' admission of liability and assertion of proportionate fault are perhaps unusual in a settlement agreement, this does not necessarily lead to the conclusion that these terms demonstrate collusion. In fact, these provisions are not binding

on this Court or on the Non-Settling Defendants.  Approval of this settlement in no way precludes the Non-Settling Defendants from challenging their potential liability in relation to the Settling Defendants moving forward in this case or in a future judicial liquidation proceeding.  Furthermore, the releases given to the Settling Defendants are limited in that they only apply to those entities, their agents, officers, and directors since June 20, 2014, and exclude certain types of claims.  <u>See</u> Settlement A Exs. 9-11 at 1-2.

The settling parties' conduct in negotiating the settlement also fails to demonstrate collusion or other bad faith.  The fact that the settlement negotiations lasted two months, included a shift in the Settling Defendants' position, and resulted in a limited number of drafts does not lead the Court to conclude that the negotiation was not the result of arm's length bargaining or that the settling parties intended to prejudice the Non-Settling Defendants.  <u>See</u> <u>Bowling v. Pfizer, Inc.</u>, 143 F.R.D. 141, 153 (S.D. Ohio Aug. 19, 1992) ("Merely because a settlement is negotiated in a month or two does not mean that the settlement is collusive.") For these reasons, the Non-Settling Defendants objections as to collusion are overruled.

## 2. Fair, Adequate, and Reasonable

Having determined that the settlement was reached in good faith and was not the product of collusion, the Court now turns to whether the settlement was "fair, adequate, and reasonable" as required by Rule 23(e). The Court finds that Settlement A meets that standard.

As the Court noted in its Order Granting Preliminary Approval, the "fundamental terms of the settlement appear fair, reasonable, and adequate with respect to the proposed class[.]" Order Granting Prelim. Approval 5. The "relief provided for the class" is more than adequate given the potential costs and risks of proceeding forward with these claims. Rule 23(e)(2)(C)(i). The legal questions in this case are complex and likely to lead to a costly and time-consuming trial. See Kemp-DeLisser v. Saint Francis Hospital and Medical Center, No. 15-CV-1113(VAB), 2016 WL 6542707, at *7 (D. Conn. Nov. 3, 2016)("Many courts recognize the particular complexity of ERISA breach of fiduciary duty cases such as this one.") These complex questions also add to Plaintiffs' risk in establishing liability and damages.

Moreover, as noted above, the Court is satisfied that this settlement is the product of an arm's length transaction, and furthermore, that the class representatives and class counsel have adequately represented the class. Rule 23(e)(2). Weighing further in favor of approval, no class member has objected to this

15

settlement. In fact, Plaintiffs' filings demonstrate that hundreds of class members support Settlement A. See Declaration of Christopher Callaci, ECF No. 141; Affidavit of Arlene Violet, ECF No. 142; Declaration of Jeffrey W. Kasle, ECF No. 143.

For these reasons, the Court finds that the settlement is the product of good faith and is fair, adequate, and reasonable.

        c.     Non-Settling Defendants' Other Objections

At the preliminary approval stage, the Non-Settling Defendants pressed several additional objections, including some which necessarily revolve around the determination of a major legal question in the case – whether ERISA applies to the Plan or whether the Plan is exempt from ERISA as a "church plan." See Diocesan Opp'n to Prelim. Approval 4-5; Prospect Opp'n to Prelim. Approval 9-10. To the extent that the parties have presented these issues in opposition to final settlement approval, those objections are overruled. See Diocesan Opp'n to Final Approval 2. The Court is satisfied that it need not address questions related to the applicability of ERISA in order to approve this settlement. See Kemp-DeLisser, 2016 WL 6542707, at *7-8 (approving settlement prior to determining ERISA church-plan exemption issue). However, approval shall be without prejudice to the Non-Settling Defendants' right to assert these arguments later in the proceedings.

The Non-Settling Defendants also argue that the Settlement Statute is preempted by ERISA or is unconstitutional.[8] See Diocesan Opp'n to Final Approval 2. Similarly, the Court need not determine the potential preemption or constitutionality of the Settlement Statute, and therefore expressly declines to rule on these issues at this time. The Court's approval of this settlement shall be without prejudice to the Non-Settling Defendants' right to assert these arguments later in this litigation or in future proceedings. Moreover, the Settling Defendants acknowledged at

---

[8] The Settlement Statute allows a settling tortfeasor to avoid liability for contribution if the settlement has been judicially approved and is the product of good faith. R.I. Gen. Laws § 23-17.14-35. The Settlement Statute reads, in full:

> The following provisions apply solely and exclusively to judicially approved good-faith settlements of claims relating to the St. Joseph Health Services of Rhode Island retirement plan, also sometimes known as the St. Joseph Health Services of Rhode Island pension plan:
>
> (1) A release by a claimant of one joint tortfeasor, whether before or after judgment, does not discharge the other joint tortfeasors unless the release so provides, but the release shall reduce the claim against the other joint tortfeasors in the amount of the consideration paid for the release.
>
> (2) A release by a claimant of one joint tortfeasor relieves them from liability to make contribution to another joint tortfeasor.
>
> (3) For purposes of this section, a good-faith settlement is one that does not exhibit collusion, fraud, dishonesty, or other wrongful or tortious conduct intended to prejudice the non-settling tortfeasor(s), irrespective of the settling or non-settling tortfeasors' proportionate share of liability.

oral argument that any protection they receive by virtue of the Settlement Statute may be lost if the Court finds it preempted or unconstitutional; this is a risk they accept with open eyes.

> d. Certification of Class, Class Representatives, and Class Counsel

The Settling Parties also ask the Court to grant final certification of the class, class representatives, and class counsel under Rule 23. Pl. Final Approval Mem. 52-53. In order to meet the standard for class certification, the purported class must meet the requirements under Rule 23(a) and one of the categories of Rule 23(b). See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 621 (1997). A class satisfies Rule 23(a) if

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the class or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Moreover, Rule 23(b)(1)(B) requires a purported class to demonstrate that separate actions by individual members "would create a risk of. . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]"

The Court outlined its reasons for finding these factors to have been met in the order granting preliminary approval of the settlement. See Order Granting Prelim. Settlement Approval 9-12. The Court is satisfied that its analysis of these factors has not changed for purposes of final settlement approval. Additionally, the Non-Settling Defendants' objections do not relate to certification of the class, its representatives, or its counsel.

Accordingly, for purposes of this settlement only, the Court certifies the following class: All participants of the St. Joseph Health Services of Rhode Island Retirement Plan, including all surviving former employees of St. Joseph Health Services of Rhode Island who are entitled to benefits under the Plan and all representatives and beneficiaries of deceased former employees of St. Joseph Health Services of Rhode Island who are entitled to benefits under the Plan. Furthermore, the Court appoints Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque as settlement class representatives and Wistow, Sheehan & Lovely, P.C. as class counsel.

III. Conclusion

For the reasons set forth above, the Court GRANTS final approval of the Settlement and certifies the class, class representatives, and class counsel.

IT IS SO ORDERED.

/s/ W. E. Smith
_____
William E. Smith
Chief Judge
Date: October 9, 2019