UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN DEL SESTO, AS RECEIVER AND :
ADMINISTRATOR OF THE ST. JOSEPH :
HEALTH SERVICES OF RHODE ISLAND :
RETIREMENT PLAN, ET AL. :
:
    Plaintiffs :
:
v. : C.A. No:  1:18-CV-00328-WES-LDA
:
:
PROSPECT CHARTERCARE, LLC, ET AL. :
:
    Defendants. :

### PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56(c) and LR Cv 56(a), Plaintiffs Stephen Del Sesto (as Receiver and Administrator of the St. Joseph Health Services of Rhode Island Retirement Plan) ("the Receiver"), and Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, individually as named plaintiffs (the "Named Plaintiffs"), and on behalf of all putative class members as defined herein (collectively "Plaintiffs"), submit this statement of undisputed material facts in support of their Motion for Summary Judgment on Count IV of the Complaint.

### STANDING OF THE RECEIVER

1. On August 18, 2017, Defendant St. Joseph Health Services of Rhode Island ("SJHSRI") filed a Petition for Appointment of Temporary Receiver ("Petition") in the Rhode Island Superior Court, in the case captioned *St. Joseph Health Services of Rhode Island, Inc. v. St. Josephs Health Services of Rhode Island Retirement Plan, as amended*, PC-

1

2017-3856 (the "Receivership Proceeding").  The Petition (without exhibits) is attached hereto as Exhibit 1.

2. On August 18, 2017, the Rhode Island Superior Court appointed Stephen Del Sesto as temporary receiver of the St. Joseph Health Services of Rhode Island Retirement Plan (the "Plan").  The Order is attached hereto as Exhibit 2.

3. Attached hereto as Exhibit 3 is the Plan as amended and restated on January 30, 2017, effective July 1, 2016 (the "2016 Plan").  The 2016 Plan provided that "[t]he Employer shall be the Plan Administrator, hereinafter called the Administrator, and named fiduciary of the Plan, unless the Employer, by action of its Board of Trustees, shall designate a person or committee of persons to be the Administrator and named fiduciary." Exhibit 3 at 41.

4. On October 20, 2017, the Board of Trustees of SJHSRI irrevocably designated the Receiver as administrator of the Plan.  The Resolution attached hereto as Exhibit 4 is the resolution of SJHSRI's Board of Trustees on October 20, 2017, certified on November 2, 2017.

5. On October 27, 2017, the Rhode Island Superior Court appointed Stephen Del Sesto as permanent receiver of the Plan, with "all powers, authorities, rights and privileges heretofore possessed by the Respondent's plan administrator, officers, directors and managers under applicable state and federal law, the Plan, as amended, the Trust Agreement, as may have been amended and/or other agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of RI Rules of Civil Procedure, Rule 66."  That order is attached hereto as Exhibit 5.

## STANDING OF THE PLAN PARTICIPANTS

6. The individual named plaintiffs are all participants in the Plan, as attested to in the Declaration of Stephen Del Sesto, attached hereto as Exhibit 6.

## FACTS CONCERNING CHURCH PLAN STATUS

7. During the period from 1965 through June 30, 1995, the employees of SJHSRI participated in a defined-benefit retirement plan known as the Diocese of Providence Retirement Plan (the "Diocesan Plan"). The first iteration of the Diocesan Plan (effective July 1, 1965) is attached hereto as Exhibit 7.[1]

8. Effective July 1, 1995, SJHSRI established the Plan. Attached hereto as Exhibit 8 is the Plan as effective July 1, 1995.

9. SJHSRI subsequently restated the Plan on three occasions. Attached hereto as Exhibit 9 is the Plan as amended and restated effective July 1, 1999 (the "1999 Plan"). Attached hereto as Exhibit 10 is the Plan as amended and restated effective July 1, 2011 (the "2011 Plan"). See also Exhibit 3 (2016 Plan).

10. From 1995 until at least August 18, 2017, SJHSRI was the Plan sponsor. See Exhibit 8 (1995 Plan) at 5, Exhibit 9 (1999 Plan) at 4, Exhibit 10 (2011 Plan) at 1, and Exhibit 3 (2016 Plan) at 1.

11. The Plan by its terms purported to be a church exempt from ERISA. See Exhibit 8 (1995 Plan) at 1; Exhibit 9 (1999 Plan) at 1, Exhibit 10 (2011 Plan) at 1, and Exhibit 3 (2016 Plan) at 1.

12. During the period from its inception effective July 1, 1995 until the restatement of the Plan effective July 1, 2011, the general administration of the Plan was

---

[1] Subsequent iterations of the Diocesan Plan are not addressed herein as they are both voluminous and irrelevant.

