**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STEPHEN DEL SESTO, AS RECEIVER AND ADMINISTRATOR OF THE ST. JOSEPH HEALTH SERVICES OF RHODE ISLAND RETIREMENT PLAN; ET AL. , <br><br> Plaintiffs, <br><br> v. <br><br> PROSPECT CHARTERCARE, LLC; ET AL., <br><br> Defendants. | C.A. No. 1:18-CV-00328-WES/LDA |

## STIPULATION OF DISMISSAL INVOLVING CERTAIN PARTIES

Plaintiff Stephen Del Sesto (the "Plan Receiver"), together with the individual named plaintiffs (individually and as putative class representatives) (with the Plan Receiver, "Plaintiffs") and Defendant CharterCARE Community Board ("CCCB") by and through Thomas Hemmendinger in his capacity as liquidating receiver (the "Liquidating Receiver") for CCCB,  and  Defendants Prospect Medical Holdings, Inc., Prospect East Holdings, Inc., Prospect Chartercare, LLC, Prospect Chartercare SJHSRI, LLC, Prospect Chartercare RWMC, LLC (collectively "Prospect"), and The Angell Pension Group, Inc. (all collectively the "Settling Parties"), having settled their disputes pursuant to the Settlement Agreement attached hereto as Exhibit 1, the Settling Parties hereby stipulate and agree and consent to the entry of this Stipulation as an Order of the Court as follows:

1. Plaintiffs' claims against Prospect and Angell shall be and are hereby
   dismissed, with prejudice, provided, however, that any claims Plaintiffs may

have arising out of or relating to any breach of the Settlement Agreement dated as of December 30, 2020 are not dismissed;

2. Said dismissal shall not apply to or in any way affect Plaintiffs' claims against Defendants Roman Catholic Bishop of Providence (a Corporation Sole), Diocesan Administration Corporation, or Diocesan Service Corporation; or to Plaintiffs' claims against CharterCARE Community Board, St. Joseph Health Services of Rhode Island, and Roger Williams Hospital (only to the extent of their assets in the Liquidations Proceedings); and

3. In the event that Plaintiffs, Counsel for the Plan Receiver, or the Liquidating Receiver show by motion with notice to Prospect and Angell that an Interference with Prospect's Contribution to the Settlement Funds or the LOCs (as defined in Exhibit 1) has occurred (and the Plan Receiver has not otherwise finally received Prospect's Contribution to the Settlement Funds), said dismissal with prejudice will be vacated by the Court and the disputes between and among the Settling Parties in this proceeding shall be returned to the active calendar of the Court.

IT IS SO ORDERED.

_____
Hon. William E. Smith
United States District Judge

Dated:  August 24, 2021

So stipulated as of August 20, 2021

By:

STEPHEN DEL SESTO, AS RECEIVER
AND ADMINISTRATOR OF THE ST.
JOSEPH HEALTH SERVICES OF RHODE
ISLAND RETIREMENT PLAN, et al.

PROSPECT MEDICAL HOLDINGS, INC.
and PROSPECT EAST HOLDINGS, INC.

By Their Attorneys,

WISTOW, SHEEHAN & LOVELEY, PC

By Their Attorneys,

SHECHTMAN HALPERIN SAVAGE LLP

/s/ Stephen P. Sheehan

Max Wistow, Esq. (#0330)
Stephen P. Sheehan, Esq. (#4030)
Benjamin Ledsham, Esq. (#7956)
61 Weybosset Street
Providence, RI  02903
(401) 831-2700
(401) 272-9752 FAX
mwistow@wistbar.com
spsheehan@wistbar.com
bledsham@wistbar.com

/s/ Preston Halperin

Preston W. Halperin, Esq. (#5555)
Dean J. Wagner, Esq. (#5426)
Christopher J. Fragomeni, Esq. (#9476)
180 Main Street
Pawtucket, RI  02860
(401) 272-1400
phalperin@shslawfirm.com
jatchison@shslawfirm.com
cfragomeni@shslawfirm.com

PROSPECT CHARTERCARE, LLC,
PROSPECT CHARTERCARE, SJHSRI,
and PROSPECT CHARTERCARE RWMC,

By Their Attorneys,

FERRUCCI RUSSO P.C.


/s/ Mark Russo
W. Mark Russo, Esq. (#3937)
55 Pine Street, 3rd Floor
Providence, RI  02903
401-455-1000
(401)751-7542 FAX
mrusso@frlawri.com

THE ANGELL PENSION GROUP, INC.

By Its Attorneys,

ROBINSON & COLE LLP


/s/ Steven Boyajian
Steven J. Boyajian, Esq. (#7263)
One Financial Plaza
Suite 1430
Providence, RI  -02903
(401)709-3359
sboyajian@rc.com

       -and-

David R. Godofsky (*pro hac vice*)
Emily S. Costin (*pro hac vice*)
ALSTON & BIRD LLP
950 F Street NW
Washington DC 20004
(202) 239-3392
david.godofskly@alston.com
emily.costin@alston.com

CHARTERCARE COMMUNITY BOARD,
ST. JOSEPH HEALTH SERVICES OF
RHODE ISLAND, and ROGER WILLIAMS
HOSPITAL


By Their Attorneys,



/s/ Thomas Hemmendinger
Thomas S. Hemmendinger (#3122)
Permanent Liquidating Receiver of
CharterCARE Community Board, Roger
Williams Hospital, and St. Joseph Health
Services of Rhode Island
Ronald F. Cascione (#2277)
Lisa M. Kresge (#8707)
Brennan, Recupero, Cascione, Scungio
&McAllister, LLP
362 Broadway
Providence, RI 02909
Tel. (401) 453-2300
Fax (401) 453-2345

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This settlement agreement ("Settlement Agreement") is entered into as of the 30th day of December, 2020, between and among Stephen Del Sesto (the "Plan Receiver") (as Receiver and Administrator of the St. Joseph Health Services of Rhode Island Retirement Plan (the "Plan")), and Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, said persons acting individually and[1] on behalf of all class members as defined herein (the Plan Receiver and said persons are collectively referred to as "Plaintiffs"), and Thomas Hemmendinger (as the Liquidating Receiver for CharterCARE Community Board ("CCCB")) (the "Liquidating Receiver"), on the one hand, and Prospect Medical Holdings, Inc., Prospect East Holdings, Inc., Prospect Chartercare, LLC, Prospect Chartercare SJHSRI, LLC, Prospect Chartercare RWMC, LLC, (collectively referred to herein as "Prospect"), and The Angell Pension Group, Inc. ("Angell"), Sam Lee, and David Topper (Prospect, Angell, Sam Lee and David Topper are referred to collectively as the "Settling Defendants"), on the other hand (all of the parties hereto are the "Settling Parties").

