UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN DEL SESTO, AS RECEIVER AND | : | |
| ADMINISTRATOR OF THE ST. JOSEPH | : | |
| HEALTH SERVICES OF RHODE ISLAND | : | |
| RETIREMENT PLAN, ET AL. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | C.A. No:1:18-CV-00328-WES-LDA |
| PROSPECT CHARTERCARE, LLC, ET AL. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL,
SETTLEMENT CLASS CERTIFICATION, APPOINTMENT OF CLASS
COUNSEL, AND A FINDING OF GOOD FAITH SETTLEMENT**

Plaintiffs,
By their attorneys,
Max Wistow, Esq. (#0330)
Stephen P. Sheehan, Esq. (#4030)
Benjamin Ledsham, Esq. (#7956)
Wistow, Sheehan & Loveley, PC
61 Weybosset Street
Providence, RI  02903
(401) 831-2700
(401) 272-9752 (fax)
mwistow@wistbar.com
spsheehan@wistbar.com
bledsham@wistbar.com

October 25, 2023

# TABLE OF CONTENTS

Introduction ........................................................................................................................1

Travel of the Case and the Proposed Settlement ............................................................3

    I.    Prior to Commencement of Suit ...............................................................3

    II.   Commencement of Suit and Subsequent Proceedings...............................6

    III.  Terms of Settlement ................................................................................25

    IV.  Attorneys' Fees .......................................................................................26

    V.   Superior Court Approval of the Proposed Settlement ...........................26

Over 1,000 Plan Participants Support the Proposed Settlement ...................................28

Risk of Not Settling .......................................................................................................28

Argument .......................................................................................................................30

    I.    The Court Should Preliminarily Approve the Settlement ......................30

    II.   The Proposed Settlement Class Should Be Preliminarily Certified to Participate in the Settlement ...................................................................35

        A.   Under Rule 23(a) ............................................................................37

            1.   Numerosity ..........................................................................37

            2.   Commonality ......................................................................37

            3.   Typicality ...........................................................................38

            4.   Adequacy ............................................................................38

        B.   Class Certification Is Proper under Rule 23(b)(1)(B) ...........................41

    III.  The Court Should Approve the Proposed Notice Plan and Class Notice ...................43

    IV.  Plaintiffs' Counsel Should Be Appointed to Represent the Settlement Class...............45

    V.   Statement Identifying Agreements in Connection with Proposed Settlement...............46

    VI.  The Proposed Settlement Satisfies R.I. Gen. Laws § 23-17.14-35 .............................46

Conclusion .....................................................................................................................47

## INTRODUCTION

Plaintiffs Stephen Del Sesto (the "Receiver") (as Receiver and Administrator of the St. Joseph Health Services of Rhode Island Retirement Plan (the "Plan"), and as Liquidating Receiver of St. Joseph Health Services of Rhode Island ("SJHSRI"), Roger Williams Hospital ("RWH"), and CharterCARE Community Board ("CCCB")), and Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, individually as named plaintiffs (the "Individual Named Plaintiffs") and on behalf of all class members[1] as defined herein (collectively "Plaintiffs") submit this memorandum in support of their motion for preliminary approval of a class action settlement (the "Proposed Settlement") with Defendants Roman Catholic Bishop of Providence, a corporation sole, Diocesan Administration Corporation, and Diocesan Service Corporation (collectively the "Diocesan Defendants").

In addition to Plaintiffs and the Settling Defendants, the parties to the Proposed Settlement include Stephen F. Del Sesto, Esq. in his capacity as the Permanent Liquidating Receiver ("Liquidating Receiver") of CharterCARE Community Board ("CCCB"), St. Joseph Health Services of Rhode Island ("SJHSRI") and Roger Williams Hospital ("RWH") (SJHSRI and RWH being collectively referred to as the "Heritage Hospitals"), having been so appointed in the Rhode Island Superior Court matter captioned In re: CharterCare CharterCARE Community Board, St. Joseph Health Services of Rhode Island And Roger Williams Hospital (C.A. No. PC-2019-11756) (the "Liquidation Proceedings").

---

[1] Contingent upon the Court certifying the Settlement Class and appointing them Class Representatives.

Plaintiffs seek judicial approval both because it is required for settlement of class actions under Rule 23(e) of the Federal Rules of Civil Procedure, and because it is required by the Rhode Island statute specifically addressed to settlements involving the St. Joseph Health Services of Rhode Island Retirement Plan (the "Plan"), R.I. Gen. Laws § 23-17.14-35 (the "Settlement Statute").

In support of this motion, Plaintiffs herewith file the Declaration of Benjamin Ledsham dated October 25, 2023 ("Ledsham Dec.") and the exhibits attached thereto, including the settlement agreement (the "Settlement Agreement").[2]

Plaintiffs also submit herewith the following affidavits and declaration, which were initially filed in the Rhode Island Superior Court on September 22, 2023 in connection with seeking the Rhode Island Superior Court's approval of the Proposed Settlement, as exhibits to the Receiver's Petition for Settlement Instructions and Approval:

- The Affidavit of the Hon. Frank J. Williams, C.J. (Ret.), concerning the mediation and terms of the Proposed Settlement, and the fees to be awarded to the Receiver's Special Litigation Counsel under the Retainer Agreement approved by the Court;[3]

- The Affidavit of Arlene Violet, Esq., who represents over 285 Plan participants,[4] in support of approval of the Proposed Settlement and the requested attorneys' fees of Special Litigation Counsel;[5]

- The Affidavit of Christopher Callaci, Esq., who in his capacity as General Counsel for United Nurses and Allied Professionals ("UNAP") represents the approximately 400 Plan participants who are members of UNAP, in

---

[2] Ledsham Dec. Exhibit 1 (Settlement Agreement).

[3] Ledsham Dec. Exhibit 2 (Williams Affidavit).

[4] Attorneys Violet, Kasle and Callaci were originally retained by certain Plan participants in connection with negotiations with the Receiver and advocacy in the Plan Receivership Proceedings concerning possible cuts in benefits. That is an issue in which Plaintiffs' Counsel has not been and will not be involved.

[5] Ledsham Dec. Exhibit 3 (Violet Affidavit).

support of approval of the Proposed Settlement and the requested attorneys' fees of Special Litigation Counsel;[6] and

- The Declaration of Jeffrey W. Kasle, Esq., who represents 247 Plan participants, in support of approval of the Proposed Settlement and the requested attorneys' fees of Special Litigation Counsel.[7]

If the Proposed Settlement is approved by the Court and the conditions[8] and the prospective obligations of the parties to the settlement are satisfied, then the claims against the Diocesan Defendants will be dismissed.  Plaintiffs will continue to assert claims against CCCB, SJHSRI, and RWH, to the extent of their assets in the Liquidations Proceedings.  When the Liquidation Proceedings are concluded, the Receiver will notify the Court and ask that this case be dismissed in its entirety.

## TRAVEL OF THE CASE AND THE PROPOSED SETTLEMENT

### I.    Prior to Commencement of Suit

The Plan is a defined benefit plan established by Defendant St. Joseph Health Services of Rhode Island ("SJHSRI") with 2,761 participants.[9]  In August 2017, Defendant SJHSRI petitioned ("the "Receivership Petition") the Rhode Island Superior Court to place the Plan into receivership, in the case captioned St. Joseph Health Services of Rhode Island, Inc. v. St. Josephs Health Services of Rhode Island Retirement Plan, as amended, PC-2017-3856 (the "Plan Receivership Proceedings").[10]

---

[6] Ledsham Dec. Exhibit 4 (Callaci Affidavit).

[7] Ledsham Dec. Exhibit 5 (Kasle Declaration)

[8] The conditions to the settlement are discussed below at 25–26.

[9] Ledsham Dec. ¶ 6.

[10] Ledsham Dec. ¶ 7.

The Receivership Petition alleged that the Plan was insolvent and requested an immediate reduction of 40% in benefits under the Plan.[11]  Attorney Stephen Del Sesto was appointed Receiver of the Plan by the Superior Court.[12]  He thereafter obtained permission from the Superior Court to retain Wistow, Sheehan & Loveley, PC ("WSL") as his "Special Litigation Counsel" to investigate and assert possible claims that may benefit the Plan, pursuant to Special Counsel's retainer agreement which was approved by the Superior Court prior to its execution.[13]  The Order granting the Receiver's petition to retain WSL stated in pertinent part:

> That for the reasons stated in the Receiver's Petition and in accordance with the terms of the Engagement, attached to the Petition as Exhibit A and incorporated herein by reference, the Receiver is hereby authorized to retain the law firm of Wistow Sheehan & Love[e]ly PC ("WSL") to act as the Receivership Estate's special litigation counsel for the purposes more specifically set forth in the Petition and the Engagement . . . .[14]

The Engagement ("WSL's Retainer Agreement") sets forth the fee agreement and provides that "[i]f suit is brought, the [Plan] Receiver agrees to pay as legal fees twenty-three and one-third percent (23 1/3%) of the gross of any amount thereafter recovered by way of suit, compromise, settlement, or otherwise."[15]

On October 27, 2018, the Court appointed the Attorney Del Sesto as Permanent Receiver of the Plan.[16]

---

[11] Ledsham Dec. ¶ 8, ECF # 207-7 (Petition for Receivership, without exhibits for purposes of brevity) at 7.

