# Exhibit 2

| | |
|---|---|
| STATE OF RHODE ISLAND<br>PROVIDENCE, SC | SUPERIOR COURT |
| ST. JOSEPH HEALTH SERVICES OF<br>RHODE ISLAND, INC.<br><br>v.<br><br>ST. JOSEPH'S HEALTH SERVICES OF<br>RHODE ISLAND RETIREMENT PLAN,<br>AS AMENDED<br><br>In re:<br><br>CHARTERCARE COMMUNITY BOARD,<br>ST. JOSEPH HEALTH SERVICES OF<br>RHODE ISLAND and ROGER<br>WILLIAMS HOSPITAL | C.A. No.: PC-2017-3856<br><br><br><br><br><br><br><br>C.A. No.: PC-2019-11756 |

## AFFIDAVIT OF FRANK J. WILLIAMS, C.J. (RET.)

Frank J. Williams, C.J. (Ret.) hereby deposes and says as follows:

1. I am submitting this affidavit in connection with the Petition for Settlement Instructions and Approval, which is presently scheduled for hearing on October 2, 2023. The statements in this affidavit are based upon my personal knowledge and are true and correct.

2. I received my undergraduate degree from Boston University in 1962 before serving for five years in the U.S. Army. I served as an Army captain in Vietnam, earning the Bronze Star, the Combat Infantry Badge, and, from the Republic of Vietnam, the Gallantry Cross with Silver Star for Valor. Following my honorable discharge, I received a juris doctorate from Boston University, was admitted to the Rhode Island Bar in 1970, and was in private practice from 1970 to 1995. I was elected a delegate to the 1986 Rhode Island Constitutional Convention and twice elected town moderator of Richmond, Rhode Island.

1

3. In 1995, I was appointed Associate Justice of the Rhode Island Superior Court. In 2001, I was elevated to Chief Justice of the Rhode Island Supreme Court, in which capacity I served until my retirement in 2008.

4. Since my admission to the bar, I have been involved in thousands of cases, including mediation of many hundreds of matters. In my capacity as mediator, I act as a neutral, representing neither plaintiff nor defendant. I drew on all my experience in mediating this action in an attempt to bring the parties to a resolution of the disputes between them.

5. I was selected by the settling parties to act as mediator in this action. I was able to mediate the settlement between Plaintiffs, the Prospect Entities, and The Angell Pension Group, Inc. On September 29, 2021, my mediation of the dispute between Plaintiffs and Roman Catholic Bishop of Providence, a corporation sole, Diocesan Administration Corporation, and Diocesan Service Corporation ("Diocesan Defendants") came to an impasse. On September 13, 2022, United States District Judge William Smith ordered Plaintiffs and the Diocesan Defendants to return to mediation before me.

6. This is the fourth settlement in this case. These settling parties are: Stephen Del Sesto (the "Plan Receiver") (as Receiver and Administrator of the St. Joseph Health Services of Rhode Island Retirement Plan (the "Plan") and as the Liquidating Receiver for CharterCARE Community Board), Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque, Roman Catholic Bishop of Providence, a corporation sole, Diocesan Administration Corporation, and Diocesan Service Corporation ("Diocesan Defendants").

7. Based on my more than fifty years of experience, as a lawyer, judge, and mediator, it is my opinion that the proposed settlement in the case was reached after arm's-length negotiations and represents a reasonable and fair outcome for all parties involved.

2

8. As the independent mediator, I presided over the settlement discussions and negotiations between the settling parties. To prepare myself for that role, I reviewed the progress of the dispute in the state and federal court actions and the arguments made by the parties in connection with their motions to dismiss and for summary judgment. Many of the contentions advanced by the settling parties involve completely novel and unsettled issues of law.

9. This matter represents one of the most complex, if not the most complex, matters in which I have been involved in all my years as a lawyer, judge, or mediator. I submitted affidavits in support of the prior settlement involving the Prospect Entities. As I said then, I believe that this litigation is unique within the United States. This is, to my knowledge, the first "church plan" case to involve even one state court appointed receiver, much less two. Other "church plan" cases typically involve one employer, perhaps a hospital, continuously operating an employee benefits plan. The instant litigation involved more than a dozen defendants, each of which Plaintiffs contended had liability for the shortfall in the funding of the Plan. All the other Defendants have settled, leaving the Diocesan Defendants as the sole remaining defendants to this litigation. The Diocesan Defendants deny any responsibility whatsoever. Notably, the Diocese of Providence claims it ceased acting as Plan Sponsor and Plan Administrator in 1995 and the vast majority of the allegations upon which Plaintiffs claims are based involve subsequent events.

