UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN DEL SESTO, AS RECEIVER AND ADMINISTRATOR OF THE ST. JOSEPH HEALTH SERVICES OF RHODE ISLAND RETIREMENT PLAN, ET AL. | : | |
| Plaintiffs | : | |
| v. | : | C.A. No:1:18-CV-00328-WES-LDA |
| PROSPECT CHARTERCARE, LLC, ET AL. | : | |
| Defendants. | : | |

**PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES IN CONNECTION WITH SETTLEMENT WITH THE DIOCESAN DEFENDANTS**

Max Wistow, Esq. (#0330)
Stephen P. Sheehan, Esq. (#4030)
Benjamin Ledsham, Esq. (#7956)
Wistow, Sheehan & Loveley, PC
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mwistow@wistbar.com
spsheehan@wistbar.com
bledsham@wistbar.com

October 25, 2023

## Table of Contents

Introduction ........ 1

Background ........ 4

Argument ........ 4

I. The terms of the Proposed Settlement ........ 4

II. An award of fees pursuant to the Retainer Agreement is proper because this action is brought primarily by the Receiver on behalf of the Plan, and very much secondarily on behalf of the Settlement Class ........ 5

II. An award of fees based on the Retainer Agreement is proper under the particular facts of this case, including the support of the Plan participants, and because the stipulated fee is below the benchmark of 25% ........ 7

Conclusion ........ 10

## INTRODUCTION

The law firm of Wistow, Sheehan & Loveley, PC ("WSL") submits this motion for attorneys' fees in connection with the proposed settlement (the "Proposed Settlement") with Defendants Roman Catholic Bishop of Providence, a corporation sole, Diocesan Administration Corporation, and Diocesan Service Corporation (collectively the "Diocesan Defendants"). As detailed in the Motion for Preliminary Settlement Approval, the Proposed Settlement is subject to several contingencies, failing which the settlement will be void and the parties will revert to litigating their dispute. Of course, WSL's request for fees is conditioned on consummation of that settlement and the payment by the Diocesan Defendants of the $2,500,000 settlement proceeds.

WSL represents Plaintiffs Stephen Del Sesto (as Receiver and Administrator of the St. Joseph Health Services of Rhode Island Retirement Plan, and as Liquidating Receiver of St. Joseph Health Services of Rhode Island, CharterCARE Community Board, and Roger Williams Hospital) (the "Receiver"). Although the Receiver fully represents the interests of the Plan, to avoid any possible issues suit was also brought on behalf of seven plan participants Gail J. Major, Nancy Zompa, Ralph Bryden, Dorothy Willner, Caroll Short, Donna Boutelle, and Eugenia Levesque (the "Individual Named Plaintiffs"), individually and as prospective class representatives.[1]

---

[1] Each of the Individual Named Plaintiffs entered into a separate retainer agreement with WSL which stated in pertinent part as follows:

> WSL believes that the Receiver has standing to bring all necessary claims to protect participants and participants' beneficiaries. However, it is expected that there may be issues raised as to whether or not participants and participants' beneficiaries have the standing as to certain claims. To mitigate that potential issue, WSL is proposing to join class action claims along with the claims

Accordingly, WSL is also seeking to be appointed class counsel for the Settlement Class. WSL was previously appointed class counsel in connection with the three prior settlements ("Settlement A," "Settlement B," and the "Prospect/Angell Settlement") (collectively the "Prior Settlements") that this Court has previously approved in this case.

WSL seeks an attorneys' fee of 23 1/3% of the gross recovery from the Proposed Settlement. This is the contingent fee set forth in WSL's Retainer Agreement with the Receiver and approved by the Rhode Island Superior Court at the outset of WSL's representation of the Receiver in the latter half of 2017.[2] This is also the attorneys' fee approved by this Court in connection with the three prior settlements.[3] It is also the fee approved by the Rhode Island Superior Court subject to the approval of this Court, in connection with this Proposed Settlement.