3

placed in its own retirement board (the retirement board during this period being hereinafter referred to as the "Initial SJHSRI Plan Retirement Board"). See Exhibit 8 (1995 Plan) at 31; Exhibit 9 (1999 Plan) at 30.

13. Pursuant to the terms of the Plan during the period from its inception effective July 1, 1995 until the restatement of the Plan effective July 1, 2011, the Initial SJHSRI Plan Retirement Board consisted of the Bishop, at least three members of SJHSRI's Board of Trustees, and up to six others (who may or may not have been members of SJHSRI's Board of Trustees), all appointed by the Bishop to serve at the pleasure of the Bishop. See Exhibit 8 (1995 Plan) at 31; Exhibit 9 (1999 Plan) at 30.

14. In 2008, executives of Defendants SJHSRI and RWH conducted negotiations to effectuate a reorganization of those companies under the control of a common parent entity, which came to be known as Defendant CharterCARE Community Board ("CCCB"). Attached hereto as Exhibit 11 is the Memorandum of Understanding entered into as of May 12, 2008 by and among Roger Williams Hospital, Roger Williams Medical Center, and St. Joseph Health Services of Rhode Island, which states *inter alia*:

> WHEREAS, RWMC and SJHSRI have engaged in extensive discussions to determine if, by joining together, they can collectively enhance their ability to serve their respective communities; and
>
> WHEREAS, RWMC and SJHSRI have determined that they should begin a process of due diligence and negotiation to join together to form a new health system . . . .

15. Attached hereto as Exhibit 12 are the approved minutes of a meeting on October 31, 2008 of the Finance Committee/Strategic Planning Committee of SJHSRI's Board of Trustees.

16. The October 31, 2008 minutes reflect that John Fogarty, the then President and Chief Executive Officer of SJHSRI, reviewed with the committee members a strategic

4

planning update with respect to the affiliation discussions then underway with Defendant Roger Williams Hospital, a/k/a/ Roger Williams Medical Center ("RWMC"). See Exhibit 12 at 4.

17. The minutes reflect that "Mr. Fogarty communicated that the SJHSRI Defined Benefit Plan would remain a Church Plan as long as the [Fatima] Hospital had sponsorship of [sic] [*recte* by] the Diocese." See Exhibit 12 at 4.

18. The minutes reflect that "[t]here was concern by RWMC [that the Plan] would be relieved of its Church Plan status upon the affiliation and thus subject to ERISA guidelines" which "would effect [sic *recte* affect] the funding requirements of the Plan." See Exhibit 12 at 4.

19. The minutes further state that it was determined that **"[a]fter review with the Hospital's outside counsel, as long as the Bishop controls the Pension Board, the Church Plan status would remain intact**." The minutes reflect that "[a] formal legal opinion is pending." See Exhibit 12 at 4 (emphasis supplied).

20. Attached hereto as Exhibit 13 is the opinion letter from John H. Reid, III, of Edwards Angell Palmer & Dodge LLP to Mr. Fogarty dated November 12, 2008, concerning whether SJHSRI's participation with RWMC in a new health care system would "allow SJHSRI to preserve the status of the Plan as a non-electing church plan…." See Exhibit 13 at 1.

21. In the letter Attorney Reid stated that "Section 414(e) of the [Internal Revenue] Code [26 U.S.C. §414(e)] and ERISA Section 3(33)(C)(i) [29 U.S.C. § 1002(33)(C)(i)] includes in the definition of church plan a plan maintained by an organization, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the

5

employees of a church, if such organization is controlled by or associated with a church." See Exhibit 13 at 2.

22.     In his letter, Attorney Reid noted that "Section 414(e)(3)(B)(ii) of the [Internal Revenue] Code defines 'employees of a church' to include an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under Section 501 and which is controlled by or associated with a church or a convention or association of churches."  See Exhibit 13 at 2.

23.     In his letter, Attorney Reid noted that the Plan was "administered by a Retirement Board appointed by the Bishop."  See Exhibit 13 at 2.  He also noted that "[t]he Retirement Board is an organization controlled by a church by virtue of the fact that its members include the Bishop and at least nine other members appointed by the Bishop to serve at his pleasure.  **The Retirement Board has no other function than the administration of the Plan**."  See Exhibit 13 at 3 (emphasis supplied).

24.     Attorney Reid's opinion was that, among the requirements necessary "[i]n order to maintain the status of the Plan as a church plan in accordance with the Code, ERISA and the interpretations of IRS and DOL", was that "**the Retirement Board must continue to be appointed by the Bishop or some other representative of the Roman Catholic Church and must continue to administer the Plan**..."  See Exhibit 13 at 3-4 (emphasis supplied).