WHEREAS St. Joseph Health Services of Rhode Island ("SJHSRI") filed a petition to place the St. Joseph Health Services of Rhode Island Retirement Plan ("the Plan") into receivership in that certain civil action entitled *St. Joseph Health Services of Rhode Island, Inc. v. St. Joseph Health Services of Rhode Island Retirement Plan*, C.A.

---

[1] Contingent upon the Court certifying the Class as provided herein.

No. PC-2017-3856, filed in Providence County Superior Court in the State of Rhode Island (the "Receivership Proceedings"), requesting a hearing authorizing the Plan Receiver to reduce benefits under the Plan by 40%, and the Plan Receiver was appointed by the court in that proceeding;

WHEREAS Plaintiffs asserted claims against the Settling Defendants and others in a lawsuit filed in the United States District Court for the District of Rhode Island, captioned *Stephen Del Sesto et al. v. Prospect Chartercare, LLC et al.*, (C.A. No: 1:18-CV-00328-WES-LDA) (the "Federal Court Action"), and in a lawsuit filed in the Rhode Island Superior Court also captioned *Stephen Del Sesto et al. v. Prospect Chartercare, LLC et al.*, (C.A. NO.: PC-2018-4386) (the "State Court Action"), which lawsuits concern the alleged underfunded status of the Plan;

WHEREAS on March 11, 2019, CCCB commenced a civil action in the Rhode Island Superior Court, initially captioned *Chartercare Community Board, individually and derivatively, as member of Prospect Chartercare, LLC and as trustee of the beneficial interest of its membership interest in Prospect Chartercare, LLC v. Samuel Lee, David Topper, Thomas Reardon, Von Crockett, Edwin Santos, Edward Quinlan, Joseph DiStefano, Andrea Doyle, Prospect East Hospital Advisory Services, LLC; Prospect Chartercare, LLC; Prospect East Holdings, Inc.; Prospect Medical Holdings, Inc.; ABC Corps 1-10; John Doe 1-10; and Jane Doe 1-10* (C.A. No. PC-2019-3654) ("*CCCB v. Lee*");

WHEREAS on December 18, 2019, CCCB, SJHSRI, and Roger Williams Hospital ("RWH") filed a petition in liquidation with the Rhode Island Superior Court, in the matter captioned *In re: CharterCare CharterCARE Community Board, St. Joseph*

2

*Health Services of Rhode Island And Roger Williams Hospital* (C.A. No. PC-2019-11756) (the "Liquidation Proceedings"), and on January 17, 2020, Thomas Hemmendinger was appointed Permanent Liquidating Receiver for said entities;

WHEREAS the Liquidating Receiver has succeeded to the rights of CCCB in *CCCB v. Lee*;

WHEREAS the Plan Receiver has joined in *CCCB v. Lee* as a party plaintiff, and has joined in the filing of a First Amended Complaint in *CCCB v. Lee* under the amended caption *Chartercare Community Board (through Thomas Hemmendinger as Permanent Liquidating Receiver), individually and derivatively, as member of Prospect Chartercare, LLC and as trustee of the beneficial interest of its membership interest in Prospect Chartercare, LLC; and Stephen Del Sesto, as receiver and administrator of the St. Joseph Health Services of Rhode Island Retirement Plan and as holder of the beneficial interest of Chartercare Community Board's membership interest in Prospect Chartercare, LLC v. Samuel Lee, David Topper, Thomas Reardon, Von Crockett, Edwin Santos, Edward Quinlan, Joseph DiStefano, Andrea Doyle, Prospect East Hospital Advisory Services, LLC; Prospect Chartercare, LLC; Prospect East Holdings, Inc.; Prospect Medical Holdings, Inc.; Ivy Holdings Inc.; Ivy Intermediate Holding Inc., David & Alexa Topper Family Trust; Green Equity Investors V, LP; Green Equity Investors Side V, LP; JP Morgan Chase Bank, N.A. as administrative agent and collateral agent for certain lenders; ABC Corps 1-10; John Doe 1-10; and Jane Doe 1-10*;

WHEREAS on December 19, 2019, Prospect Medical Holdings, Inc. and Prospect East Holdings, Inc. brought suit in the Court of Chancery of the State of

3

Delaware in the matter captioned *Prospect Medical Holdings, Inc. v. Chartercare Community Board* (Case No. 2019-2018) (the "Delaware Action");

WHEREAS certain applications ("CEC Applications") have been filed with the Center for Health Systems Policy and Regulation, Rhode Island Department of Health, in the proceeding captioned *In re: Change in Effective Control Applications by Prospect Chartercare RWMC, LLC and Prospect Chartercare SJHSRI, LLC, et al.*, and the Plan Receiver and the Liquidating Receiver submitted formal objections thereto;

WHEREAS certain applications ("HCA Applications") have been filed with the Office of the Rhode Island Attorney General and the Rhode Island Department of Health in the proceeding captioned *Hospital Conversion Initial Application of Chamber Inc.; Ivy Holdings Inc.; Ivy Intermediate Holdings, Inc.; Prospect Medical Holdings, Inc.; Prospect East Holdings, Inc.; Prospect East Hospital Advisory Services, LLC; Prospect CharterCARE, LLC; Prospect CharterCARE SJHSRI, LLC; Prospect CharterCARE RWMC, LLC*, and the Plan Receiver and the Liquidating Receiver submitted formal objections thereto; and

WHEREAS, the Settling Parties recognize that the claims released herein are disputed and uncertain, desire to settle such claims so as to avoid the cost, risk and uncertainty of litigation, and acknowledge that no party is admitting any fault or liability in entering into this Settlement Agreement;

NOW, THEREFORE, in consideration for the mutual exchange of promises contained herein, the adequacy and sufficiency of which is hereby acknowledged, the Settling Parties hereby agree as follows:

4

1.    For purposes of this Settlement Agreement, and in addition to other terms that
      are defined elsewhere in this Settlement Agreement, the following terms shall
      have the meanings specified herein:

      a.    "2014 Asset Sale" means the sale of assets pursuant to the Asset
            Purchase Agreement entered into as of September 24, 2013, which
            closed on or about June 20, 2014, pursuant to which certain of the assets
            and liabilities of certain entities were sold or otherwise transferred to
            certain of the Settling Defendants.