[12] Ledsham Dec. ¶ 9; ECF ## 207-8 & 207-9 (Orders appointing Attorney Stephen Del Sesto as Temporary and subsequently Permanent Receiver).

[13] Ledsham Dec. ¶ 10; ECF # 207-10 (Order authorizing Receiver to retain WSL as Special Counsel).

[14] Ledsham Dec. ¶ 11; ECF # 207-11 (Order granting emergency petition).

[15] Ledsham Dec. ¶ 12; ECF # 207-12 (WSL Retainer Agreement).

[16] Ledsham Dec. ¶ 9; ECF # 207-9 (Order Appointing Permanent Receiver of the Plan).

With the approval of the Receiver, WSL was also retained by seven individual Plan participants, Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque (the aforementioned Individual Named Plaintiffs) to investigate and assert claims on their behalf.[17]  The Individual Named Plaintiffs agreed to act on their own behalf and on behalf of the other Plan participants in a class action (the "Class Action").[18]  Each of the Individual Named Plaintiffs entered into a separate retainer agreement with WSL which stated in pertinent part as follows:

> WSL believes that the Receiver has standing to bring all necessary claims to protect participants and participants' beneficiaries.  However, it is expected that there may be issues raised as to whether or not participants and participants' beneficiaries have the standing as to certain claims.  To mitigate that potential issue, WSL is proposing to join class action claims along with the claims of the Receiver.  You will be one of several persons represented by WSL named with regard to the class action claims.[19]

In other words, because the damages in the case concerned underfunding of the Plan and the remedy sought was payment into the Plan, it was believed that the Receiver was the proper and sufficient party to assert all claims.  The Individual Named Plaintiffs and the putative class were included notwithstanding that they would receive no recovery apart from the benefit they derive from the increase to the assets of the Plan, to moot any argument to the contrary.[20]

---

[17] Ledsham Dec. ¶ 13.

[18] Ledsham Dec. ¶ 13.

[19] Ledsham Dec. ¶ 14; ECF ## 207-13 through 207-19 (WSL Retainer Agreements with the seven Individual Named Plaintiffs).

[20] Ledsham Dec. ¶ 15.

## II.    Commencement of Suit and Subsequent Proceedings

The Complaints in both this case and in the Rhode Island Superior Court (the "State Court Action") were filed on June 18, 2018.[21]  Plaintiffs' First Amended Complaint was filed in this case on October 5, 2018.[22]  That Complaint consists of 165 pages and 558 numbered paragraphs.[23]

These Complaints were filed by WSL on behalf of the Receiver, the Individual Named Plaintiffs, and the proposed class consisting of the Plan participants.

The complaint in the State Court Action did not include federal law claims and stated that suit "was brought solely for the purposes of protecting Plaintiffs from the possible expiration of any time limitations during the pendency of the proceedings in the Federal Action, should the Federal Court for any reason decline to exercise supplemental jurisdiction over those state law claims."[24]  Pursuant to the parties' stipulation, that action was stayed pending the adjudication of this case in the United States District Court.

The Receiver subsequently entered into three settlement agreements, in August of 2018, September of 2018, and December 30, 2020, respectively, all three of which were subject to the approval of the Court and the Rhode Island Superior Court.[25]

---

[21] ECF # 1 (original Complaint); ECF # 65-7 (Rhode Island Superior Court Complaint).

[22] ECF # 60 (Plaintiffs' First Amended Complaint).

[23] ECF # 60 (Plaintiffs' First Amended Complaint).

[24] ECF # 65-7 (Rhode Island Superior Court Complaint) ¶ 51.

[25] Ledsham Dec. ¶ 18.

The first settlement ("Settlement A")[26] was of the Plaintiffs' claims against CharterCARE Community Board ("CCCB"), SJHSRI, and Roger Williams Hospital ("RWH"), and involved an initial gross cash recovery of $12,681,202.91 and certain additional transfers, commitments and stipulations, which were intended to position the Receiver for additional recoveries on behalf of the Plan, which included the following:

- CCCB's percentage interest (initially 15%) in Prospect Chartercare, LLC[27] and CCCB's claims against Prospect (which were collectively identified as "CCCB's Hospital Interests") would be held by CCCB in trust for the Receiver;

- CCCB's membership interest in Defendant Chartercare Foundation ("CCF") was assigned to the Receiver to further support the Receiver's claim against CCF;[28]

- SJHSRI, CCCB and RWH stipulated to liability at least for breach of contract and to damages of $125 million; and

- SJHSRI, RWH and CCCB committed to file petitions for liquidation in the Rhode Island Superior Court with the Receiver as the sole secured creditor with priority to all of their assets up to the amount of the unpaid balance of the $125 million.[29]

As discussed below, SJHSRI, RWH and CCCB thereafter filed petitions for liquidation.  The court in the liquidation proceedings has ordered Bank of America as trustee under certain perpetual trusts for which SJHSRI and/or RWH are beneficiaries to pay to the Receiver in the future any distributions which would otherwise be paid to SJHSRI and/or RWH.[30]

---

[26] Ledsham Dec. ¶ 19; ECF # 207-20 (Settlement A Settlement Agreement, without exhibits for the sake of brevity).

[27] Which was the sole member of the entities that owned and operated Our Lady of Fatima Hospital and Roger Williams Hospital.

[28] This interest was ultimately assigned by the Receiver to CCF in connection with Settlement B (which involved the payment of $4.5 million).

[29] Ledsham Dec. ¶ 19.

[30] Ledsham Dec. ¶ 72.

The second settlement ("Settlement B") was of the Receiver's claims against CCF (concerning an allegedly fraudulent transfer from CCCB, SJHSRI and RWH to CCF) and involved a gross recovery of $4.5 million.[31]

The third settlement was of the Plaintiffs' claims against Defendant Prospect Medical Holdings, Inc. and certain individuals and entities associated with Prospect Medical Holdings, Inc. (collectively "Prospect") and Defendant the Angell Pension Group, Inc. ("Angell").  That settlement involved a gross recovery of $30,000,000.[32]

The Plaintiffs sought the necessary court approvals for the three settlements. The then-non-settling defendants (including the Prospect Defendants) asserted extensive objections to the first two settlements, and alleged collusion and bad faith.  In fact, the Prospect Defendants expressly stated that:

> The Court should deny the Settlement Petition and reject the Settlement Agreement because it violates the Settlement Statute as it plainly evidences collusion among the Receiver, Special Counsel, and the Settling Parties.

Prospect's Objection (filed September 27, 2018) at 8.[33]  The then-non-settling defendants, including the Diocesan Defendants, Prospect Defendants and Angell, also filed motions to dismiss the entirety of Plaintiffs' claims against them.[34]  The motions to dismiss were initially filed on September 14, 2018 and were re-filed on December 4, 2018 to address the Plaintiffs' First Amended Complaint which was filed on October 5, 2018.

---

[31] Ledsham Dec. ¶ 20; ECF # 207-21 (Settlement Agreement in Settlement B, without exhibits for the sake of brevity).

[32] Ledsham Dec. ¶ 48.

[33] ECF # 63-5.

[34] ECF ## 67 through 70.

Over the next several months the parties in the Federal Court Action intensively litigated the validity of the two settlements and the motions to dismiss filed by the Diocesan Defendants, Prospect, and Angell.

After hearing, in connection with the approval of the settlement with CharterCARE Foundation, the Superior Court approved WSL's fee for representing the Receiver pursuant to the WSL Retainer Agreement, subject to further approvals in the United States District Court.[35]

The Court appointed Deming Sherman, Esq. as Special Master to make a recommendation concerning the fees the Receiver's Special Litigation Counsel would receive in connection with both settlements for representing the Class.[36]  On October 14, 2019, the Special Master filed his Report and Recommendation on Award of Attorneys' Fees.[37]  The Special Master noted that WSL sought no fees for representing the Class in addition to the fees to which WSL was entitled under the Retainer Agreement, "[s]ince WSL was working toward a common goal for both the Receiver and the class members for the ultimate benefit of the Plan participants…."

The Special Master recommended that WSL's fee application be accepted without revision, for two reasons: a) it was consistent with the Retainer Agreement; and b) it was below the benchmark of 25% regularly approved in the First Circuit for

---

[35] See ECF # 79-7 (Order dated December 27, 2018) ¶ 3 ("ORDERED, ADJUDGED, AND DECREED…3. That Special Litigation Counsel's contingent fee of 23 1/3% as set forth in the Petition for Settlement Approval is fair, reasonable, and a benefit to the Plan Receivership estate;").

[36] ECF # 152.