10. The specific claims being settled are also complex. Plaintiffs have asserted overlapping (a) ERISA and (b) state law claims for breaches of fiduciary duty. The United States District Court has granted the Diocesan Defendants partial summary judgment that the Plan ceased to qualify as a Church Plan by April 29, 2013, at the very latest, which, if not vacated by the trial court or on appeal, would likely result in many (and possibly all) of the Plaintiffs' state law claims against the Diocesan Defendants being dismissed under ERISA preemption.

3

11. The mediation process involved extensive analysis of the settling parties' positions including, for instance, the value of Plaintiffs' claims and the Diocesan Defendants' defenses to liability and damages. The mediation negotiations included sessions on November 28, 2022, December 23, 2022, March 23, 2023, May 22, 2023, and June 19, 2023, as well as many telephone and email communications. These negotiations exhibited the highest standards of professionalism on all sides, notwithstanding the deep-seated feelings on all sides as to the correctness of their respective positions. It was often a challenge to contain the enthusiasm felt by counsel for each side. Nevertheless, we succeeded in breaking all impasses and achieved a unified compromise that I believe represents a just and fair result for all sides.

12. Based on my knowledge of the actions, all of the materials provided to me, the efforts of counsel, the rigor of the negotiations, the extent of discovery already conducted, the litigation risks, the risks of collectability of any judgment obtained by Plaintiffs, and the benefits achieved in the settlement, I believe this is a fair and adequate settlement of all the claims against the Diocesan Defendants, and that the settlement should be approved by the Court.

13. The settlement with the Diocesan Defendants is especially favorable to the Plaintiffs inasmuch as it requires as a condition, *inter alia*, that Pension Benefit Guaranty Corporation ("PBGC") take over the Plan and pay benefits up to the maximum statutory allowance. If such condition is satisfied, then the Plan participants will receive their benefits directly from PBGC. If that condition is not satisfied, the settlement with the Diocesan Defendants will be void, the stay in the Federal Court action will be lifted, and Plaintiffs will be entitled to seek to recover their full damages from the Diocesan Defendants.

14. In evaluating the fairness of the settlement, I took into account the amount that will be netted by the Plan from the settlement. I understand that the Plan Receiver, in connection with his request for approval of the settlement, will be asking the U.S. District Court for final approval

for the settlement and a fee to be paid to Wistow, Sheehan & Loveley, PC ("WSL"), pursuant to the Engagement and Fee Agreement previously approved by the Court on October 17, 2017. It is my opinion that substantial work and effort was performed by WSL in litigating the federal action and the parallel Superior Court actions, and in presenting their claims in such a way to produce a valuable settlement for all participants by increasing the assets of the Plan and the likelihood of PBGC taking over the Plan. Based upon my experience as a judge and as a mediator, it is my opinion that a request by WSL for an attorneys' fee in the amount of twenty-three and one-third percent (23 & 1/3%) of the $2,500,000 settlement fund, in accordance with their Court-approved fee agreement with the Plan Receiver, is reasonable and appropriate given the complexity of this matter and the significant relief recovered by WSL if the settlement is consummated.

15.     A fee of 23 & 1/3% is less than the presumptively reasonable "benchmark" fee for this type of settlement in the First Circuit. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015) ("Within the First Circuit, courts generally award fees in the range of 20–30%, with 25% as 'the benchmark.'"), *aff'd*, 809 F.3d 78 (1st Cir. 2015). That reasonableness is further amplified here, where the settlement enhances the likelihood that PBGC will take over the Plan and pay Plan participants many millions of dollars in addition to the Plan assets. Moreover, recovery is principally on behalf of the Plan (which through its Receiver has contractually agreed to the fee) instead of on behalf of class members other than through the Plan.

Executed on this __19th__ day of September, 2023 in Providence, Rhode Island.

_____
Hon. Frank J. Williams, C.J. (Ret.)

SUBSCRIBED AND SWORN to before me this 19th day of September, 2023.

_____
NOTARY PUBLIC
My Commission Expires: 9/16/2027

5