In support of this motion, WSL incorporates by reference Plaintiffs' Motion for Preliminary Settlement Approval and related relief ("Plaintiffs' Motion for Settlement

---

of the Receiver. You will be one of several persons represented by WSL named with regard to the class action claims.

Ledsham Dec. ¶ 14; ECF # 207-13 through ECF # 207-19 (WSL Retainer Agreements with the seven Individual Named Plaintiffs). In other words, because the damages in the case concerned underfunding of the Plan and the remedy sought was payment into the Plan, it was believed that the Receiver was the proper and sufficient party to assert all claims. The Individual Named Plaintiffs and the putative class were included, notwithstanding that they would receive no recovery apart from the obvious benefit they derive from the increase to the assets of the Plan, to moot any argument to the contrary.

[2] Ledsham Dec. ¶ 14; Ledsham Dec. Exhibit 6 (WSL Retainer Agreement) (the Retainer Agreement provides that "[i]f suit is brought, the [Plan] Receiver agrees to pay as legal fees twenty-three and one-third percent (23 1/3%) of the gross of any amount thereafter recovered by way of suit, compromise, settlement, or otherwise.").

[3] As a result of the Special Master's referring to WSL's contingent fee under the Retainer Agreement as 23.3% instead of 23 1/3%, WSL ultimately was paid a fee in the lesser amount of 23.3%.

Approval") and the Declaration of Benjamin Ledsham ("Ledsham Dec.") which have also been filed on October 25, 2023.

These submissions include the following four declarations, which were initially filed in the Rhode Island Superior Court on September 22, 2023 in connection with seeking the Superior Court's approval of the Proposed Settlement, as exhibits to the Receiver's Petition for Settlement Instructions and Approval:

- The Affidavit of the Hon. Frank J. Williams, C.J. (Ret.) ("Williams Dec."), sworn to on September 19, 2023, concerning the mediation and terms of the Proposed Settlement, and the fees to be awarded to WSL;[4]

- The Affidavit of Arlene Violet, Esq. ("Violet Dec."), sworn to on September 19, 2023, who represents over 285 Plan participants,[5] in support of the Proposed Settlement and the fees to be awarded to WSL;[6]

- The Affidavit of Christopher Callaci, Esq. ("Callaci Dec."), sworn to on September 19, 2023, who in his capacity as General Counsel for United Nurses and Allied Professionals ("UNAP") represents the approximately 400 Plan participants who are members of UNAP, in support of approval of the Proposed Settlement and the fees to be awarded WSL;[7] and

- The Declaration of Jeffrey W. Kasle, Esq. ("Kasle Dec."), sworn to on September 20, 2023, who represents 247 Plan participants, in support of approval of the Proposed Settlement and the fees to be awarded WSL.[8]

---

[4] Ledsham Dec. Exhibit 2.

[5] Attorneys Violet, Kasle and Callaci were originally retained by certain Plan participants in connection with negotiations with the Plan Receiver and advocacy in the Plan Receivership Proceedings concerning the allocation of possible cuts in benefits. That is an issue in which WSL has not been and will not be involved.

[6] Ledsham Dec. Exhibit 3.

[7] Ledsham Dec. Exhibit 4.

[8] Ledsham Dec. Exhibit 5.

## BACKGROUND

Having already approved the three Prior Settlements in this case, the Court is already fully familiar with the complex travel of this case and the much broader factual scenario set forth in Plaintiffs' Motion for Preliminary Settlement Approval, such that there is no need to repeat.

## ARGUMENT

### I. The terms of the Proposed Settlement

The terms of settlement are set forth in the Settlement Agreement.[9] Under the agreement, the Diocese will make a $2.5 million payment to the Plan Receivership, upon the occurrence of the following events:

- First, the Court agrees to stay[10] the pending litigation pending the action by Pension Benefit Guaranty Corporation ("PBGC");
- Second, as of an appropriate time (expected to be no sooner than the Spring of 2024) the Plan's Receiver will seek to have PBGC terminate the Plan, and PBGC agrees to take over the Plan;
- Third, PBGC agrees, upon Plan termination and trusteeship, to release, or to not assert, any claims against any Diocesan-related entities;
- Fourth, PBGC agrees to provide the maximum statutory guaranteed benefits; and
- Fifth, the Court and the Superior Court[11] approve the settlement terms, including complete releases of all claims by the settlement class, with the Court certifying a settlement class.