25.     Attached hereto as Exhibit 14 is the Health Care System Affiliation and Development Agreement Among Roger Williams Hospital and Roger Williams Medical Center and St. Joseph Health Services of Rhode Island and Roman Catholic Bishop of Providence dated as of February 2, 2009.

6

26.     Following the reorganization, SJHSRI's Bylaws were amended to reflect that the membership of SJHSRI was divided between a Class A member and a Class B member, with Defendant CCCB being the Class A member, and the Bishop being the Class B member, with each member having different voting rights. Attached hereto as Exhibit 15 are the Amended and Restated Bylaws of St. Joseph Health Services of Rhode Island certified by SJHSRI's Secretary on January 4, 2010.

27.     In general, Defendant CCCB as the Class A Member was given the power to appoint the majority of the Board of Trustees, and control over all major (non-religious) decisions, and the consent of the Bishop as Class B Member was required for certain religious matters, including matters affecting SJHSRI's compliance with Catholic ethical directives. See Exhibit 15 (SJHSRI Bylaws) at 7.

28.     As noted, the Plan was amended and restated effective July 1, 2011. See Exhibit 10 (the 2011 Plan).

29.     The 2011 Plan reflected the increased secularization of SJHSRI and the Bishop's diminished control and did not refer to, much less confer any authority on the Bishop, and did not provide for any retirement board, much less a retirement board controlled by the Bishop. See Exhibit 10 (2011 Plan).

30.     The provisions of the 2011 Plan and the 2016 Plan are identical with respect to the organization that was the Administrator of the Plan. Compare Exhibit 10 (2011 Plan) at 3, 38; Exhibit 3 (2016 Plan) at 4, 41.

31.     The 2011 Plan and the 2016 Plan did not refer to, much less confer any authority on the Bishop, and did not provide for any retirement board, much less a retirement board controlled by the Bishop. See Exhibit 10 (2011 Plan) at 3, 38; Exhibit 3 (2016 Plan) at 4, 41.

32. The 2011 Plan and the 2016 Plan did not refer to, much less confer any authority on, any organization, the principal purpose or function of which was the administration or funding of the Plan. See Exhibit 10 (2011 Plan) at 3, 38; Exhibit 3 (2016 Plan) at 4, 41.

33. Instead, the 2011 Plan provided that "[t]he Employer shall be the Plan Administrator, hereinafter called the Administrator, and named fiduciary of the Plan, unless the Employer, by action of its Board of Directors [sic], shall designate a person or committee of persons to be the Administrator and named fiduciary." See Exhibit 10 (2011 Plan) at 38.

34. Likewise, the 2016 Plan provided that "[t]he Employer shall be the Plan Administrator, hereinafter called the Administrator, and named fiduciary of the Plan, unless the Employer, by action of its Board of Trustees, shall designate a person or committee of persons to be the Administrator and named fiduciary." Exhibit 3 (2016 Plan) at 41.

35. The 2011 Plan and the 2016 Plan also stated that:

> The administration of the Plan, as provided herein, including the determination of the payment of benefits to Participants and their Beneficiaries, shall be the responsibility of the Administrator. The Administrator shall conduct its business and may hold meetings, as determined by it, from time to time. The Administrator shall have the right to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any distributions under the Plan to the fullest extent provided by law and in its sole discretion; and interpretations or decisions made by the Administrator will be conclusive and binding on all persons having an interest in the Plan. In the event more than one party shall act as Administrator, all actions shall be made by majority decisions. In the administration of the Plan, the Administrator may (1) employ agents to carry out nonfiduciary responsibilities (other than Trustee responsibilities), (2) consult with counsel who may be counsel to the Employer, and (3) provide for the allocation of fiduciary responsibilities (other than Trustee responsibilities) among its members. Actions dealing with fiduciary responsibilities shall be taken in writing and the performance of agents, counsel and fiduciaries to whom fiduciary responsibilities have been delegated shall be reviewed periodically.

8

[See Exhibit 10 (2011 Plan) at 38; Exhibit 3 (2016 Plan) at 41]

36.     SJHSRI did not designate an Administrator or named fiduciary, and, thus, SJHSRI remained the Administrator and named fiduciary of the Plan until October 20, 2017, when the Board of Trustees of SJHSRI irrevocably designated the Receiver as administrator of the Plan.  See Exhibit 4.

37.     Between 2008 and the filing of this lawsuit, only two payments were made to the Plan.  See Exhibit 16 (September 8, 2017 email from Peter Karlson of Defendant The Angell Pension Group, Inc. to the Receiver).