      b.    "Angell's Counsel" means the firm of Alston & Bird LLP and the attorneys
            of said firm, and the firm of Robinson & Cole, LLP and the attorneys of
            said firm.

      c.    "CAFA Notice" means the notice of the proposed settlement in compliance
            with the requirements of the federal Class Action Fairness Act, 28 U.S.C.
            § 1711 et seq. substantially in the form attached hereto as Exhibit 1.

      d.    "CCCB's Hospital Interests" means all claims, rights, and interests against
            or in Prospect CharterCare, LLC that CCCB received in connection with
            the LLC Agreement (hereinafter defined) or subsequently obtained,
            including but not limited to CCCB's membership interest in Prospect
            CharterCare, LLC., and any and all claims that CCCB has or may have
            against any of the Settling Defendants.  However, CCCB's Hospital
            Interests do not include any claim for breach of this Settlement
            Agreement.  For purposes of this Settlement Agreement only, the Settling
            Parties stipulate and agree that CCCB has a 15% membership interest in

5

Prospect Chartercare LLC and that any other claims CCCB has or may have against any of the Settling Defendants, including but not limited to claims arising out of any alleged breach of the LLC Agreement or claims in *CCCB v. Lee*, would, if adjudicated in CCCB's favor, entitle CCCB to money damages, and would not increase CCCB's membership interest in Prospect Chartercare, LLC. The Settling Parties further stipulate that CCCB has no beneficial interest in CCCB's Hospital Interests and, instead, holds CCCB's Hospital Interests solely in trust for the benefit of the Plan Receiver.

e.   "Class Members" means the members of the Settlement Class.

f.   "Class Notice" means the notice to be provided to Class Members of the Final Approval Hearing, in the form to be approved by the Court.

g.   "Class Representatives" mean Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, who will first seek to be appointed as representatives of the Settlement Class for settlement purposes in connection with this Settlement Agreement, and, thereafter, will seek such appointment for the assertion along with the Plan Receiver of the merits of the Plaintiffs' claims against the remaining defendants.

h.   "Directors' Indemnification" means an indemnity and release by Prospect, Sam Lee and David Topper in the form attached hereto as Exhibit 2.

i.      "Dismissal of *CCCB v. Lee*" means a stipulation of dismissal with prejudice substantially in the form attached hereto as Exhibit 3;

j.      "Dismissal of the Delaware Action" means a stipulation of dismissal with prejudice substantially in the form attached hereto as Exhibit 4;

k.      "Dismissal of the Federal Court Action" means a stipulation of dismissal with prejudice substantially in the form attached hereto as Exhibit 5;

l.      "Dismissal of the State Court Action" means a stipulation of dismissal with prejudice substantially in the form attached hereto as Exhibit 6;

m.      "Federal Court" means the court in the Federal Court Action.

n.      "Final Approval Hearing" means the hearing at which the Federal Court will make a final determination as to 1) whether the terms of the Settlement are fair, reasonable, and adequate, as to the Settlement Class, such that the Settlement should be finally approved by the Federal Court; 2) whether to approve the Settlement as a good faith settlement under R.I. Gen. Laws § 23-17.14-35; and 3) such other and further relief as the Federal Court may direct.

o.      "Prospect Medical LOC" means the letter of credit with Prospect Medical Holdings, Inc. as the account party to be issued by JPMorgan Chase Bank N.A. by delivery to the Plan Receiver as beneficiary in accordance with paragraph 9 of this Settlement Agreement in the form attached hereto as Exhibit 7, funded by Prospect Medical Holdings, Inc., in connection with Prospect's obligation to pay twenty-two million two hundred fifty thousand

7

($22,250,000) dollars towards Prospect's Contribution to the Settlement Funds.

p.      "Prospect East LOC" means the letter of credit to be issued by JPMorgan Chase Bank N.A. by order of Prospect Medical Holdings, Inc. on behalf of Prospect East Holdings, Inc. with the Plan Receiver as beneficiary in the form attached hereto as Exhibit 8, in accordance with paragraph 10 of this Settlement Agreement and the rider attached hereto as Exhibit 8A, in connection with Prospect's obligation to pay five million ($5,000,000) towards Prospect's Contribution to the Settlement Funds.

q.      "Interference with Prospect's Contribution to the Settlement Funds or the LOCs" means any stay, restraint, injunction, attachment, or court order, interfering or seeking to interfere with, obstructing or seeking to obstruct the free use of, or recovering or seeking to recover, the Prospect Medical LOC, the Prospect East LOC, or the Settlement Funds, or any portion thereof, from the issuer of the Prospect Medical LOC or the Prospect East LOC, or from the possession or control of the Plan Receiver, the Plan, or Plaintiffs' Counsel, or any person or entity to whom or which the issuer of the Prospect Medical LOC and the Prospect East LOC, the Plan Receiver, the Plan, or Plaintiffs' Counsel transferred the Settlement Funds or any subsequent transferee thereof, which stay, restraint, injunction, attachment, or court order arises in connection with any federal bankruptcy or state insolvency proceedings involving any of the Settling

8

Defendants, or any other proceeding instituted by any creditor of any of the Settling Defendants.

r.  "LLC Agreement" means the agreement entered into among CCCB, Prospect East Holdings, Inc., and Prospect CharterCare, LLC in connection with the 2014 Asset Sale, originally entitled the "AMENDED & RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF PROSPECT CHARTERCARE, LLC (a Rhode Island Limited Liability Company)" and as it thereafter may have been revised or amended.

s.  "Motion for Preliminary Settlement Approval" means the motion, supporting memorandum, and the exhibits thereto in the form that the Plaintiffs will file with the Federal Court seeking preliminary approval of the Settlement.

t.  "Motion for Final Settlement Approval" means the motion, supporting memorandum, and the exhibits thereto in the form that the Plaintiffs will file with the Federal Court seeking final approval of the Settlement.

u.  "Notice Plan" means the form, contents, and method of delivery of the Class Notice to be provided to Class Members.

v.  "Order Granting Preliminary Settlement Approval" means, unless otherwise ordered by the Federal Court, the order 1) certifying the Settlement Class for purposes of determining whether the Settlement is fair, reasonable, and adequate; 2) appointing Plaintiffs' Counsel to represent the Settlement Class, 3) preliminarily approving the Settlement;

and 4) approving the Notice Plan, or as the Federal Court may otherwise direct.