[37] ECF # 165.

attorneys' fees in connection with class action settlements involving recovery of a

common fund.[38]

With respect to the first reason, the Special Master noted as follows:

> The Fee Agreement is a significant factor in support of WSL's request. The Fee Agreement between WSL and the Receiver was negotiated by the Receiver and approved by the Superior Court. Wistow Declaration, Ex. 5, ECF No. 65-5. Judge Stern of the Superior Court is, to my knowledge, a highly capable judge, sophisticated in complex litigation, and his approvals of both the Fee Agreement and the fees awarded in Settlement B are noteworthy. While his approvals are not necessarily binding on this Court, they are entitled to considerable deference…. The Receiver has a fiduciary responsibility to the Plan as well as obligations to the Court as an officer thereof. Therefore, it makes a difference that the Receiver negotiated the Fee Agreement, approved the award of fees for both Settlement A and B, and obtained the blessing of the Superior Court for both the Fee Agreement as well as for the award of fees pursuant to that Agreement.[39]

With respect to the second reason, the Special Master noted as follows:

> There is First Circuit authority for the proposition that the benchmark percentage for POF cases is 25% of the common fund. "Within the First Circuit, courts generally award fees 'in the range of 20-30%, with 25% as "the benchmark." ' " Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 349-350 (D. Mass. 2015) (quoting Latorraca v. Centennial Techs., Inc., 834 F. Supp. 2d 25, 27-28 (D. Mass. 2011), aff'd, 809 F. 3d 78, 85 (1st Cir. 2015).[40]

The Court accepted the Special Master's recommendation in its entirety and

granted WSL's fee application.[41]

---

[38] ECF # 165.

[39] ECF # 165 at 14–15.

[40] ECF # 165 at 15.

[41] See Docket Entry dated October 24, 2019 ("TEXT ORDER adopting [165] Report and Recommendations, granting [64] Motion for Attorney Fees, and, granting [78] Motion for Attorney Fees: After considering the Report and Recommendations of the Special Master, and having heard no objections, the Court ACCEPTS and ADOPTS [165] Report and Recommendations in full. Accordingly,

On March 21, 2019, CCCB commenced a civil action in the Rhode Island Superior Court, initially captioned <u>Chartercare Community Board, individually and derivatively, as member of Prospect Chartercare, LLC and as trustee of the beneficial interest of its membership interest in Prospect Chartercare, LLC v. Samuel Lee, et al.</u>, C.A. No. PC-2019-3654 ("<u>CCCB v. Lee</u>").

The complaint asserted several claims, including that Prospect East Holdings, Inc. had breached its obligation to contribute $50 million in long-term capital contributions to Prospect Chartercare, LLC, and that Prospect Chartercare, LLC was refusing to provide CCCB with financial information necessary for CCCB to intelligently determine whether to exercise its option to sell its membership interest in Prospect Chartercare, LLC to Prospect East Holdings, Inc., pursuant to a valuation procedure agreed to in the LLC Agreement between and among CCCB, Prospect East Holdings, Inc. and Prospect Chartercare, LLC.

On April 25, 2019, the Court in <u>CCCB v. Lee</u> entered a Stipulation and Consent Order which provided, inter alia, for limited discovery by CCCB and the Receiver from Prospect to obtain the information and documents that CCCB and the Receiver required to make an informed decision whether or not to exercise the Put option.

The motions to dismiss in the Federal Court Action were extensively briefed and were the subject of oral argument on September 10, 2019.

At that oral argument, counsel for Prospect and certain other defendants suggested that the court should entertain a motion for summary judgment on the issue

---

the Court GRANTS [64] Motion for Attorneys' Fees and [78] Second Motion for Attorneys' Fees. So Ordered by Chief Judge William E. Smith on 10/24/2019.").

of whether the Employees Retirement Security Act of 1974 ("ERISA") applied to the Plan in June of 2014 when Prospect acquired certain of the assets of St. Joseph Health Services of Rhode Island, including Our Lady of Fatima Hospital (the "2014 Asset Sale").  The Court agreed and deferred determination of the pending motions to dismiss to allow submission of the motion for summary judgment on that issue.[42]

On December 17, 2019, Plaintiffs filed their motion for summary judgment, seeking a declaration that that by April 29, 2013 at the latest, the Plan was not an exempt Church Plan within the meaning of 29 U.S.C. § 1002(33) and, therefore, was subject to ERISA.[43]

The parties then undertook intensive discovery over a ninety (90) day period, later enlarged upon Prospect's motion to one hundred thirty five (135) days, limited to the issues raised by Plaintiffs' motion for summary judgment.[44]

Unbeknownst (at the time) to the Receiver, Special Litigation Counsel, or the then-Liquidating Receiver, and without notice to any of them, certain applications ("CEC Applications") were filed in November of 2019 with the Center for Health Systems Policy and Regulation, Rhode Island Department of Health, in the proceeding captioned In re: Change in Effective Control Applications by Prospect Chartercare RWMC, LLC and Prospect Chartercare SJHSRI, LLC, et al., concerning inter alia Fatima and Roger Williams Hospital.[45]

---

[42] Ledsham Dec. ¶ 28.

[43] Ledsham Dec. ¶ 29.

[44] Ledsham Dec. ¶ 30.

[45] Ledsham Dec. ¶ 31.

Also unbeknownst (at the time) to the Receiver, Special Litigation Counsel, or the then-Liquidating Receiver, and also without notice to any of them, certain applications ("HCA Applications") were filed thereafter with the Office of the Rhode Island Attorney General and the Rhode Island Department of Health in the proceeding captioned Hospital Conversion Initial Application of Chamber Inc.; Ivy Holdings Inc.; Ivy Intermediate Holdings, Inc. [sic]; Prospect Medical Holdings, Inc.; Prospect East Holdings, Inc.; Prospect East Hospital Advisory Services, LLC; Prospect CharterCARE, LLC; Prospect CharterCARE SJHSRI, LLC; Prospect CharterCARE RWMC, LLC.[46]

On December 19, 2019, and pursuant to their obligations under the settlement agreement with the Receiver, CCCB, SJHSRI, and RWH filed their petition for liquidation in the Liquidation Proceedings.[47]

Also on December 19, 2019, Prospect Medical Holdings, Inc. and Prospect East Holdings, Inc. filed a complaint in the Chancery Court of Delaware against CCCB.[48] That complaint asserted that CCCB's transfer of its beneficial interest in Prospect Chartercare LLC to the Receiver in connection with the previously approved settlement was invalid and in breach of CCCB's obligations under the LLC Agreement with Prospect Medical Holdings, Inc. and Prospect East Holdings, Inc., and sought a judicial determination that the transfer was void.

In addition, Prospect Medical Holdings, Inc. and Prospect East Holdings, Inc. asserted in the Delaware lawsuit that CCCB was obligated to indemnify them for all losses incurred in the Federal Court Action and the companion state court proceeding,

---

[46] Ledsham Dec. ¶ 32.

[47] Ledsham Dec. ¶ 33.

[48] Ledsham Dec. ¶ 34; ECF # 207-24 (Delaware Chancery Court Complaint).

pursuant to the provision in the LLC Agreement that purported to obligate CCCB to indemnify Prospect Medical Holdings, Inc. and Prospect East Holdings, Inc. for any expenses arising out a claim that Prospect had any liability under the Plan, and which provided that CCCB's interest in Prospect Chartercare, LLC would be reduced *pro rata* for any such expenses.  Thus, Prospect both directly attacked the validity of the Receiver's beneficial interest in Prospect Chartercare, LLC, and sought to reduce the value of that interest to zero by setting off an indemnity claim against it, thereby reducing the assets of CCCB.[49]

On January 17, 2020 Thomas Hemmendinger was appointed the initial permanent Liquidating Receiver in the Liquidation Proceedings.[50]

On April 21, 2020, the Receiver subsequently intervened in CCCB v. Lee as a party plaintiff and joined in the filing of a First Amended Complaint in CCCB v. Lee.[51]

Thereafter the Receiver and the then-Liquidating Receiver engaged in months of document discovery and motion practice before the court in the Liquidation Proceedings to obtain the information needed to intelligently determine whether to exercise CCCB's option to sell its interest in Prospect Chartercare, LLC.[52]

The Receiver and the then-Liquidating Receiver first learned of the CEC Applications and the HCA Applications in March of 2020.  The Receiver and the then-Liquidating Receiver filed formal objections in both proceedings.  In particular, the Receiver's Special Litigation Counsel and the then-Liquidating Receiver objected to the

---

[49] Ledsham Dec. ¶ 34.

[50] Ledsham Dec. ¶ 35; ECF # 25.

[51] Ledsham Dec. ¶ 36.

[52] Ledsham Dec. ¶ 37.

applicants' proposal that Prospect Medical Holdings, Inc. would pay a private investment fund affiliated with Leonard Green & Partners an undetermined sum (but which was at least $11,900,000) for the private investment fund's interest in a parent company of Prospect Medical Holdings, Inc.[53]

The Receiver's Special Litigation Counsel and the then-Liquidating Receiver objected on the grounds that such a transfer would deprive Prospect Medical Holdings, Inc. of assets without any benefit to Prospect Medical Holdings, Inc.  The Receiver's Special Litigation Counsel and the then-Liquidating Receiver further objected that such a transfer would be a fraudulent transfer prejudicial to the potential recovery of the Plaintiffs and CCCB against Prospect Medical Holdings, Inc., which had guaranteed Prospect East Holdings. Inc.'s obligation to contribute $50 million to Prospect Chartercare, LLC, and against whom the Receiver had asserted direct claims in this case.[54]

The Receiver's Special Litigation Counsel made several additional written submissions and participated in public hearings in connection with both proceedings on several occasions.[55]

On June 26, 2020, in this case, Prospect filed its opposition to Plaintiffs' motion for summary judgment and filed a cross-motion for summary judgment asking the court to enter an Order "finding that the Plan lost its church plan status on, and as of,

---

[53] Ledsham Dec. ¶ 38.