---

[9] Ledsham Dec. Exhibit 1.

[10] That condition has already been satisfied. See ECF # 261 (Stipulation and Consent Order entered August 31, 2023).

[11] The Superior Court has already approved the settlement terms. See Ledsham Dec. Exhibit 11 (October 18, 2023 Order).

Should any of these conditions not be met, the Settlement Agreement will become void, no payments will be made, and all claims and defenses will remain outstanding.

WSL requests that the Order granting its motion for fees expressly provide that the award of fees is conditional upon the occurrence of these contingencies.

## II. An award of fees pursuant to the Retainer Agreement is proper because this action is brought primarily by the Receiver on behalf of the Plan, and very much secondarily on behalf of the Settlement Class

Fed. R. Civ. P. 23(h) recognizes: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law **or by the parties' agreement**." (emphasis supplied). In connection with the Proposed Settlement, it is the Receiver's fee agreement with WSL that appropriately governs WSL's fee award.

This action has been brought primarily by the Receiver on behalf of the Plan. The Receiver's right to sue on behalf of the Plan derives both from his appointment by the Superior Court[12] and by the resolution of the Board of Trustees of SJHSRI transferring to and vesting in the Plan Receiver "all rights and powers of the Corporation [SJHSRI] as sponsor and administrator of the Plan…"[13] While Plan beneficiaries will certainly and obviously benefit from the Proposed Settlement, their benefit is indirect, inasmuch as the net settlement proceeds are to be deposited into the Plan and will ultimately be distributed to Plan beneficiaries in the form of their normal Plan benefits.

---

[12] The order appointing the Receiver gives him plenary authority over the Plan, including specifically "full power to prosecute, defend, adjust and compromise all claims and suits of, by, against or on behalf of" the Plan. ECF # 207-9 (Order dated October 27, 2017) ¶ 5.

[13] ECF # 174-4 (Resolutions of SJHSRI's Board of Trustees adopted on October 20, 2017).

That is exactly what happened with the prior three settlements approved by this Court in 2019 and 2021.

The Retainer Agreements with the Individual Named Plaintiffs reflect that while it was believed that the Receiver was the proper and sufficient party to assert all claims, the reason suit was also brought on behalf of any Plan participants was to moot any argument that the Receiver lacked standing.[14] Indeed, the law of trusts is clear that a trustee has standing to bring suits on behalf of the trust and need not join the beneficiary. See Bogert's The Law of Trusts and Trustees § 594 (June 2020 update) ("The trustee brings suit in his own name and ordinarily need not join the beneficiary as a party. The very nature of a trust implies a power in the trustee to represent the beneficiary in actions against or by a third party.") and § 593 ("If suit is brought by or against the trustee, is the beneficiary a necessary party? Generally, the beneficiary is held not to be a necessary party.") (citations omitted). It was the concern that the defendants might argue that an exception to the general rule might apply here that led to this suit also being a class action.

Thus, while the Proposed Settlement seeks certification of the Settlement Class and can be understood as creating a common fund on behalf of the Settlement Class, it can also be understood as a recovery on behalf of the Plan, through WSL's performance of the terms of a contractual fee agreement that the Receiver entered into on behalf of the Plan, with the approval of the Superior Court. In this respect, the posture of this fee application is very different from other more typical class action

[14] Ledsham Dec. ¶ 14; ECF # 207-13 through ECF # 207-19 (WSL Retainer Agreements with the seven Individual Named Plaintiffs).

contexts (for which the instant fee application, in any event, would still be appropriately granted).