38.     In the first of these payments, SJHSRI paid $1,500,000 in September 2008. Documentation of that transfer is attached hereto as Exhibit 17.

39.     The only subsequent funding of the Plan was the transfer of $14 million to the Plan by an escrow agent (First American Title Insurance Company) on behalf of the transacting parties on June 20, 2014 in connection with the 2014 Asset Sale. Documentation of that transfer is attached hereto as Exhibits 18 and 19.  The escrow agent received those funds by wire transfer from Prospect Medical Holdings, Inc. ("Prospect Medical").  Documentation of that fact is attached hereto as Exhibits 20 and 21.

40.     On April 29, 2013 the Roman Catholic Bishop for the Diocese of Providence, Bishop Thomas Tobin ("Bishop Tobin") passed a resolution ("the April 29th Resolution") which purported to ratify or confirm the 2011 Plan.  The April 29th Resolution is attached hereto as Exhibit 22.

41.     The April 29th Resolution purported to ratify the 2011 Plan, as follows:

> RESOLVED:     That the adoption of the Amendment to the St. Joseph Health Services of Rhode Island Retirement Plan ("Plan"), effective September 30, 2011, a copy of which is attached, as adopted by the Board of Trustees of St.

9

|  |  |  |
|---|---|---|
|  |  | Joseph Health Services of Rhode Island on July 21, 2011,[2] be ratified and confirmed. |
|  | RESOLVED: | That the adoption of the amendment and restatement of the Plan, effective as of July 1, 2011, a copy of which is attached, as adopted by the Board of Trustees of St. Joseph Health Services of Rhode Island on July 21, 2011, be ratified and confirmed. |

[See Exhibit 22 at 1]

42. The April 29th Resolution also stated as follows:

|  |  |  |
|---|---|---|
|  | RESOLVED: | That the Board of Trustees of St. Joseph Health Services of Rhode Island is the Retirement Board with respect to the Plan and acts on behalf of St. Joseph Health Services of Rhode Island as the Plan Administrator of the Plan; |
|  | RESOLVED: | That the Board of Trustees of St. Joseph Health Services of Rhode Island has the authority, pursuant to the terms of the Plan, to appoint a committee to act on its behalf with respect to administrative matters related to the Plan; and |
|  | RESOLVED: | That the Board of Trustees of St. Joseph Health Services of Rhode Island has appointed the Finance Committee of CharterCARE Health Partners[3] to act on its behalf with respect to administrative matters relating to the Plan. |
|  | RESOLVED: | That the Plan is intended to qualify under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") as a non-electing church plan within the meaning of Section 414(e) of the Code and Section 3(33) of the Employee Retirement Income Security Act of 1974, as amended. |

[See Exhibit 22 at 1]

43. SJHSRI's Board of Trustees did not hold separate meetings in their capacity as the Retirement Board, devote any specific part of their regular meetings to their function

---

[2] A copy of this July 21, 2011 resolution is attached hereto as Exhibit 26.
[3] Subsequently renamed CharterCARE Community Board ("CCCB"). See infra at ¶ 45.

10

as the Retirement Board, or proceed by an agenda specific to their function as the Retirement Board.  Instead, SJHSRI's Board of Trustees considered and decided matters concerning the Plan as part of the Board of Trustee's regular meetings and pursuant to the agenda of the meetings of the Board of Trustees, and did not keep separate minutes concerning its actions as the Retirement Board.  As an example, the minutes of the regular meeting of SJHSRI's Board of Trustees on March 13, 2014 are attached hereto as Exhibit 23.

44.     Attached hereto as Exhibit 24 are the bylaws of CCCB describing the role and function to the CCCB Finance Committee, as follows:

> Finance, Audit and Compliance Committee.  The Finance, Audit and Compliance Committee shall review and monitor the financial operations of the Corporation, recommend operational and financial goals and objectives and monitor compliance with the goals and objectives, review and recommend to the Board of Trustees the annual operating and capital budget, and review and make recommendations to the Board regarding plans for financing major capital acquisitions.  The Finance, Audit and Compliance Committee shall review the scope and results of the audit of the books of the Corporation and of each company of which the Corporation is the sole member or stockholder and any other Affiliate of the Corporation, and review such results with the auditors, management and those responsible for internal controls.  The Finance, Audit and Compliance Committee will assure that the financing, account, internal controls and financial reporting functions are in keeping with accepted accounting standards.  The Finance, Audit and Compliance Committee will annually report to the Board of Trustees as to the performance of the independent auditor engaged to audit the books of the Corporation.  The Finance, Audit and Compliance Committee also shall be responsible for approving compliance programs established for the Corporation, overseeing and monitoring such compliance programs, and making appropriate reports and recommendations to the Board of Trustees.  The Finance, Audit and Compliance Committee shall be comprised of such Trustees as shall be appointed thereto by the Board of Trustees; provided, that any members of the Committee who are at the time employed by the Corporation shall recuse themselves from any discussion and the taking of any action with respect to the audit functions of the Committee.
>
> [See Exhibit 23 at 7-8]