w.   "Order Granting Final Settlement Approval" means the order approving the Settlement 1) as fair, reasonable, and adequate; 2) as a good faith settlement under R.I. Gen. Laws § 23-17.14-35; and 3) such other and further relief as the Federal Court may direct.

x.   "Plaintiffs' Counsel" means the law firm of Wistow, Sheehan & Loveley, P.C. and the attorneys of said firm.

y.   "Plaintiffs' Press Release" means the press release which Plaintiffs' Counsel provided to Prospects' Counsel on December 23, 2020, which is to be filed under seal and kept confidential until the time provided herein for dissemination thereof.

z.   "Prospect's Press Release" means whatever press release which Prospect chooses to issue at the time provided herein for issuance of press releases by Plaintiffs and Prospect .

aa.  "Proceedings for Settlement Approval" means

i.   the Plan Receiver's request for settlement instructions in the Receivership Proceedings;

ii,  the Liquidating Receiver's request for settlement instructions in the Liquidation Proceedings;

iii. the Motion for Preliminary Settlement Approval in the Federal Court; and

10

iv.  the Motion for Final Settlement Approval in the Federal Court.

bb.   "Prospect's Counsel" means the firm of Shechtman Halperin Savage, LLP
and the attorneys of said firm.

cc.   "Registry of Court" means the registry of the Rhode Island Superior Court.

dd.   "Settlement Class" means all participants of the Plan, including:

i)      all surviving former employees of SJHSRI who are entitled to
benefits under the Plan; and

ii)     all representatives and beneficiaries of deceased former employees
of SJHSRI who are entitled to benefits under the Plan.

ee.   "Settlement" means the settlement between and among the Settling
Parties pursuant to this Settlement Agreement.

ff.   "Settlement Funds" means the sum of thirty million dollars ($30,000,000),
a portion of which is to be paid by or on behalf of Angell and a portion of
which is to be paid by or behalf of Prospect.

gg.   "Angell's Contribution to the Settlement Funds" is the sum of two million
seven hundred fifty thousand ($2,750,000) dollars of the Settlement Funds
to be paid by or on behalf of Angell;

hh.   "Prospect's Contribution to the Settlement Funds" means the sum of
twenty-seven million two hundred fifty thousand dollars ($27,250,000) of
the Settlement Funds to paid by or on behalf of Prospect in accordance
with the terms of this Settlement Agreement.

11

ii. "Stipulation and Consent Order" means the document attached hereto as Exhibit 9, agreed to by all of the Settling Parties, to be filed with and entered by the Rhode Island Superior Court in the Receivership Proceedings.

2. The Settling Parties agree that within five (5) business days of the execution of this Settlement Agreement, Counsel for the Plan Receiver will file the Stipulation and Consent Order with the court in the Receivership Proceedings with the request on behalf of all of the Settling Parties that it be entered as an order of said court, provided further that if the Stipulation and Consent Order is entered by the court in the Receivership Proceedings, the Stipulation and Consent Order will be enforceable both as a contractual undertaking of the Settling Parties in connection with this Settlement Agreement and as an Order of the Rhode Island Superior Court.

3. Upon the entry in the Federal Court Action of the Order Granting Final Settlement Approval, the Plan Receiver shall obtain payment under the Prospect Medical LOC and the Prospect East LOC, and such payment shall satisfy Prospect's obligation to pay Prospect's Contribution to the Settlement Funds, provided, however, that in the event of an Interference with Prospect's Contribution to the Settlement Funds or the LOCs, Prospect shall be obliged to pay Prospect's Contribution to the Settlement Funds directly to the Plan Receiver to the extent that such Interference with Prospect's Contribution to the Settlement Funds or the LOCs results in the Plan Receiver not receiving and retaining Prospect's Contribution to the Settlement Funds in full, and further provided that to the

extent that Prospect makes such payment directly Prospect shall be subrogated to the Plan Receiver's rights against any third parties with respect to such sums. In no event shall Plaintiffs be entitled to be paid twice for all or any portion of Prospect's Contribution to the Settlement Funds, but should that occur Plaintiffs will promptly remit any excess payment to Prospect.

4.   In the event the Prospect Medical LOC and/or the Prospect East LOC is due to expire within sixty days and the Plan Receiver is notified by JPMorgan Chase Bank N.A. that it is unwilling to extend the Prospect Medical LOC and/or the Prospect East LOC to a date satisfactory to the Plan Receiver, the Plan Receiver will have the right to obtain payment thereof pursuant to the terms of the Prospect Medical LOC and/or the Prospect East LOC, with full right and title to the proceeds in the Plan Receiver, and that in the event the Order Granting Final Settlement Approval is entered, the proceeds will be applied to Prospect's obligation to pay Prospect's Contribution to the Settlement Funds, and if the Order Granting Final Settlement Approval is not entered by the Federal Court, the proceeds will be  subject to defeasance in favor of Prospect..

5.   Upon the entry in the Federal Court Action of the Order Granting Final Settlement Approval, Angell's Contribution to the Settlement Funds shall be withdrawn pursuant to the terms of the Stipulation and Consent Order.

6.   The Settling Parties agree that the Dismissal of *CCCB v. Lee*, the Dismissal of the Delaware Action, the Dismissal of the Federal Court Action, and the Dismissal of the State Court Action will be filed with the respective courts after the later of (i) the Plan Receiver obtaining payment under the Prospect Medical

13

LOC and the Prospect East LOC; (ii) if payment is pursuant to paragraph four (4) of this Settlement Agreement, the application of the proceeds of the Prospect Medical LOC and the Prospect East LOC to pay Prospect's Contribution to the Settlement Funds, and (iii) the Plan Receiver's withdrawal of Angell's Contribution to the Settlement Funds pursuant to the terms of the Stipulation and Consent Order.

7.  The Settling Parties hereby stipulate and agree that this Settlement represents a contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1).

8.  Within the later of either (i) ten (10) calendar days of the entry of the Stipulation and Consent Order by the court in the Receivership Proceedings, and (ii) fifteen (15) calendar days of the execution of this Settlement Agreement, Angell's Contribution to the Settlement Funds shall be deposited into the Registry of Court.