[54] Ledsham Dec. ¶ 39.

[55] Ledsham Dec. ¶ 40.

December 15, 2014, but in any event no later than April 15, 2019."[56]  In other words, Prospect alleged that the Plan lost church plan status only *after* Prospect acquired the assets of SJHSRI in June of 2014.

The parties in the Federal Court Action then undertook discovery over another ninety (90) day period, limited to the issues raised by Prospect's cross-motion for summary judgment.

On July 10, 2020, the Receiver's Special Litigation Counsel filed a motion to disqualify Prospect's counsel from representing Prospect in connection with the CEC and HCA Applications, based on their conflict of interest arising from their prior representation of SJHSRI.[57]  Over the next several months, Special Litigation Counsel submitted four supplemental memoranda in support of that motion.[58]  The Superior Court denied the motion on October 10, 2020, whereupon the then-Liquidating Receiver applied for and was granted leave to file a petition for *certiorari* with the Rhode Island Supreme Court.[59] On December 20, 2020, the Receiver's Special Litigation Counsel filed a motion for reconsideration of the Superior Court's denial of the motion to disqualify Prospect's counsel, on the grounds of newly discovered evidence concerning the adversity between Prospect's counsel's representation of Prospect and Prospect's counsel's prior representation of SJHSRI.[60]  The Receivers alleged this evidence had

---

[56] Ledsham Dec. ¶ 41; ECF # 190-1 (Memorandum of Law in Support of Opposition to Plaintiffs' Motion For Summary Judgment on Count IV of the First Amended Complaint and Cross Motion for Summary Judgment by the Prospect Defendants).

[57] Ledsham Dec. ¶ 43.

[58] Ledsham Dec. ¶ 44.

[59] Id.

[60] Id.

been improperly withheld from Plaintiffs and the Superior Court.[61]  These matters were pending when the Plaintiffs entered into a settlement with Prospect and Angell.[62]

On September 1, 2020, Plaintiffs filed their memorandum in reply[63] to the memorandum submitted by Prospect in opposition to Plaintiffs' motion for summary judgment.

On September 29, 2020, Prospect filed a motion in the Receivership Proceedings to adjudge the Receiver in contempt for the Receiver's and Special Litigation Counsel's filing of opposition to the CEC and HCA Applications.[64]

On October 30, 2020, the Receiver and the then-Liquidating Receiver submitted an extensive objection to Prospect's CEC and HCA Applications to the Rhode Island Attorney General and Department of Health.[65]

On November 20, 2020, the Diocesan Defendants filed their Statement of Disputed Facts in Response to Prospect's Statement of Undisputed Facts[66] and filed their Response to Prospect's Cross-Motion for Summary Judgment.[67]

On November 23, 2020, Plaintiffs filed their memorandum[68] in opposition to Prospect's cross-motion for summary judgment and Plaintiffs' Supplemental Response to the Prospect Defendants' Statement of Undisputed Material Facts.[69]

---

[61] Id.

[62] Id.

[63] ECF # 191.

[64] Ledsham Dec. ¶ 45.

[65] Ledsham Dec. ¶ 46; ECF # 207-26.

[66] ECF # 199.

[67] ECF # 200.

[68] ECF # 202.

[69] ECF # 201.

On December 8, 2020, Prospect filed their memorandum[70] in reply to the memorandum submitted by Plaintiffs in opposition to Prospect's cross-motion for summary judgment.  Also on December 8, 2020, the Diocesan Defendants filed their own Response to Plaintiffs' Response to Prospect's Cross-Motion for Summary Judgment.[71]

In early November of 2020, Plaintiffs, Prospect and Angell agreed to participate in a settlement mediation with retired Rhode Island Supreme Court Chief Justice Frank A. Williams as mediator.  Over the next eight weeks, and with the support of the Mediator, the parties negotiated settlement terms and exchanged draft settlement documents.[72]

As of December 30, 2020, Plaintiffs, Prospect, and Angell agreed on the terms set forth in their settlement agreement (the "Prospect/Angell Settlement").[73]  In summary, the agreement provided for payment of thirty million dollars ($30,000,000) upon final approval of the settlement in the Federal Court Action, a portion of which was to be paid by or on behalf of Prospect and a portion of which was to be paid by or behalf of Angell.  Prospect's contribution to the settlement was the sum of twenty-seven million two hundred fifty thousand dollars ($27,250,000).[74]  Angell's contribution was the sum of two million seven hundred fifty thousand ($2,750,000).[75]

---

[70] ECF # 203.

[71] ECF # 204.

[72] Ledsham Dec. ¶ 47.

[73] Ledsham Dec. ¶ 48; ECF # 207-1 (Prospect/Angell Settlement Agreement).

[74] See Ledsham Dec. ¶ 52.

[75] See Ledsham Dec. ¶ 51.

Five million dollars of Prospect's contribution to the settlement was allocated to what the Prospect/Angell Settlement referred to as "CCCB's Hospital Interests," which consisted of CCCB's membership interest (of nominally 15%) in Prospect Chartercare, LLC and CCCB's other claims against Prospect Chartercare, LLC.  The Prospect/Angell Settlement provided that of such sum, four million dollars was allocated to the purchase price for CCCB's membership interest in Prospect Chartercare, LLC, and the remaining balance of one million dollars was allocated to the rest of CCCB's Hospital Interests.

The entirety of that $30 million was to be (and later was) paid to the Receiver, for payment into the Plan after the payment of attorneys' fees and expenses.  As was the case in connection with the prior settlements approved by the Court, no payment was made from the settlement directly to any of the Plan participants.

On January 25, 2021, the Receiver and the then-Liquidating Receiver filed petitions for instructions with the Superior Court concerning the Prospect/Angell Settlement.[76]  The Superior Court heard those petitions on February 12, 2021.[77]  On March 4, 2021, the Superior Court issued its written Decision granting the petitions, which decision the Superior Court amended by Amended Decision dated March 8, 2021.[78]

Following the Superior Court's granting of the Receivers' petitions for settlement instructions, the Receiver's Special Counsel filed a motion for preliminary settlement approval with the Court on March 11, 2021.[79]  The Court subsequently granted

---

[76] Ledsham Dec. ¶ 53.

[77] Ledsham Dec. ¶ 54.

[78] Ledsham Dec. ¶ 56; ECF # 207-32.

[79] Ledsham Dec. ¶ 62; ECF # 206.

preliminary settlement approval on March 26, 2021 and set down the hearing on final approval for July 20, 2021.[80]

On July 29, 2021, the Court issued its written Order Granting Final Approval to Settlement, approving both the Prospect/Angell Settlement and WSL's fee.[81]

At the conclusion of the Fairness Hearing on the Prospect/Angell Settlement on July 20, 2021, the Court had inquired of counsel concerning how the remaining case between Plaintiffs and the Diocesan Defendants would proceed, and a discussion ensued.[82]  During that discussion, counsel for the Diocesan Defendants suggested that the Federal Court should decide the Plaintiffs' motion for partial summary judgment and Prospect's cross motion for partial summary judgment.[83]  However, counsel for Plaintiffs took the position that the motion and cross-motion had been mooted by the Prospect/Angell Settlement.[84]  The Court directed Plaintiffs and the Diocesan Defendants to submit memoranda on the issue of mootness.[85]

On August 31, 2021, Plaintiffs and the Diocesan Defendants filed their memoranda in the Federal Court Action concerning mootness, with Plaintiffs contending the motion and cross motion were moot, and the Diocesan Defendants contending they were not moot.[86]  On September 3, 2021, Plaintiffs filed their Reply to the Diocesan

---

[80] ECF # 209.

[81] ECF # 217.

[82] Ledsham Dec. ¶ 64.

[83] Id.

[84] Id.

[85] Id.

[86] ECF # 222 (Diocesan Defendants' memorandum); ECF #223 (Plaintiffs' memorandum).

Defendants' memorandum concerning mootness,[87] and on September 7, 2021, the Diocesan Defendants filed its Reply to the Plaintiffs' memorandum concerning mootness.[88]

On September 8, 2021, the Court conducted a Zoom chambers conference.[89] During this conference, the Court inquired whether Plaintiffs were withdrawing their motion for summary judgment.  Plaintiffs' counsel advised that while that was probably unnecessary since the motion was moot, Plaintiffs were withdrawing their motion and would file a formal motion seeking leave to withdraw their motion for summary judgment if the Court considered that to be necessary.[90]  The Court indicated that if a then-upcoming mediation proved unsuccessful, Plaintiffs should file a motion to withdraw their motion for partial summary judgment.[91]

On September 29, 2021, Plaintiffs and the Diocesan Defendants participated in the first of what was supposed to be three scheduled days of mediation.  The mediation ended after one day and did not resume.[92]

On October 13, 2021, Plaintiffs filed a motion to withdraw their motion for partial summary judgment.[93]  On November 10, 2021, the Diocesan Defendants filed their

---

[87] ECF # 224.

[88] ECF # 225.

[89] Ledsham Dec. ¶ 66.

[90] Id.

[91] Id.

[92] Ledsham Dec. ¶ 67.