## II. An award of fees based on the Retainer Agreement is proper under the particular facts of this case, including the support of the Plan participants, and because the stipulated fee is below the benchmark of 25%

In connection with prior fee applications, WSL has fully surveyed the applicable case law and the specific facts that support its fee application. Most importantly, the Court has already fully considered these issues. On July 20, 2021, the Court conducted its fairness hearing on the Prospect/Angell Settlement. During that hearing, the Court addressed his approval of WSL's fee of 23 and 1/3 percent and stated:

> Just by way of sort of general comments with respect to this approval, I don't believe it would -- as I've indicated earlier, that it's either necessary, nor would it be all that much help to anyone for me to write an opinion in this case. One of the reasons I feel that way is not just its uniqueness, but I think this is about the most well-supported and thoroughly vetted settlement and request for attorneys' fees that I've seen, and I've presided over a number of class actions which have resulted in settlements. But by the time it's gotten to me at this juncture, it has essentially been vetted and approved by Judge Stern, with a very thorough and well-reasoned and compelling written opinion which has been referenced here. The affidavit of Retired Chief Justice Williams, which is also comprehensive and thorough and places the case and the settlement and the attorneys' fees award in context. The fact that the fee award was negotiated by a very sophisticated receiver, Mr. Del Sesto, who is as experienced in these matters as anyone in the bar and who I think negotiated a very good fee arrangement and contract with the Special Counsel on behalf of the members -- on behalf of the receivership I should say. And it comes to me not only with all of that support but now, as we've just heard on the record, the support in the affidavits of Mr. Callaci and Ms. Violet and Mr. Kasle on behalf of the individual members of the Plan who are the ultimate beneficiaries of this settlement when the money is paid. And all of that in combination just overwhelmingly suggests to me that the settlement is fair and reasonable and for the benefit of all of these members.

> In addition to that, the percentage strikes me as more than reasonable I think that in the circuit -- the cases have been cited. I've commented on this in prior decisions, but the percentage-of-fund method has been adopted and approved by the First Circuit and in the district courts. And I think the actual percentage here, the 23 1/3, is well within the usual percentages that are approved. It's been noted that those are typically between 20 and 30 percent. In my experience, they're sometimes over 30 percent. So I think that 23 1/3 percent that was negotiated here is more than reasonable.
>
> And that's especially true in light of the complexity of what -- complexity of this case. It is among the certainly top three or four of most complex cases that I have been involved in, although my own -- I will say very thankfully that most of the complexity has been dealt with on your side of the screen and not on my side of the screen and maybe in Judge Stern's court. I think we have -- on this side we've skated a little bit free of the rancor and the -- maybe not all the rancor, but a lot of it and some of the complexity.
>
> I think Mr. Wistow mentioned the *Loestrin* case.[15] I don't see anybody on this screen who was involved in that case, but don't underestimate the *Loestrin* case. There were 25 testifying experts and 50 substantive motions in limine and settled right after I impaneled the jury and just before opening statements. And it was, I think, a $300 million settlement, if my recollection serves me correctly, in an antitrust class action, multidistrict litigation case. So I put this maybe in that same league.
>
> So when I look to the 23 1/3 percent, and just by my own experience comparing it to some other cases where certainly higher percentages have been approved for equal or lesser intensity of work, I will say that I think that Mr. Wistow and Mr. Sheehan and their firm have -- did some really exceptional lawyering and very creative and very tenacious so I have no trouble approving that fee award.
>
> So I don't think it really is necessary for me to say too much more than that.

ECF # 218 (July 20, 2021 Hearing Transcript[16]) at 42–46.

---

[15] Referring to Loestrin 24 Fe Antitrust Litig., No. 1:13-MD-2472-S-PAS, 2020 WL 5203323 (D.R.I. Sept. 1, 2020) (Smith, J.) (approving attorneys' fees of 33 and 1/3 percent).

[16] Attached hereto as Exhibit A.