11

45. On June 20, 2014, CCCB filed an amendment to its articles of incorporation with the Rhode Island Secretary of State, changing its name from CharterCARE Health Partners to CharterCARE Community Board.  Attached hereto as Exhibit 25 is the amendment to CCCB's articles of incorporation reflecting this name change.

        Respectfully submitted,

        Plaintiffs,
        By their Attorney,

        /s/ Stephen P. Sheehan
        Max Wistow, Esq. (#0330)
        Stephen P. Sheehan, Esq. (#4030)
        Benjamin Ledsham, Esq. (#7956)
        WISTOW, SHEEHAN & LOVELEY, PC
        61 Weybosset Street
        Providence, RI   02903
        401-831-2700 (tel.)
        mwistow@wistbar.com
        spsheehan@wistbar.com
        bledsham@wistbar.com

Dated:   December 17, 2019

**CERTIFICATE OF SERVICE**

      I hereby certify that an exact copy of the within document was electronically filed on the 17th day of December, 2019 using the Electronic Case Filing system of the United States District Court and is available for viewing and downloading from the Electronic Case Filing system. The Electronic Case Filing system will automatically generate and send a Notice of Electronic Filing to the following Filing Users or registered users of record:

Andrew R. Dennington, Esq.
Christopher K. Sweeney, Esq.
Russell V. Conn, Esq.
Conn Kavanaugh Rosenthal
Peisch and Ford, LLP
One Federal Street, 15th Floor
Boston, MA  02110
adennington@connkavanaugh.com
csweeney@connkavanaugh.com
rconn@connkavanaugh.com

David A. Wollin, Esq.
Christine E. Dieter, Esq.
Hinckley Allen & Snyder LLP
100 Westminster Street, Suite 1500
Providence, RI 02903-2319
dwollin@hinckleyallen.com
cdieter@hinckleyallen.com

Preston Halperin, Esq.
James G. Atchison, Esq.
Christopher J. Fragomeni, Esq.
Dean J. Wagner, Esq.
Shechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, RI  02860
phalperin@shslawfirm.com
jatchison@shslawfirm.com
cfragomeni@shslawfirm.com
dwagner@shslawfirm.com

Howard Merten, Esq.
Paul M. Kessimian, Esq.
Christopher M. Wildenhain, Esq.
Eugene G. Bernardo, II, Esq.
Steven E. Snow, Esq.
Partridge Snow & Hahn LLP
40 Westminster Street, Suite 1100
Providence, RI 02903
hm@psh.com
pk@psh.com
cmw@psh.com
egb@psh.com

Steven J. Boyajian, Esq.
Daniel F. Sullivan, Esq.
Robinson & Cole LLP
One Financial Plaza, Suite 1430
Providence, RI 02903
sboyajian@rc.com
dsullivan@rc.com

Robert D. Fine, Esq.
Richard J. Land, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
rfine@crfllp.com
rland@crfllp.com

Joseph V. Cavanagh, III, Esq.
Joseph V. Cavanagh, Jr., Esq.
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI  02903
Jvc3@blishcavlaw.com
jvc@blishcavlaw.com
lbd@blishcavlaw.com

David R. Godofsky, Esq.
Emily S. Costin, Esq.
Alston & Bird LLP
950 F. Street NW
Washington, D.C.  20004-1404
david.godofsky@alston.com
emily.costin@alston.com

| | |
|---|---|
| Ekwan R. Rhow, Esq.<br>Thomas V. Reichert, Esq.<br>Bird, Marella, Boxer, Wolpert, Nessim, Drooks,<br>Licenberg & Rhow, P.C.<br>1875 Century Park East, 23rd Floor<br>Los Angeles, CA  90067<br>erhow@birdmarella.com<br>treichert@birdmarella.com | W. Mark Russo, Esq.<br>Ferrucci Russo P.C.<br>55 Pine Street, 4th Floor<br>Providence, RI  02903<br>mrusso@frlawri.com |

John McGowan, Jr., Esq.
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
jmcgowan@bakerlaw.com

                                        /s/ Benjamin Ledsham