9.  Within the later of either (i) ten (10) calendar days of the entry of the Stipulation and Consent Order by the court in the Receivership Proceedings, and (ii) fifteen (15) calendar days of the execution of this Settlement Agreement, Prospect, Sam Lee, and David Topper shall cause JPMorgan Chase Bank N.A. to issue the Prospect Medical LOC and deliver it to the Plan Receiver.

10. Within the later of either (i) ten (10) calendar days of the entry of the Stipulation and Consent Order by the court in the Receivership Proceedings, and (ii) fifteen (15) calendar days of the execution of this Settlement Agreement, Prospect, Sam Lee, and David Topper shall cause JPMorgan Chase Bank N.A. to issue the Prospect East LOC and deliver it to the Plan Receiver.

14

11.  The Settling Parties stipulate and agree that the portion of Prospect's
     Contribution to the Settlement Funds to be paid through the Prospect East LOC
     in the amount of five million dollars ($5,000,000) represents the value of CCCB's
     Hospital Interests, and it is further agreed that, of such sum, four million dollars
     ($4,000,000) is allocated to the purchase price for CCCB's membership interest
     in Prospect Chartercare, LLC, and the remaining balance of one million dollars
     ($1,000,000) is allocated to the rest of CCCB's Hospital Interests.  The Settling
     Parties agree that these allocations are fair and reasonable and shall apply for all
     federal, state, or other tax purposes.

12.  The Settling Parties stipulate and agree that the Plan Receiver, the Liquidating
     Receiver, and CCCB are not insiders for purposes of federal bankruptcy law or
     statutes, or for any state laws or statutes concerning fraudulent or voidable
     transfers, and that the Plaintiffs, including the Plan Receiver, are the sole entities
     and transferees for whose benefit the transfers contemplated herein will be
     made, and that neither the Liquidating Receiver nor CCCB is a transferee for
     purposes of this Settlement.

13.  Within fifteen (15) calendar days of the execution of this Settlement Agreement,
     Plaintiffs and the Liquidating Receiver will execute and deliver to Counsel for the
     Prospect Defendants the fully-executed release of the Settling Defendants and
     certain other individuals and entities as identified therein, in the form attached
     hereto as Exhibit 10, which is to be held in escrow by Prospect's Counsel (who
     will promptly provide a copy to Angell's Counsel) until Angell's Contribution to the
     Settlement Funds has been paid to the Plan Receiver and Plaintiffs' Counsel

15

from the Registry of Court and Prospect's Contribution to the Settlement Funds
has been paid to the Plan Receiver from the proceeds of the Prospect Medical
LOC and the Prospect East LOC.

14.   Within fifteen (15) calendar days of the execution of this Settlement Agreement,
the Settling Defendants and certain other parties will execute and deliver to
Counsel for the Plaintiffs the fully-executed release of the Plaintiffs, the
Liquidating Receiver, and certain other persons and entities as identified therein,
in the form attached hereto as Exhibit 11, to be held in escrow by Plaintiffs'
Counsel until  Angell's Contribution to the Settlement Funds has been paid to the
Plan Receiver and Plaintiffs' Counsel from the Registry of Court and Prospect's
Contribution to the Settlement Funds has been paid to the Plan Receiver from
the proceeds of the Prospect Medical LOC and the Prospect East LOC.
Prospect, Sam Lee and David Topper will cause Ivy Holding, Inc.; Ivy
Intermediate Holdings, Inc.; David & Alexa Topper Family Trust; Green Equity
Investors V, LP; Green Equity Investors Side V, LP; JPMorgan Chase Bank,
N.A.; Thomas Reardon; Von Crockett; Edwin Santos; Edward Quinlan; Joseph
DiStefano; and Andrea Doyle (the "Additional Releasors") to execute the release
attached hereto as Exhibit 11, provided, however, that if all or any of the
Additional Releasors fail to do so, such failure will constitute a breach of the
Settlement Agreement by Prospect, Sam Lee and David Topper, entitling
Plaintiffs and the Liquidating Receiver to sue for damages, and, in addition,
Prospect, Sam Lee and David Topper will indemnify Plaintiffs and the Liquidating

Receiver for any loss or expense, including but not limited to attorneys' fees, incurred as a result of such failure.

15. Within fifteen (15) calendar days of the execution of this Settlement Agreement, Prospect, Sam Lee and David Topper will execute and deliver the Directors' Indemnification to the Liquidating Receiver, which the Liquidating Receiver may immediately deliver to the Category A Directors or their counsel. At the same time Prospect will provide the Liquidating Receiver with the certificate of the Secretary of Prospect Chartercare, LLC attaching and certifying the duly authorized and executed resolution of the Board of Trustees of Prospect Chartercare, LLC amending the LLC Agreement pursuant to Section 17.11 of the LLC Agreement, in the form attached hereto as Exhibit 12 (the "Secretary's Certificate").

16. The Plan Receiver and the Liquidating Receiver agree that within five (5) business days of the entry of the Stipulation and Consent Order, they will formally and in writing, with copy to Counsel for Prospect, notify the Center for Health Systems Policy and Regulation, Rhode Island Department of Health, and the Office of the Rhode Island Attorney General that their objections to the HCA Applications and the CEC Applications are withdrawn, and that they have no objection to such applications being granted. The Plan Receiver and the Liquidating Receiver further agree that neither they nor anyone acting on their behalf or at their direction will file any further written submissions in connection with the HCA Applications or the CEC Applications or provide any additional testimony or public comments in connection therewith unless compelled by law.

17

17.   Prospect agrees that within (5) business days of the entry of the Stipulation and

Consent Order,  Prospect will formally and in writing, with copy to Counsel for

Plaintiffs and to the Liquidating Receiver, file a request with the Center for Health

Systems Policy and Regulation, the Rhode Island Department of Health, and the

Office of the Rhode Island Attorney General, asking that they condition their

approval of all or any of the HCA Applications and CEC Applications on the

Settling Defendants fulfilling their obligations under this Settlement Agreement,

and Prospect further agrees not to withdraw such request unless and until the

Settlement Agreement becomes null and void pursuant to the terms hereof.

18.   The Plan Receiver, the Liquidating Receiver, and the Settling Defendants agree

that neither they nor anyone acting on their behalf will make any statements to

media which would reasonably be expected to cause the reader or hearer thereof

to question the solvency or honesty of, or the quality of care or other services

provided by, any party to this Settlement Agreement.