[93] ECF # 226.

objection to that motion to withdraw,[94] to which Plaintiffs filed their reply on December 7, 2021.[95]

On December 10, 2021, the Court heard oral argument on Plaintiffs' motion to withdraw and granted the motion.[96]  The Court directed the Diocesan Defendants to file their own motion for partial summary judgment.[97]

On February 11, 2022, the Diocesan Defendants filed their Motion for Partial Summary Judgment seeking a declaration that the Plan ceased to be exempt from ERISA by April 29, 2013.[98]  That same day, the Diocesan Defendants also filed a renewed Motion to Dismiss the operative First Amended Complaint.[99]

On April 18, 2022, Plaintiffs filed their objections (with supporting memoranda, statements of facts, and affidavits) to the Diocesan Defendants' Motion for Partial Summary Judgment and Motion to Dismiss.[100]  Plaintiffs also filed a conditional Rule 56(d) motion seeking leave to conduct discovery concerning whether the Diocesan

---

[94] ECF # 228

[95] ECF # 231.

[96] Docket Entry ("TEXT ORDER granting [226] Plaintiffs' Motion to Withdraw Motion for Summary Judgment on Count IV of the Complaint, without prejudice to refiling or prejudice to any party. Plaintiffs' Motion for Summary Judgment on Count IV of the Complaint, ECF No. [173], is withdrawn. Defendants Prospect Medical Holdings, Inc., Prospect East Holdings, Inc., Prospect Chartercare, LLC, Prospect Chartercare SJHSRI, LLC, and Prospect Chartercare RWMC, LLC's Cross-Motion for Summary Judgment, ECF No. [193], is DENIED as MOOT. As discussed in a conference held on December 10, 2021, Defendants Diocesan Administration Corporation, Diocesan Service Corporation, and Roman Catholic Bishop of Providence, shall file their Motion for Summary Judgment on or before January 21, 2022. Plaintiffs' response to the Diocesan Defendants' motion is due on or before February 21, 2022. The Diocesan Defendants' reply is due on or before March 7, 2022. So Ordered by District Judge William E. Smith on 12/10/2021. (Urizandi, Nisshy)").

[97] Id.

[98] ECF # 236.

[99] ECF # 238.

[100] ECF ## 243, 243-1 through -89, 244, 245.

Defendants should be estopped from contending the Plan was an ERISA plan prior to its being placed into receivership.[101]

On April 7, 2022, the court in the Liquidating Receivership granted the Receiver's Petition to Apply Trust Income to Pension Plan.[102]  Pursuant to that Order, the then-Liquidating Receiver paid $1,005,776 to the Receiver for the benefit of the Plan estate, representing accumulated distributions from certain trusts for which Bank of America, N.A. was trustee and for which SJHSRI and/or RWH was beneficiary.[103]  In addition, pursuant to that Order, Bank of America, N.A. (as trustee) was ordered to make future distributions from those trusts to the Receiver instead of to the then-Liquidating Receiver, SJHSRI, or RWH.[104]

On June 29, 2022, the Diocesan Defendants filed replies in support of their Motion for Partial Summary Judgment and their Motion to Dismiss, and an objection to Plaintiffs' Rule 56(d) motion to conduct discovery.[105]  Plaintiffs filed a reply to the latter on July 20, 2022.[106]

On September 13, 2022, the Court issued a twenty-four (24) page Memorandum and Order granting the Diocesan Defendants' Motion for Partial Summary Judgment, denying Plaintiffs' Rule 56(d) motion to conduct discovery, denying the Diocesan

---

[101] ECF # 246.

[102] Ledsham Dec. ¶ 72, Exhibit 7 (April 7, 2022 Order).

[103] Ledsham Dec. ¶ 72, Exhibit 8 (Affidavit of Receipt of Trust Income).

[104] Ledsham Dec. ¶ 72, Exhibit 7 (April 7, 2022 Order) ¶ 7.

[105] ECF # 254.

[106] ECF # 257.

Defendants' Motion to Dismiss without prejudice, and ordering the parties to return to mediation.[107]

On December 16, 2022, the Superior Court appointed Stephen Del Sesto, Esq. as the Liquidating Receiver of CharterCARE Community Board, St. Joseph Health Services of Rhode Island, and Roger Williams Hospital, in the place of Attorney Hemmendinger.[108]

Following the Court's Memorandum and Order on September 13, 2022, Plaintiffs and the Diocesan Defendants conducted a long series of mediation sessions before Chief Justice Frank A. Williams (Ret.), including sessions on November 28, 2022, December 23, 2022, March 23, 2023, May 22, 2023, and June 19, 2023.[109]  These mediation sessions ultimately culminated in the Settlement Agreement dated as of August 24, 2023.

Pursuant to the Settlement Agreement, Plaintiffs and the Diocesan Defendants on August 30, 2023 filed their Stipulation and Consent Order Staying Action, which the Court entered on August 31, 2023.[110]  The order provides that this Action is stayed except for matters incidental to or required by the Settlement Agreement, provided, however, that if Plaintiffs and/or the Diocesan Defendants at any time conclude that any of the contingencies to which the settlement is subject will not occur, they may file a

---

[107] ECF # 258.

[108] Ledsham Dec. ¶ 75, Exhibit 9 (December 16, 2022 Order).

[109] Ledsham Dec. Exhibit 2 (Affidavit of Frank J. Williams, C.J. (Ret.)) ¶ 11.

[110] ECF # 261.

motion with the court explaining the grounds for that conclusion and request that the stay be lifted.[111]

## III.    Terms of Settlement

The terms of settlement are set forth in the Settlement Agreement.[112]  Under the agreement, the Diocesan Defendants will make a $2,500,000 payment to the Plan Receivership, upon the occurrence of the following events:

- First, the Court agrees to stay[113] the pending litigation pending the action by Pension Benefit Guaranty Corporation ("PBGC");

- Second, as of an appropriate time (expected to be no sooner than the Spring of 2024) the Plan's Receiver will seek to have PBGC terminate the Plan, and PBGC agrees to take over the Plan;

- Third, PBGC agrees, upon Plan termination and trusteeship, to release, or to not assert, any claims against any Diocesan-related entities;

- Fourth, PBGC agrees to provide the maximum statutory guaranteed benefits; and

- Fifth, the Court and the Superior Court[114] approve the settlement terms, including complete releases of all claims by the settlement class, with the Court certifying a settlement class.

---

[111] Id.

[112] Ledsham Dec. Ex. 1 (Settlement Agreement).

[113] As noted, that condition has already been satisfied.

[114] As noted *infra*, the Superior Court has already approved the settlement terms.

Should any of these conditions not be met, the Settlement Agreement will become void, no payments will be made, and all claims and defenses will remain outstanding.

## IV.    Attorneys' Fees

Pursuant to the WSL Retainer Agreement, the attorneys' fees to which Special Litigation Counsel is entitled in connection with the proposed settlement is 23 1/3% of the gross settlement amount,[115] based on the WSL Retainer Agreement.

This Court previously approved WSL's fee pursuant to the WSL Retainer Agreement, in connection with the approval of the three earlier settlements.

## V.    Superior Court Approval of the Proposed Settlement

On September 22, 2023, the Receiver filed his Petition for Settlement Instructions and Approval with the Rhode Island Superior Court, with notice to all parties who had participated in the Plan Receivership Proceedings, including the Diocesan Defendants.[116]  That petition was also filed by Stephen Del Sesto in his capacity as Liquidating Receiver.  There was no objection asserted to this petition.[117]

The petition was heard in the Rhode Island Superior Court on October 2, 2023. At the conclusion of the hearing Judge Stern granted the petition and directed that the Receiver submit a proposed order.  On October 18, 2023, the Superior Court entered the order.[118]  That order states in pertinent part as follows:

---

[115] <u>See</u>  Ledsham Dec. Ex.6 (WSL Retainer Agreement) at 2.

[116] Ledsham Dec. ¶ 78, Exhibit 10 (Receiver's Affidavit of Notice).

[117] Ledsham Dec. ¶ 78.

[118] Ledsham Dec. ¶ 79, Exhibit 11 (October 18, 2023 Order).

ORDERED, ADJUDGED, AND DECREED:

1.      That the Petition for Settlement Instructions and Approval is granted;

2.      That notice of the Petition for Settlement Instructions and Approval and of the hearing thereon was given to all parties in interest, including all of the Plan's participants and beneficiaries;

3.      That all of the *Jeffrey* Factors favor approval of the Proposed Settlement;

4.      That the Proposed Settlement including specifically the Settlement Agreement is fair and reasonable, was made in good faith, and is in the best interests of the Receivership estate and the Plan's participants and beneficiaries, that the Settlement Agreement constitutes a good-faith settlement under R.I. Gen. Laws § 23-17.14-35, and that all actions of the Receiver in connection with the negotiation, execution, and implementation of the Proposed Settlement are approved and ratified; and

5.      That the Receiver may seek approval of the Proposed Settlement by the United States District Court in Stephen Del Sesto et al. v. Prospect Chartercare, LLC et al. (C.A. No: 1:18-CV-00328-WES-LDA) (the "Federal Court Action") and is directed to take all necessary and appropriate actions in connection therewith; and

6.      That Special Counsel's contingent fee for representing the Receiver of 23 1/3% (as set forth in the Petition for Settlement Instructions and Approval and which the Court has previously approved) is fair, reasonable, and a benefit to the Receivership estate and, subject to the approval of the Proposed Settlement and the fee by the court in the Federal Court Action, the Receiver is authorized to pay said fee to Special Counsel from the proceeds of the Proposed Settlement and to pay the entire remaining proceeds to the Plan.