WSL's fee application also has the support of all of the Plan participants that are represented by counsel in the Receivership Proceedings.[17] Over one thousand (1,000) of the Plan participants are represented by counsel in the Plan Receivership Proceedings: Attorneys Arlene Violet represents 357 Plan participants;[18] Attorney Jeffrey Kasle represents 247 Plan participants;[19] and Attorney Christopher Callaci, as General Counsel of for the United Nurses & Allied Professionals ("UNAP"), represents 400 Plan participants.[20] All of these Plan participants through their counsel have affirmatively indicated their support for WSL's fee application.[21]

In addition, the Mediator, Retired Chief Justice Frank Williams, has also addressed WSL's fee application:

> It is my opinion that substantial work and effort was performed by WSL in litigating the federal action and the parallel Superior Court actions, and in presenting their claims in such a way to produce a valuable settlement for all participants by increasing the assets of the Plan and the likelihood of PBGC taking over the Plan. Based upon my experience as a judge and as a mediator, it is my opinion that a request by WSL for an attorneys' fee in

---

[17] Ledsham Dec. Exhibit 3 (Violet Affidavit) ¶¶ 9-10 ("I understand that the Plan Receiver and his Special Counsel, Wistow, Sheehan & Loveley, PC, will be asking for approval of attorneys' fees of 23 1/3 % pursuant to the original retainer agreement approved by this Court on October 17, 2017. . . . On behalf of my clients, I urge the Court to approve the Proposed Settlement (including attorneys' fees) with the aforesaid entities."); Ledsham Dec. Exhibit 4 (Callaci Affidavit) ¶ 6 ("I understand that the Plan Receiver and his Special Counsel, Wistow, Sheehan & Loveley, PC, will be asking for approval to bring that settlement to the U.S. District Court, and, in connection therewith, for payment of the contingent legal fee agreed upon in the Engagement and Fee Agreement approved by this Court on October 17, 2017, i.e. 23 & 1/3%."); Ledsham Dec. Exhibit 5 (Kasle Declaration) ¶ 7 ("On behalf of the nearly 250 participants in the St. Joseph Health Services of Rhode Island Retirement Plan whom I represent, I fully support the settlement. I understand that the Plan Receiver and his Special Counsel, Wistow, Sheehan & Loveley, PC, will be asking for approval to bring that settlement to the U.S. District Court, and, in connection therewith, for payment of the contingent legal fee agreed upon in the Engagement and Fee Agreement approved by this Court on October 17, 2017, i.e. 23 & 1/3%, and support that as well.").

[18] Ledsham Dec. Exhibit 3 (Violet Affidavit) at 1.

[19] Ledsham Dec. Exhibit 5 (Kasle Declaration) at 1.

[20] Ledsham Dec. Exhibit 4 (Callaci Affidavit) at 1.

[21] Ledsham Dec. Exhibit 3 (Violet Affidavit) ¶¶ 9-10; Ledsham Dec. Exhibit 4 (Callaci Affidavit) ¶ 6; Ledsham Dec. Exhibit 5 (Kasle Declaration) ¶ 7.

> the amount of twenty-three and one-third percent (23 & 1/3%) of the $2,500,000 settlement fund, in accordance with their Court-approved fee agreement with the Plan Receiver, is reasonable and appropriate given the complexity of this matter and the significant relief recovered by WSL if the settlement is consummated.[22]

Accordingly, an award of fees based on the Retainer Agreement is proper.

## CONCLUSION

WSL's fee application for 23 1/3% of the gross settlement proceeds of $2,500,000 should be approved, conditioned upon satisfaction of the contingencies in the Proposed Settlement and the payment of such sum by the Diocesan Defendants.

Respectfully submitted,

/s/ Max Wistow
Max Wistow, Esq. (#0330)
Stephen P. Sheehan, Esq. (#4030)
Benjamin Ledsham, Esq. (#7956)
WISTOW, SHEEHAN & LOVELEY, PC
61 Weybosset Street
Providence, RI 02903
401-831-2700 (tel.)
mwistow@wistbar.com
spsheehan@wistbar.com
bledsham@wistbar.com

Dated: October 25, 2023

[22] Ledsham Dec. Exhibit 2 (Williams Affidavit) ¶¶ 14–15.