19.   The Liquidating Receiver agrees that within five (5) business days of the later of

the Directors' Indemnification and the Secretary's Certificate being delivered to

the Liquidating Receiver, Angell's Contribution to the Settlement Funds being

deposited into the Registry of Court, and the issuance and delivery of the

Prospect Medical LOC and the Prospect East LOC to the Plan Receiver, he will

provide Counsel for Prospect with a written statement signed by each of the

directors (the "Category A Directors") that the Liquidating Receiver has appointed

to Prospect Chartercare, LLC, committing not to attend any board meetings

during the pendency of the Proceedings for Settlement Approval.  Regardless of

whether the Settlement is otherwise consummated or the Settlement Agreement becomes null and void for any reason:

    a.    The Category A Directors are relieved of any obligation to act in any way as directors of Prospect Chartercare, LLC during the Proceedings for Settlement Approval; and

    b.    The Directors' Indemnification shall remain in full force and effect in accordance with its terms.

20.    The Settling Parties agree that

    a.    within the later of either (i) ten (10) calendar days of the entry of the Stipulation and Consent Order by the court in the Receivership Proceedings, and (ii) fifteen (15) calendar days of the execution of this Settlement Agreement, Prospect's Counsel on behalf of Prospect shall deliver to the Liquidating Receiver checks payable to each Category A Director in the amount of one thousand dollars ($1,000) per month beginning July 22, 2020 until the date this Settlement Agreement is executed, pro-rated for any partial portion of a month;

    b.    thereafter on the first day of each month Prospect's Counsel on behalf of Prospect shall directly pay to the Liquidating Receiver on behalf of each Category A Director the sum of $1,000 per month until the Category A Directors resign or are replaced or this Settlement Agreement becomes void for any reason other than a breach by the Settling Defendants;

19

c.    within the later of either (i) ten (10) calendar days of the entry of the Stipulation and Consent Order by the court in the Receivership Proceedings, and (ii) fifteen (15) calendar days of the execution of this Settlement Agreement, Prospect shall provide Prospect's Counsel with fifty thousand dollars ($50,000) to be held in Prospect's Counsel's client account and applied by Prospect's Counsel to Prospect's obligations under this paragraph; and

d.    if and when that sum is entirely paid to the Category A Directors in accordance herewith, Prospect will have no further obligations to make payment to any of the Category A Directors.

21.   The Plan Receiver agrees that, within five (5) business days of the later of the Directors' Indemnification and the Secretary's Certificate being delivered to the Liquidating Receiver, Angell's Contribution to the Settlement Funds being deposited into the Registry of Court, and the issuance and delivery of the Prospect Medical LOC and the Prospect East LOC to the Plan Receiver, the Plan Receiver will file his petition for settlement instructions with the court in the Receivership Proceedings asking for authority to proceed with this settlement and to pay attorneys' fees to Plaintiffs' Counsel pursuant to the retainer agreement previously approved by said court.

22.   The Liquidating Receiver agrees that, within five (5) business days of the later of the Directors' Indemnification and the Secretary's Certificate being delivered to the Liquidating Receiver, Angell's Contribution to the Settlement Funds being deposited into the Registry of Court, and the issuance and delivery of the

Prospect Medical LOC and the Prospect East LOC to the Plan Receiver, the Liquidating Receiver will file his petition for settlement instructions with the court in the Liquidation Proceedings, asking for authority to proceed with this Settlement.

23.   Plaintiffs agree that, within five (5) business days of the later of the court in the Receivership Proceedings authorizing the Plan Receiver to proceed with this Settlement or the court in the Liquidation Proceedings authorizing the Liquidating Receiver to proceed with this Settlement, Plaintiffs will file their Motion for Preliminary Settlement Approval in the Federal Court Action.

24.   Plaintiffs agree that prior to the filing of Motion for Preliminary Settlement Approval, they will provide Counsel for Prospect with a list of all known Class Members, including the states in which they reside.  Within ten (10) business days following the filing of the Motion for Preliminary Settlement Approval, Counsel for Prospect as duly authorized attorney in fact for all of the Settling Defendants agrees to serve the CAFA Notice, with the exhibits referred to therein, by mailing a copy thereof through the United States Postal Service, First Class Mail, to the Rhode Island Attorney General, the Director of the Rhode Island Department of Business Regulation, the Attorney General for every other State where a Class Member resides, and to the Attorney General of the United States, and, no later than fourteen (14) days prior to the Final Approval Hearing, to provide the Court and the Plan Receiver with written confirmation that they have done so, which shall list each recipient and the address to which the CAFA Notice was sent.

25.  In their Motion for Preliminary Settlement Approval, Plaintiffs will request that the
Federal Court certify the Settlement Class pursuant to Rule 23(b)(1)(B) of the
Federal Rules of Civil Procedure, on the grounds that prosecuting separate
actions by or against individual class members would create a risk of
adjudications with respect to individual class members that, as a practical matter,
would be dispositive of the interests of the other members not parties to the
individual adjudications or would substantially impair or impede their ability to
protect their interests.

26.  Plaintiffs agree to seek certification of the Settlement Class solely for the purpose
of permitting the Settlement Class to participate in the settlement of Plaintiffs'
claims against the Settling Defendants, without prejudice to the rights of the
remaining defendants in the Federal Court Action or the State Court Action to
oppose class certification in connection with Plaintiffs' claims against them.

27.  The Settling Defendants agree to cooperate with Plaintiffs and to take all
reasonable measures requested by Plaintiffs and/or the Liquidating Receiver to
obtain approval of the petitions for settlement instructions, the Order Granting
Preliminary Settlement Approval, and the Order Granting Final Settlement
Approval.

28.  Within the later of five (5) business days of the later of the Directors'
Indemnification and the Secretary's Certificate being delivered to the Liquidating
Receiver, Angell's Contribution to the Settlement Funds being deposited into the
Registry of Court,  and the issuance and delivery of the Prospect Medical LOC
and the Prospect East LOC to the Plan Receiver, the Liquidating Receiver will

22

deliver to Prospect the fully executed assignment of CCCB's Hospital Interests in the form attached hereto as Exhibit 13, which will be held in escrow by Counsel for the Prospect Defendants until Angell's Contribution to the Settlement Funds has been paid to the Plan Receiver from the Registry of Court and Prospect's Contribution to the Settlement Funds has been paid to the Plan Receiver from the proceeds of the Prospect Medical LOC and the Prospect East LOC.