Ledsham Dec. ¶ 79, Exhibit 11 (October 18, 2023 Order).

## OVER 1,000 PLAN PARTICIPANTS SUPPORT THE PROPOSED SETTLEMENT

The Proposed Settlement has the support of all of the Plan participants that are represented by counsel in the Receivership Proceedings.[119]  Over one thousand (1,000) of the Plan participants are represented by counsel in the Plan Receivership Proceedings: Attorneys Arlene Violet represents 357 Plan participants;[120] Attorney Jeffrey Kasle represents 247 Plan participants;[121] and Attorney Christopher Callaci, as General Counsel of for the United Nurses & Allied Professionals ("UNAP"), represents 400 Plan participants.[122]  All of these Plan participants through their counsel have affirmatively indicated their support for the Proposed Settlement.[123]

## RISK OF NOT SETTLING

The risks to the Plan if the settlement is not approved justify this settlement as being in the best interest of the Plan (as well as, indirectly, in the best interest of the Plan participants).

The litigation risks involving the Diocesan Defendants arise out of the unique facts of this case and the novelty and complexity of the legal issues involved, which could result in a verdict in favor of the Diocesan Defendants on liability.  Moreover, as discussed below, because of the limited remedies available under ERISA, Plaintiffs

---

[119] See *supra* at 2 n.4, concerning the role of Attorneys Violet, Kasle and Callaci.

[120] Ledsham Dec. ¶ 4, Exhibit 3 (Violet Affidavit) at 1.

[121] Ledsham Dec. ¶ 4, Exhibit 5 (Kasle Declaration) at 1.

[122] Ledsham Dec. ¶ 4, Exhibit 4 (Callaci Declaration) at 1.

[123] Ledsham Dec. ¶ 4, Exhibit 3 (Violet Affidavit) at 2; Exhibit 5 (Kasle Declaration) at 2; Exhibit 4 (Callaci Affidavit) at 2.

could succeed in proving their claims against the Diocesan Defendants but receive limited or even no recovery.

Plaintiffs principally contend the Diocesan Defendants became liable for the Plan by improperly participating (in violation of fiduciary duties they owed to the Plan participants) in the 2014 Asset Sale concerning assets of CCCB, SJHSRI, and RWH (including, most notably, the hospitals known as Our Lady of Fatima Hospital and Roger Williams Hospital, as well as other medical facilities).

Those claims involve highly contested factual issues.  Notably, the Diocese of Providence contends it ceased acting as Plan Sponsor and Plan Administrator in 1995, nineteen (19) years before the Asset Sale.  Beginning in 1995, the Plan Sponsor and Administrator was purportedly SJHSRI, and the Diocese of Providence contends it had no formal role in connection with the Plan.  The Diocesan Defendants claim, therefore, that they are not liable for any irregularities that occurred in connection with the Asset Sale in 2014.

Moreover, the Diocesan Defendants dispute that the Asset Sale was improper. Plaintiffs' claim that the Asset Sale was improper would have to overcome the fact that the Asset Sale was approved by the Rhode Island Attorney General and the Rhode Island Department of Health, after voluminous filings and public hearings.

Those claims also involve legal issues that affect Plaintiffs' potential recovery. Plaintiffs asserted overlapping (a) ERISA and (b) state law claims for breaches of fiduciary duty.  As noted, on September 13, 2022, the Court granted the Diocesan Defendants partial summary judgment.[124]  The Court held that the Plan ceased to

---

[124] ECF # 258.

qualify as a Church Plan by April 29, 2013 at the very latest,[125] which, if not vacated by the Court or on appeal, might result in many (or possibly all) of the Plaintiffs' state law claims against the Diocesan Defendants being dismissed under ERISA preemption.

In that event, Plaintiffs would be allowed to proceed with their claims under ERISA.  However, ERISA allows only equitable remedies, and the law is unclear whether any such remedies would result in Plaintiffs obtaining a recovery from the Diocesan Defendants.  Thus, Plaintiffs might succeed in proving their claims against the Diocesan Defendants but still receive little or even no recovery.

**ARGUMENT**

## I.    The Court Should Preliminarily Approve the Settlement

The requirements for approval of class action settlements are set forth in Rule 23(e) of the Federal Rules of Civil Procedure, which states in pertinent part as follows:

> (e) **Settlement, Voluntary Dismissal, or Compromise**. The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) Notice to the Class.
> >
> > > (A) Information That Parties Must Provide to the Court. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> > >
> > > (B) Grounds for a Decision to Give Notice. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is

---

[125] ECF # 258 at 24.

justified by the parties' showing that the court will likely be able to:

> (i) approve the proposal under Rule 23(e)(2); and

> (ii) certify the class for purposes of judgment on the proposal.

(2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

(3) Identifying Agreements. The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) New Opportunity to be Excluded. If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Class-Member Objections.

(A) In General. Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

(B) Court Approval Required for Payment in Connection with an Objection. Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

(i) forgoing or withdrawing an objection, or

(ii) forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

Fed. R. Civ. P. 23(e).

Thus, the procedure for approval of a class settlement involves an initial, preliminary determination by the Court in connection with the decision whether to direct notice to the class. "[T]he goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." Newberg on Class Actions § 13:13 (citations omitted). "At the preliminary approval stage, on motion of the plaintiffs, the court reviews the proposed terms of the settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." McLaughlin on Class Actions § 6:7 (14th ed.) (citations omitted). "At this stage, the court can only determine whether the proposed settlement appears to fall within the range of possible final approval. . . . All findings and rulings for purposes of preliminary approval are contingent on the parties achieving successful final approval of the Settlement Agreement." Trombley v. Bank of America Corp., No. 08-CV-456-JD, 2011 WL 3740488, at *4 (D.R.I. Aug. 24,

2011) (citing <u>Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.</u>, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011)).

As noted, if the Proposed Settlement is approved, it will be the fourth settlement in this case.  In connection with the preliminary approval of Settlement A, the Court described the legal criteria for approval as follows:

> Rule 23(e)(2) permits the Court to approve a class action settlement only if the proposed agreement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2); <u>In re Pharma. Indus. Average Wholesale Price Litig.</u>, 588 F.3d 24, 32 (1st Cir. 2009). At the preliminary approval stage, however, a less rigorous standard applies: the Court need only determine whether the settlement "appears to fall within the range of possible final approval." <u>Trombley v. Bank of Am. Corp.</u>, Civil No. 08-cv-456-jd, 2011 WL 3740488, at *4 (D.R.I. Aug. 24, 2011); see also <u>Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee</u>, 616 F.2d 305, 314 (7th Cir. 1980), overruled in part on other grounds by <u>Felzen v. Andreas</u>, 134 F.3d 873 (7th Cir. 1998). Preliminary approval should not be confused for a final finding of reasonableness or fairness. The first step is merely to "ascertain whether notice of the proposed settlement should be sent to the class ...." 4 William B. Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2018); see also <u>Flynn v. N.Y. Dolls Gentlemen's Club</u>, No. 13 Civ. 6530(PKC)(RLE), 2014 WL 4980380, at *1 (S.D.N.Y. Oct. 6, 2014) ("Preliminary approval requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.") (quoting <u>Clark v. Ecolab, Inc.</u>, No. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quotation marks omitted)).

<u>Del Sesto v. Prospect CharterCARE, LLC</u>, C.A. No. 18-328 WES, 2019 WL 2394251, at *1 (D.R.I. June 6, 2019).

Since in making the decision whether to direct notice, the Court must decide whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2)," the Court must make a preliminary determination of whether the proposed settlement will meet the requirements for final approval.  "There is no single litmus test for a settlement's

approval; it is instead examined as a gestalt to determine its reasonableness in light of the uncertainty of litigation." Gulbankian v. MW Mfrs., Inc., No. CIV.A. 10-10392-RWZ, 2014 WL 7384075, at *1 (D. Mass. Dec. 29, 2014) Id. (citing Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 72 (D. Mass. 1999)). See Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 4758161, at *3 ("However, although '[t]he case law offers 'laundry lists of factors' pertaining to reasonableness... 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'") (quoting Bezdek v. Vibram USA, Inc., 809 F.3d 78, 82 (1st Cir. 2015) (quoting Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009)).

As the Court previously noted:

> Some of the factors in this consideration include:
>
> > (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 4758161, at *3 (citing Baptista v. Mutual of Omaha Ins. Co., 859 F. Supp. 2d 236, 240-41 (D.R.I. 2012) (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)).

> Additionally, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Id.* (quoting In re Pharm. Indus. Average Wholesale Price

Litig., 588 F.3d 24, 32-33 (1st Cir. 2009)). "[T]he lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement." Medoff v. CVS Caremark Corp., No. 09-cv-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016); see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.")(internal citation omitted).

Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 4758161, at *3.

The Proposed Settlement meets the requirements for preliminary approval. In other words, the Settling Parties have provided the Court with "a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23, 2018 Advisory Committee Note.