29.   The Liquidating Receiver warrants and represents that, to his knowledge, CCCB's Hospital Interests stand solely in the name of CCCB and the Liquidating Receiver, that the Liquidating Receiver and CCCB hold such interests in trust for the Plan Receiver pursuant to the settlement between the Plan Receiver and CCCB previously approved by the Federal Court, and that CCCB and the Liquidating Receiver have not assigned, transferred, or otherwise limited or encumbered such rights or interests.

30.   The Plan Receiver warrants and represents that he has not assigned, transferred, or otherwise limited or encumbered his rights or interests in CCCB's Hospital Interests.

31.   Prospect agrees that the time for CCCB and/or the Liquidating Receiver to exercise the put option referred to in the LLC Agreement as the "CCHP Put Option," (the "Put Option") will be extended to sixty (60) days after the earlier of the following occurrences: (1) the court in the Receivership Proceedings denying the Plan Receiver's petition for instructions; (2) the court in the Liquidation Proceedings denying the Liquidating Receiver's petition for instructions; or (3) the Court in the Federal Court Action refusing to issue either the Order Granting

23

Preliminary Settlement Approval or the Order Granting Final Settlement
Approval.

32.   This Settlement Agreement will be null and void, the Settlement Funds will be
      returned to Angell or its designee from the Registry of Court in accordance with
      the terms of the Stipulation and Consent Order, the Plan Receiver will return the
      Prospect Medical LOC and the Prospect East LOC to Prospect, the documents
      exchanged pursuant to this Settlement Agreement (except the Directors'
      Indemnifications and the Secretary's Certificate) will be returned and the Settling
      Parties will return to their respective positions as if this Settlement Agreement
      had never been negotiated, drafted, or executed (except that the provisions of
      paragraphs 19 (a)-(b), 20 (a)-(c), and 36 of this Settlement Agreement will apply
      regardless of whether the Settlement is otherwise consummated or the
      Settlement Agreement becomes null and void for any reason), if for any reason
      other than the breach of this Settlement Agreement by any of the Settling
      Defendants,

      a.   the court in the Receivership Proceedings fails to enter the Stipulation and
           Consent Order;

      b.   either the Plan Receiver in the Receivership Proceedings or the
           Liquidation Receiver in the Liquidation Proceedings is denied authority to
           proceed with this Settlement; or

      c.   either the Order Granting Preliminary Settlement Approval or the Order
           Granting Final Settlement is not entered.

d.     However, if any of the events in sub-sections (a)-(c) occur due to breach of this Settlement Agreement by any of the Settling Defendants other than Angell, and there has been no breach of this Settlement Agreement by Angell: (i) Angell's Contribution to the Settlement Funds will be returned to Angell or its designee from the Registry of Court; (ii) all releases given to and by Angell shall be null and void; and (iii) Angell and Plaintiffs will return to their respective positions with respect to one another as if this Settlement Agreement had never been negotiated.

33.    The Settling Parties agree that, in connection with the Settlement, Plaintiffs' Counsel may apply for an award of attorneys' fees and expenses.  The Settling Defendants agree not to object to such award or the requested amount of the award.

34.    Commencing five (5) business days after the later of the Directors' Indemnification and the Secretary's Certificate being delivered to the Liquidating Receiver, Angell's Contribution to the Settlement Funds being deposited into the Registry of Court, and the issuance and delivery of the Prospect Medical LOC and the Prospect East LOC to the Plan Receiver, Plaintiffs may publicly issue Plaintiffs' Press Release and Prospect may publicly issue Prospect's Press Release.

35.    Within five (5) business days of the later of the Directors' Indemnification and the Secretary's Certificate being delivered to the Liquidating Receiver, Angell's Contribution to the Settlement Funds being deposited into the Registry of Court, and the issuance and delivery of the Prospect Medical LOC and the Prospect

East LOC to the Plan Receiver, the Settling Parties agree to jointly submit requests in *CCCB v. Lee*, the State Court Action, the Federal Court Action, and the Delaware Action, asking the court in those proceedings to stay all proceedings between the Plaintiffs and the Liquidating Receiver and any of the Settling Defendants during the pendency of the Proceedings for Settlement Approval,  provided that Plaintiffs are not required to seek a stay of the litigation of their claims in the Federal Court Action against the Roman Catholic Bishop of Providence, Diocesan Administration Corporation, or Diocesan Service Corporation.

36.   Within the later of either (i) ten (10) calendar days of the entry of the Stipulation and Consent Order by the court in the Receivership Proceedings, and (ii) fifteen (15) calendar days of the execution of this Settlement Agreement, Prospect shall pay the Liquidating Receiver without recourse the aggregate amount of one hundred thousand dollars ($100,000) representing a portion of the proceeds of the revised final settlements received by Prospect from the Centers for Medicare & Medicaid Services for RWH for the fiscal years ending September 30, 2010, September 30, 2013, and June 19, 2014.  The Liquidating Receiver hereby releases any claim to past and future Medicare settlements and Prospect hereby releases any claims for monies paid to CCCB on account of Medicare settlements following the June 19, 2014 sale of assets to Prospect.  The obligations and agreements set forth in this paragraph are binding and enforceable regardless of whether the Settlement is otherwise consummated or the Settlement Agreement becomes null and void for any reason.

26

37.  Prospect Chartercare, LLC, Prospect Chartercare SJHSRI, LLC, Prospect

Chartercare RWMC, LLC, and the Liquidating Receiver agree that

notwithstanding any other provision of this Settlement Agreement or any of the

releases contemplated by this Settlement Agreement, nothing in this Settlement

Agreement or such releases shall release, waive, or otherwise affect any of the

following: (i) the records retention and access obligations Prospect Chartercare,

LLC, Prospect Chartercare SJHSRI, LLC, Prospect Chartercare RWMC, LLC or

Prospect East Holdings, Inc. under the September 24, 2013 Asset Purchase

Agreement or the LLC Agreement and the course of dealing between Prospect

and CCCB, SJHSRI or RWH; (ii) Prospect's obligation to cooperate with the Plan

Receiver or any other Administrator of the Plan with regard to historical

employment documentation necessary for the calculation of benefits or provision

of other information concerning benefit or pension issues; or (iii) the ongoing

transition and wind-down matters regarding CCCB, SJHSRI, or RWH consistent

with the agreements and course of dealing between CCCB, SJHSRI, RWH and

the Liquidating Receiver on the one hand, and Prospect Chartercare, LLC,

Prospect Chartercare SJHSRI, LLC, Prospect Chartercare RWMC, LLC and

Prospect East Holdings, Inc. on the other hand.