That "solid record" includes Judge Stern's Order granting the Receiver's Petition for Settlement Instructions, including the finding that "all of the Jeffrey Factors favor approval of the Proposed Settlement."[126]

## II. The Proposed Settlement Class Should Be Preliminarily Certified to Participate in the Settlement

It should be noted at the outset that the Settling Parties seek certification of the Settlement Class solely for the purpose of permitting the Settlement Class to participate in the settlement of Plaintiffs' claims against the Diocesan Defendants.

The requirements for certification of a *litigation class* are set forth in the Manual on Complex Litigation:

> To obtain an order to prevail in their efforts to certify a class, proponents must satisfy two sets of requirements: those set forth in Rule 23(a) and

---

[126] Ledsham Dec. ¶ 79, Exhibit 11 (October 18, 2023 Order) ¶ 3.  See Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) ("(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.").

those contained in Rule 23(b). Rule 23(a) requires that (1) the proposed class be sufficiently numerous; (2) there is at least one common question of fact or law; (3) the named plaintiff's claims are typical of the class as a whole; and (4) the named plaintiff will adequately represent the class.

Rule 23(b) permits maintenance as a class action if the action satisfies Rule 23(a)'s prerequisites and meets one of three alternative criteria for maintainability. First, Rule 23(b)(1)(A) permits certification to prevent inconsistent rulings regarding defendants' required conduct. Standards for certifying a class under Rule 23(b)(1)(B) relate primarily to limited fund settlements and are discussed below in section 21.132. Second, Rule 23(b)(2) permits a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Third, Rule 23(b)(3) permits a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Manual on Complex Litigation § 21.131 (Certifying a Litigation Class) (4th Ed. 2004) (citations omitted).

The standard for certifying a *settlement class* is similar, with one difference:

Rule 23(a) and (b) standards apply equally to certifying a class action for settlement or for trial, with one exception. In *Amchem Products, Inc. v. Windsor*, the Supreme Court held that because a settlement class action obviates a trial, a district judge faced with a request to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)(D).

Manual on Complex Litigation, *supra*, § 21.132 (Certifying a Settlement Class) (citing

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997)).

"Just as the settlement approval unfolds through two levels of judicial review (preliminary and final), so, too, does the motion for settlement class certification."

Newberg on Class Actions, *supra*, § 13:16. "If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness

36

evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  Manual on Complex Litigation, *supra*, § 21.632.  See also 2018 Advisory Committee Note to Fed R. Civ. P. Rule 23 ("The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.").

### A.    Under Rule 23(a)

The Complaint and the additional submissions in connection with this motion adequately set forth the reasons why such certification is appropriate based upon the following factors which support class certification for purposes of settlement under Rule 23(a) of the Federal Rules of Civil Procedure.

### 1.    Numerosity

There are 2,761 Plan participants.[127]  All of those persons are members of the Settlement Class, and, thus, the Settlement Class is so numerous that joinder of all members is impracticable.  See Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 2394251, at *4 ("First, there are 2,729[128] Plan participants, rendering joinder of all members of the proposed settlement class impracticable.").

### 2.    Commonality

The issues raised by Plaintiffs' claims against the Diocesan Defendants present common issues of law and fact, with answers that are common to all members of the

---

[127] Ledsham Dec. ¶ 6.

[128] The number is now 2,761.

Settlement Class, including but not limited to the determination of (1) the Plan participants' rights under the Plan, and whether those obligations were breached and those rights violated; (2) whether the Diocesan Defendants improperly participated (in violation of fiduciary duties they owed to the Plan participants) in the 2014 Asset Sale.

The issues regarding the relief Plaintiffs seek from the Diocesan Defendants are also common to the members of the Class, as the relief will include, but is not limited to (1) whether Plaintiffs have suffered damages if their benefits under the Plan are insured by the Pension Benefit Guaranty Corporation; and (2) whether Plaintiffs are entitled to recover money damages or, rather, are limited to equitable remedies under ERISA.

### 3.    Typicality

The Proposed Class Representatives' claims are typical of the claims of the other members of the Settlement Class because their claims arise from the same events, practices and/or courses of conduct.  The Proposed Class Representatives' claims are also typical because all Class members are similarly affected by the alleged wrongful conduct of the Diocesan Defendants.

### 4.    Adequacy

The Proposed Class Representatives through the Proposed Settlement will fairly and adequately represent and protect the interests of all members of the Class.  The Proposed Class Representatives do not have any interests antagonistic to or in conflict with the interests of the Class. Moreover, WSL's Retainer Agreements with each of the Proposed Class Representatives obligates them to act fairly on behalf of the class:

> In non-class litigation, parties asserting claims are free to pursue only their own interests; they need not take into account the interests of others. Class actions are different, and require both class representatives and the

lawyers in their capacity as lawyers for the class to consider and pursue only the common claims and interests of the class as a whole. This means that you must always act in the best interest of the class as a whole and consider the interests of the class ahead of your own individual or personal interests. If at any time you fail or refuse to prioritize the interests of the class, you will not be able to serve as a class representative, and WSL will not be able to continue representing you.[129]

One possible area of conflict between and among the Proposed Class Representatives and the Settlement Class has been obviated by the terms of WSL's Retainer Agreements with the Proposed Class Representatives, each of which contain the following provision, to prevent conflicting interests from interfering with WSL's representation of the class in connection with a settlement involving aggregated payments, such as the Proposed Settlement *sub judice*:

> An aggregate settlement may be insufficient to completely compensate each claimant individually and disagreements may arise concerning how to allocate, or divide, an aggregate settlement. If there is insufficient proceeds or assets to cover the claims of each of the respective Clients, there can be disputes regarding how to allocate the proceeds or assets as between the joint Clients. If any disputes should arise between the joint Clients, WSL will not advise or represent any of the Clients (including the [Plan] Receiver) in connection with such disputes. WSL will remain able to advocate an overall settlement but not how such settlement should be divided.[130]

Thus, it is clear the proposed class representatives adequately represent the interests of the settlement class. As the Court also noted in analyzing this issue in connection with Settlement A:

---

[129] Ledsham Dec. ¶ 14; ECF ## 207-13 through 207-19 (WSL Retainer Agreements with the seven Individual Named Plaintiffs) at 3.

[130] Ledsham Dec. ¶ 14; ECF ## 207-13 through 207-19 (WSL Retainer Agreements with the seven Individual Named Plaintiffs) at 3. This provision applies to a conflict that could arise if, at some point, the funding of the Plan is such that a reduction in benefits is required, and the beneficiaries' other counsel cannot agree as to how any reduction should apply.

> Fourth, the proposed class representatives are aligned with the proposed class members. There is no evidence that named plaintiffs have any interests that conflict with those of other class members. In addition, the retainer agreements for the proposed class counsel sets forth each representative's duty to act fairly and in the best interests of the class and provides that class counsel will not advise or represent any client concerning any dispute about how to allocate any aggregate settlement proceeds… The Court thus concludes that the proposed representatives will fairly and adequately protect the interests of the class.

Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 2394251, at *4 (citation to record omitted).

The Proposed Class Representatives have engaged counsel experienced in complex litigation, who have already reviewed over 1,000,000 pages of documents,[131] and litigated their claims in this case, several cases in the Rhode Island Superior Court. and in regulatory proceedings involving the CEC and HCA Applications.  Moreover, WSL (a) with the approval of the Rhode Island Superior Court, represent the Receiver whose interests in the Proposed Settlement are identical to the interests of the Proposed Class Representatives, (b) have presented the Proposed Settlement to the Superior Court in the Receivership Proceedings and obtained that court's approval of the Proposed Settlement, (c) have thrice already been certified as class counsel in connection with the three prior settlements,[132] and, perhaps most importantly, (d) have negotiated the Proposed Settlement of the case against the Diocesan Defendants that is fair and reasonable.  As the Court further noted in analyzing this issue in connection with Settlement A:

---

[131] Ledsham Dec. ¶ 16.

[132] See Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 2394251, at *5 ("The Court also preliminarily appoints…Wistow, Sheehan & Loveley, P.C. as class counsel.").

Lastly, the Court recognizes that the proposed class counsel are highly qualified and able to carry out their corresponding duties. Among other things, counsel are experienced in complex litigation, appear to have engaged in significant pre-suit investigation, and presented the proposed settlement to the Rhode Island Superior Court in related receivership proceedings to obtain that court's required approval.

Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 2394251, at *5.

### B.    Class Certification Is Proper under Rule 23(b)(1)(B)

The Settling Parties seek class certification under Fed. R. Civ. P. 23(b)(1)(B), which does not permit class members to opt out of the settlement.  Fed. R. Civ. P. 23(b)(1)(B) states as follows:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

*        *        *

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. . . .

Plaintiffs' claims are such that "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Indeed, the law is clear that claims based upon ERISA should be certified under Rule 23(b)(1).  See Newberg on Class Actions (5th Ed.) § 4:21 (The "'derivative nature of ERISA breach of fiduciary duty claims' makes them 'paradigmatic examples of claims appropriate for certification as a Rule

41

23(b)(1) class.'") (quoting In re Schering Plough Corp. ERISA Litigation, 589 F.3d 585, 604 (3d Cir. 2009)).

> This is so because "any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants." Indeed, the Supreme Court noted in *Ortiz* that Rule 23(b)(1)(B) explicitly aimed to cover actions charging "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust."