38.  The Settling Parties agree that within fifteen (15) calendar days of the execution

of this Settlement Agreement, Sam Lee and David Topper will execute and

deliver to Plaintiffs' Counsel the tolling agreement attached hereto as Exhibit 14

(the "Tolling Agreement").  The Plaintiffs and the Liquidating Receiver agree not

to assert further or amended claims against either Sam Lee or David Topper

during the pendency of the Proceedings for Settlement Approval provided that
such Tolling Agreement is delivered to Plaintiffs' Counsel as provided herein.

39.    The drafting of this Settlement Agreement and Exhibits 1-14 hereto (collectively
"Settlement Documents") is a result of lengthy and intensive arm's-length
negotiations, and the presumption that ambiguities shall be construed against the
drafter does not apply.  None of the Settling Parties will be deemed the drafter of
the Settlement Documents for purposes of construing their provisions.

40.    This Settlement Agreement may be executed by the Settling Parties in
counterparts, each of which shall be deemed an original, but all of which together
shall constitute one and the same instrument.  A signature to this Settlement
Agreement made or delivered by electronic means is deemed to be an original
signature.

41.    The Settling Parties further agree that no promise or inducement has been
offered, except as herein set forth, and that this Settlement Agreement contains
the entire agreement between and among the Settling Parties and supersedes
any and all prior agreements, understandings, representations, and discussions,
whether written or oral, between the Settling Parties.  The Settling Parties
represent that each Settling Party is voluntarily entering into this Settlement
Agreement, based on advice and recommendations of the Settling Party's own
judgments, beliefs and knowledge, and the advice and recommendations of their
own independently selected counsel, and not based on any representation from
any other party (other than the representations included in the Settlement
Documents) including, for the avoidance of ambiguity, any representation as to

28

the tax consequences of any payment hereunder.  The Settling Parties by entering into this Agreement, do not admit to the truth of any allegation contained in any of the actions identified and do not admit any fault, liability or wrongdoing whatsoever.

42.    The Settling Parties further agree that Rhode Island law (excluding its conflict of laws rules) shall govern this Settlement Agreement.

43.    Nothing in this Agreement is intended, or shall be construed, to give any person, other than the Settling Parties and their respective successors, any legal or equitable right, remedy or claim under, or in respect to, this Settlement Agreement, or any provisions contained herein.  The Settling Parties each represent that they have not assigned any interest in the claims settled herein, and each Settling Party has full authority to release the claims released by such Party.

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this _30th_ day of _December_, in the year 2020.

_____
Stephen Del Sesto, as Receiver for the St. Joseph Health Services of Rhode Island Retirement Plan

Witness _____

29

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this _30ᵗʰ_ day of _December_, in the year 2020.

_[signature]_, Receiver
Thomas Hemmendinger, as Receiver for
CharterCare Community Board

Witness _[signature]_

IN WITNESS WHEREOF, I have hereunto set my hand this _____ day of _____, in the year 2020.

_____
GAIL J. MAJOR

Witness _____

30

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this _____ day of _____, in the year 2020.

_____
Thomas Hemmendinger, as Receiver for
CharterCare Community Board

Witness _____

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of December, in the year 2020.

_____
GAIL J. MAJOR

Witness _____

30

IN WITNESS WHEREOF, I have hereunto set my hand this _30th_ day of _December_, in the year 2020.

_Nancy Zomra_
NANCY ZOMRA

Witness _Step V. Phur_


IN WITNESS WHEREOF, I have hereunto set my hand this _30th_ day of _December_, in the year 2020.

_Ralph Bryden_
RALPH BRYDEN

Witness _Step V. Ph_

31

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of
December, in the year 2020.

_Dorothy Willner_
DOROTHY WILLNER

Witness _(signature)_

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of
December, in the year 2020.

_Caroll M Short_
CAROLL SHORT

Witness _(signature)_

32

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of December, in the year 2020.

_____
DONNA BOUTELLE

Witness _____


IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of December, in the year 2020.

_____
EUGENIA LEVESQUE

Witness _____

33

IN WITNESS WHEREOF, I have hereunto set my hand this _____ day of _____, in the year 2020.

_____
EUGENIA LEVESQUE

Witness _____

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this _30th_ day of _December_, in the year 2020.

_____
[insert name] Sam Lee
[insert title] Chief Executive Officer
Prospect Medical Holdings, Inc.

Witness _____
Eric Samuels, Treasurer

34

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this 30TH day of _____December_____, in the year 2020.

[insert name] Sam Lee
[insert title] Senior Vice President
Prospect East Holdings, Inc.

Witness _____
Eric Samuels, Treasurer

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this 30TH day of _____December_____, in the year 2020.

[insert name] Sam Lee
[insert title] Senior Vice President
Prospect Chartercare, LLC

Witness _____
Eric Samuels, Treasurer

35

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this 30TH day of ___December___, in the year 2020.

[insert name] Sam Lee
[insert title] Senior Vice President
Prospect Chartercare SJHSRI, LLC

Witness

Eric Samuels, Treasurer



IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this 30TH day of ___December___, in the year 2020.

[insert name] Sam Lee
[insert title] Senior Vice President
Prospect Chartercare RWMC, LLC

Witness

Eric Samuels, Treasurer

36

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this _____ day of _____, in the year 2020.

_____
[insert name]
[insert title]
Prospect Chartercare RWMC, LLC

Witness _____


IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my hand this _30th_ day of _December_, in the year 2020.

_____
[insert name] Jeffrey A. Bauer
[insert title] President
The Angell Pension Group, Inc.

Witness _____
Peter L. Karlson

36

IN WITNESS WHEREOF, and upon due authorization, I have hereunto set my
hand this _____ day of _____, in the year 2020.

_____
[insert name]
[insert title]
The Angell Pension Group, Inc.

Witness _____

IN WITNESS WHEREOF, I have hereunto set my hand this _30ᵗʰ_ day of
_December_, in the year 2020.

_____
Sam Lee

Witness _____
Eric Samuels, Treasurer

37

IN WITNESS WHEREOF, I have hereunto set my hand this _30TH_ day of _December_____, in the year 2020.

_____
David Topper

Witness _____
Robert Elders, Secretary + General Counsel

38