Newberg on Class Actions, *supra* (quoting Thomas v. SmithKline Beecham Corp., 201 F.R.D. 386, 397 (E.D. Pa. 2001) and Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999)). See Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 2394251, at *5 ("As for the criteria set forth in Rule 23(b)(1)(B) for so-called 'limited fund' class actions, Plaintiffs' claims under the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. § 1001 et seq., are 'paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class ....'") (quoting In re Schering Plough Corp. ERISA Litig., *supra*, 589 F.3d at 604).

Even if ERISA were inapplicable to Plaintiffs' claims (because the Plan is a "church plan" excepted from ERISA or for any other reason), this would still be a situation for which certification is proper under Rule 23(b)(1)(B). The Plan was originally established, and continues to operate, as a trust.[133]  Accordingly, if not subject to ERISA, the Plan is governed by the law of trusts.  See MacNeill v. The Benefits Plan of the Presbyterian Church (U.S.A.), 89 F.Supp.3d 1080, 1083 (D. Wa. 2016) ("In this case, as a threshold matter, the Court agrees with defendants' assertion that the plan

---

[133] See, e.g., Plaintiffs' First Amended Complaint (ECF # 60) ¶¶ 231. 277, 282.

under which plaintiffs seek reimbursement is an ERISA-exempt church plan governed by Pennsylvania trust law."); McAninch-Ruenzi v. Bd. of Pensions of The Presbyterian Church (U.S.A.), No. CIV 06-1040-PA, 2007 WL 1039495, at *5 (D. Or. Apr. 2, 2007) (ERISA-exempted church plan is subject to the state law of trusts); Leacock v. Bd. of Pensions of Presbyterian Church USA, No. CIV.A. 09-754-C, 2010 WL 2653345, at *1 (W.D. Ky. July 1, 2010) ("Because the death and disability plan at issue is structured as a trust, trust law principles guide the standard of review.") (church plan governed by law of trusts).  As the Court previously noted in connection with the approval of Settlement A:

> The Court also agrees with the Plaintiffs that, even if Plan was not governed by ERISA during the relevant period, this is a classic "limited fund" action.

Del Sesto v. Prospect CharterCARE, LLC, *supra*, 2019 WL 2394251, at *5 (citing, as "outlining characteristics of Rule 23(b)(1)(B) class actions," Ortiz v. Fibreboard Corp., *supra*, 527 U.S. at 838).

## III.  The Court Should Approve the Proposed Notice Plan and Class Notice

Fed. R. Civ. P. 23(e)(1) states as follows:

> (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

"But while Rule 23(e) directs the giving of notice, it leaves the form of the notice to the court's discretion; for this reason, courts have sometimes overlooked the absence of notice where there was clearly no prejudice to class members."  Navarro-Ayala v.

Hernandez-Colon, 951 F.2d 1325, 1337 (1st Cir. 1991) (citations omitted).  See also

Wright, Miller & Kane, Federal Practice and Procedure § 1797.6:

> **The court has complete discretion in determining what constitutes a
> reasonable notice scheme, both in terms of how notice is given and
> what it contains.** As indicated in the discussion of the other notice
> provisions in Rule 23, subdivision (c)(2) and subdivision (d)(2), there is no
> single way in which the notice must be transmitted. **Of course, notice by
> mail to all of the identified class members informing them of the
> proposed action and indicating that they have a right to participate
> and voice their objections will suffice.**  But other approaches including
> the use of television, radio, the internet, and various print publications also
> may be utilized. In some cases, such as in prisoner litigation, when the
> class members are all in one location, posting or other publication may be
> deemed sufficient.

Wright, Miller & Kane, Federal Practice and Procedure § 1797.6 (citations omitted)

(emphasis supplied).

Plaintiffs have submitted a proposed Class Notice for the Court's approval.[134]

The Receiver has already long been acting as the Administrator of the Plan, and,

accordingly, has compiled a database that includes the mailing addresses for all of the

Plan participants.  Under the Notice Plan proposed by the Settling Parties, if the Court

grants preliminary settlement approval, then, within ten (10) days after an order granting

preliminary approval is entered, the Receiver will mail the Class Notice to all Plan

participants via first-class mail and will publish the Class Notice on the website

maintained by the Receiver at https://www.pierceatwood.com/receivership-filings-st-

joseph-health-services-rhode-island-retirement-plan.

---

[134] Attached hereto as Exhibit A (Proposed Class Notice).

The proposed Class Notice is sufficiently detailed but not overly legalistic, and written in plain, easily understood language.  The proposed Class Notice will inform the Class Members of their rights and the manner and deadline to object to the settlement and request for attorneys' fees.[135]  The Class Notice also will inform them of the claims to be released.[136]  The Class Notice will further contain a link to a website through which Class Members can access pertinent Court documents, including the Settlement Agreement, and any orders and judgment entered in this matter.[137]  The proposed Class Notice also provides the contact information for all counsel in the case, whom the Settlement Class Members may contact if they have questions.[138]

## IV.    Plaintiffs' Counsel Should Be Appointed to Represent the Settlement Class

Plaintiffs are seeking the appointment of Plaintiffs' Counsel to represent the Settlement Class in connection with the Proposed Settlement, as occurred in connection with the three prior settlements.  Such appointment is proper for the reasons discussed *supra*, concerned Plaintiffs' Counsel's role in this case and related proceedings, including that, with the approval of the Rhode Island Superior Court, they already represent the Receiver in this case, whose interests are identical to the interests of the proposed Class Representatives.

---

[135] Exhibit A (Proposed Class Notice).

[136] Exhibit A (Proposed Class Notice).

[137] Exhibit A (Proposed Class Notice).

[138] Exhibit A (Proposed Class Notice).

**V.    Statement Identifying Agreements in Connection with Proposed Settlement.**

In compliance with the express requirements of Fed. R. Civ. P. 23(e)(3), Plaintiffs by their undersigned counsel hereby state that there are no agreements between or among the Settling Parties or their counsel made in connection with the Proposed Settlement other than the Settlement Agreement[139] itself.

**VI.    The Proposed Settlement Satisfies R.I. Gen. Laws § 23-17.14-35**

R.I. Gen. Laws § 23-17.14-35 provides:

> The following provisions apply solely and exclusively to judicially approved good faith settlements of claims relating to the St. Joseph Health Services of Rhode Island Retirement Plan, also sometimes known as the St. Joseph Health Services of Rhode Island pension plan:
>
> > (1) A release by a claimant of one joint tortfeasor, whether before or after judgment, does not discharge the other joint tortfeasors unless the release so provides, but such release shall reduce the claim against the other joint tortfeasors in the amount of the consideration paid for the release.
> >
> > (2) A release by a claimant of one joint tortfeasor relieves them from liability to make contribution to another joint tortfeasor.
> >
> > (3) For purposes of this section, a good faith settlement is one that does not exhibit collusion, fraud, dishonesty, or other wrongful or tortious conduct intended to prejudice the non-settling tortfeasor(s), irrespective of the settling or non-settling tortfeasors' proportionate share of liability.

R.I. Gen. Laws § 23-17.14-35.  This is now consistent with the general rule since July 14, 2021: "A release by the injured person of one joint tortfeasor, whether before or after

---

[139] Ledsham Dec. ¶ 3, Exhibit 1.

judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release."  R.I. Gen. Laws § 10-6-7 (eff. July 14, 2021).[140]

As noted, the Superior Court approved the Proposed Settlement on October 18, 2023, and in connection therewith expressly found "that the Settlement Agreement constitutes a good-faith settlement under R.I. Gen. Laws § 23-17.14-35."[141]

### CONCLUSION

The Court is respectfully requested to enter an order granting the following relief:

1.  granting preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e);

2.  preliminarily certifying a non-opt-out Settlement Class consisting of all Plan participants;

3.  preliminarily appointing the Individual Named Plaintiffs Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, as Representatives of the Settlement Class

4.  preliminarily appointing Wistow, Sheehan & Loveley, PC to represent the Settlement Class;

5.  authorizing the Receiver to carry out the Notice Plan and issue the Class Notice to the Settlement Class;

6.  scheduling the submission of Plaintiffs' motion for final class action settlement approval;

7.  scheduling the hearing for final approval of the settlement and approval of WSL's motion for an award of attorneys' fees and set deadline(s) for objections to both; and

---

[140] See 2021 Rhode Island Laws Ch. 21-410 (21-S 733) § 3 ("This act shall take effect upon passage and shall apply to all claims pending at the time of passage or asserted thereafter; provided, however, that this act shall not apply to, affect or impair releases executed before the passage date."); 2021 Rhode Island Laws Ch. 21-411 (21-H 5560) § 3 (same).

[141] Ledsham Dec. ¶ 79, Exhibit 11 (October 18, 2023 Order).

8.    granting approval of the settlement between Plaintiffs and the Diocesan Defendants as a good faith settlement pursuant to R.I. Gen. Laws § 23-17.14-35.

Respectfully submitted,

Plaintiffs,
By their Attorneys,

/s/ Max Wistow
Max Wistow, Esq. (#0330)
Stephen P. Sheehan, Esq. (#4030)
Benjamin Ledsham, Esq. (#7956)
WISTOW, SHEEHAN & LOVELEY, PC
61 Weybosset Street
Providence, RI   02903
401-831-2700 (tel.)
mwistow@wistbar.com
spsheehan@wistbar.com
bledsham@wistbar.com

Dated:    October 25, 2023